UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 MAY -1  PM 2: 49

BY_____
DEPUTY CLERK

JAMES D. SULLIVAN, LESLIE
ADDISON, WILLIAM S. SUMNER, JR.,
and RONALD S. HAUSTHOR, individually,
and on behalf of a Class of persons similarly
situated,[1]

      Plaintiffs,

      v.

SAINT-GOBAIN PERFORMANCE
PLASTICS CORPORATION,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:16-cv-125

**DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS**
**(Doc. 35)**

This is a groundwater pollution case arising out of the alleged discharge of

perfluorooctanoic acid ("PFOA") from two factories in Bennington and North Bennington,

Vermont. Plaintiffs are homeowners in the two towns. Defendant is the successor to Chemical

Fabrics Corporation ("ChemFab"), which applied water- and oil-repellent coatings to industrial

fabric such as fiberglass and other products at the two factories.

This court has diversity jurisdiction since the plaintiffs are all Vermont residents and

Defendant Saint-Gobain Performance Plastics Corporation ("Saint-Gobain") is a California

corporation with its principal place of business in Pennsylvania. The plaintiffs seek damages

greatly in excess of $75,000.

---

[1] The caption is amended to reflect the substitution of William S. Sumner, Jr. and Ronald
S. Hausthor as named plaintiffs in place of Sharyn Jones and Bishop Robin Hood Greene.
(*See* Docs. 66, 71.)

The court previously denied Saint-Gobain's motion to dismiss or stay the case pending the outcome of Saint-Gobain's challenges to Vermont PFOA groundwater rules. (Doc. 29.) Currently pending is Saint-Gobain's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). (Doc. 35.) The court heard argument on the motion at a hearing on April 10, 2017.

## Facts

For purposes of the motion for judgment on the pleadings, the court accepts as true the allegations of the complaint (Doc. 1).[2] Commencing in 1968, Chemfab operated a factory at Northside Drive in Bennington, Vermont. (Doc. 1 ¶ 31.) ChemFab applied Teflon coatings to many different materials, including fiberglass fabric used in construction, electronics, and consumer goods. (*Id.* ¶ 44.) PFOA is a component of the Teflon coating process. (*Id.* ¶ 44.) It is an unusual chemical because it is not known to degrade in the natural environment. (*Id.* ¶ 17.) It is readily absorbed by the human body and accumulates over time. The complaint alleges that PFOA causes cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol. (*Id.* ¶ 20.)

In 1977 ChemFab moved its operations to a plant in North Bennington where it continued to make use of PFOA in treating fabric and other materials. It closed the North Bennington factory in 2002. It also closed a similar factory in Hoosick Falls, New York. (The New York facility is the subject of litigation in the Northern District of New York, including the putative class action case docketed *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-cv-0917.) After closing these locations, it moved its fabric treatment operations to a factory in New Hampshire.

---

[2] Although the Amended Complaint (Doc. 71) is now the operative pleading, the court cites the original complaint (Doc. 1) in this opinion. The substance of both pleadings is the same, and the parties agree that the Amended Complaint does not affect Saint-Gobain's Rule 12(c) motion. (*See* Doc. 52 at 3.)

In 2000 Saint-Gobain acquired ChemFab by merger. (Doc. 1 ¶ 37.) For purposes of the motion to dismiss, the parties agree that Saint-Gobain is legally responsible for any liability incurred by ChemFab as a result of its operations in the Bennington area. (*Id.* ¶ 38.) The complaint alleges that personnel at ChemFab and Saint-Gobain have long known of the persistence and toxicity of PFOA. (*Id.* ¶ 23.)

In March 2016, following the discovery of widespread groundwater contamination by PFOA in North Bennington, the Vermont Department of Environmental Conservation ("DEC") issued a drinking water health advisory enforcement standard for PFOA of 20 parts per trillion. (*Id.* ¶ 24.) This standard is lower than the draft recommendations of the federal EPA (100 parts per trillion). (*Id.* ¶ 25.) The DEC has identified the ChemFab factory in North Bennington as the probable source of PFOA contamination in North Bennington. (*Id.* ¶ 58.)

The complaint alleges that PFOA released by the ChemFab factories in Bennington and North Bennington has contaminated well water used by more than one hundred residences. (*Id.* ¶¶ 57, 62.) The contamination was airborne from exhaust generated by drying ovens (*id.* ¶ 45) as well as deposited directly into the ground through waste disposal. (*Id.* ¶ 53.) Because PFOA is water-soluble, it enters the groundwater through natural processes including the absorption of rainwater and the subsurface movement of water. As a consequence of the discharge of PFOA from the two ChemFab plants, large sections of Bennington and North Bennington test positive for the presence of PFOA. Plaintiffs have been advised not to use their well water for drinking or cooking (*id.* ¶ 65), and have been required to use bottled water for those purposes (*id.* ¶¶ 56, 68).

<u>Analysis</u>

**I.     Rule 12(c) Standard**

On a Rule 12(c) motion, the court applies "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Mantena v. Johnson*, 809 F.3d 721, 727–28 (2d Cir. 2015) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)). To survive a rule 12(c) motion, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**II.    Saint-Gobain's Arguments**

Defendant seeks dismissal on multiple grounds derived from the elements of the various Vermont state-law causes of action. With respect to the claims of negligence, strict liability and trespass, the defendants argue:

1.  Plaintiffs' claims require a physical injury or invasion of their property which is not present as a matter of law because groundwater is a public trust, not private property;

2.  Medical monitoring is not a permissible basis for recovery in the absence of proof of physical injury.

With respect to the claim of nuisance, the defendant argues:

1. Claims of diminishment of property value depend upon a showing of contamination of property owned by Plaintiffs, which is not possible in the case of groundwater held in trust by the state;

2. A private nuisance claim cannot be based upon alleged injury to the entire community;

3. Plaintiffs' claims are barred because they acquired their property after termination of ChemFab operations in Bennington and North Bennington.

As to the claim of battery, the defendant argues that the element of intentionality is absent.

The court will take up these arguments in order.

### A.    Requirement of Physical Injury or Invasion of Property

The common law tort claims of negligence, strict liability for ultra-hazardous activities, and trespass all require some physical injury to a person or an invasion of his or her property rights. *See O'Connell v. Killington, Ltd.*, 164 Vt. 73, 77, 665 A.2d 39, 42 (1995) ("Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm.").  This requirement applies with equal force to the torts of trespass and strict liability for ultra-hazardous activities.  *See* Restatement (Second) of Torts § 519(1) ("One who carries on an abnormally dangerous activity is subject to liability *for harm to the person, land or chattels* of another resulting from the activity, although he has exercised the utmost care to prevent the harm." (emphasis added)); *see also Bosley v. Cent. Vt. Pub. Serv. Corp.*, 127 Vt. 581, 585, 255 A.2d 671, 674 (1969) (citing Restatement (Second) of Torts § 519); *see also John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 8, 184 Vt. 207, 959 A.2d 551 ("[T]respass is an invasion of the

plaintiff's interest in the exclusive possession of his land . . . ." (quoting W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 87, at 622 (5th ed. 1984))).

The parties agree that Plaintiffs have not asserted any claim of personal injury.  The relief sought is limited to loss of property value, damage to real property, loss of use and enjoyment of property, the expense of medical monitoring, and "annoyance, upset, aggravation and inconvenience."  (Doc. 1 ¶ 96.)  At oral argument, counsel for the plaintiffs explained that including claims of personal injury would greatly complicate issues relating to certification since the putative class would include groups with very different interests.  For this reason, such claims are excluded from the proposed class action.  (*Id.* ¶ 76(d).)

The parties disagree over whether a property owner whose well water is affected by chemical contamination has suffered actionable damage to his or her property.  Defendant argues that following enactment of the Vermont Groundwater Protection Act, 10 V.S.A. §§ 1390–1419, groundwater became a resource owned in common by all residents of the state and subject to regulation by state government.  According to Saint-Gobain, since Plaintiffs have no individual property interest in the groundwater beneath their property, they have no basis for claiming damage to their property.

In response, Plaintiffs point to provisions of the Groundwater Protection Act which authorize private lawsuits related to "particularized interest[s] related to water quantity protected under this subchapter" as well as "actions in tort to recover damages . . . for the unreasonable harm caused by another person withdrawing, diverting or altering the character of quality of groundwater."  10 V.S.A. §§ 1390(5) and 1410(c).  Plaintiffs also point to the "savings clause" at 10 V.S.A. § 1410(f) which states that "[n]othing in this section shall be construed to preclude or

supplant any other statutory or common-law remedies." In Plaintiffs' view, these provisions demonstrate the continuing viability of private causes of action for groundwater contamination.

About 40% of the residents of Vermont obtain drinking water from private wells. Vt. Dep't of Health, Drinking Water, http://www.healthvermont.gov/environment/drinking-water (last visited Apr. 18, 2017). In a largely rural state, municipal water supply and privately-owned water systems serving multiple users are not available to many people. Instead, these residents depend upon individual dug and drilled wells and surface springs.

Issues of access, quantity, and quality of groundwater have been the subject of court cases and, more recently, legislation and administrative regulation since the nineteenth century. Disputes over deeded rights to springs and wells are relatively common. *E.g.*, *Kelly v. Rhodes*, 136 Vt. 534, 396 A.2d 130 (1978) (dispute over deeded right to water originating at a spring); *Thomas v. Clark*, 133 Vt. 492, 346 A.2d 189 (1975) (dispute over spring constructed after grant of use); *Clement v. Rutland Country Club*, 94 Vt. 63, 108 A. 843 (1920) (dispute over springs existing at time of grant of use). Cases arising out of the pollution of groundwater by manufacturing and other commercial activity are common. *E.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) (litigation concerning contamination of groundwater wells stemming from use of MTBE). In light of this history of legal protection of the rights of property owners to access to clean water through private wells, Defendant's contention that these private rights were eliminated upon passage of the Groundwater Protection Act, except in the case of personal injury caused by pollutants, is supported neither by the language of the Act nor by subsequent case law.

Prior to enactment of the Groundwater Protection Act in 1985, Vermont recognized the absolute right of ownership of subterranean water. Surface water has long been subject to "the

correlative rights of the adjoining proprietors" which permitted each to use but not to contaminate or divert water flowing above ground in rivers and streams. *Chatfield v. Wilson*, 28 Vt. 49, 53 (1855). In contrast, "[t]he secret, changeable, and uncontrollable character of underground water in its operations, is so diverse and uncertain that we cannot well subject it to the regulations of law, nor build upon it a system of rules, as is done in the case of surface streams." *Id.* at 54. As opposed to surface water, groundwater was left "to be enjoyed absolutely by the owner of the land, as one of its natural advantages, and in the eye of the law a part of it." *Id.*

The rule of absolute ownership expressed in the *Chatfield* case remained in effect until the legislature enacted the Groundwater Protection Act. *See Drinkwine v. State*, 129 Vt. 152, 153, 274 A.2d 485, 486 (1970) (citing *Chatfield* rule); *Winooski v. State Highway Bd.*, 124 Vt. 496, 500, 207 A.2d 255, 259 (1965) (same); *White River Chair Co. v. Conn. River Power Co. of N.H.*, 105 Vt. 24, 49, 162 A. 859, 869 (1932) (collecting cases and affirming the continuing viability of the rule of absolute ownership). As absolute owners of the water beneath their lands, property owners could sue third-parties for contamination. *See Bradley v. Buck*, 131 Vt. 368, 306 A.2d 98 (1973) (suit for business loss following contamination of dug wells by fuel oil); *Randall v. Clifford*, 119 Vt. 216, 122 A.2d 833 (1956) (claim for personal injury arising from contamination of a spring).

The Vermont law of groundwater changed substantially with the enactment of the Groundwater Protection Act. Section 1410(a)(5) expressly abolishes "the common-law doctrine of absolute ownership of groundwater." In place of private ownership, "the groundwater resources of the state are held in trust for the public." 10 V.S.A. § 1390(5). The state, operating through the Department of Environmental Conservation ("DEC"), took on primary responsibility

for regulating the use and protection of groundwater resources.  This authority includes

permitting and reporting requirements for large-scale withdrawal of groundwater.  Single-owner

wells for residential purposes are largely exempt from regulation.  *See* 10 V.S.A. § 1418(b)(2).[3]

Contrary to Defendant's claim that any private cause of action for damage to a source of

groundwater was eliminated by the Groundwater Protection Act, the Act creates a new cause of

action and specifically recognizes existing causes of action.  Section 1410(a)(4) of Title 10

provides that "all persons have a right to the beneficial use and enjoyment of groundwater free

from unreasonable interference by other persons."  Subsection 1410(c) creates a private cause of

action to enforce this right: "Any person may maintain under this section an action for equitable

relief or an action in tort to recover damages, or both, for the unreasonable harm caused by

another person withdrawing, diverting or altering the character or quality of groundwater."

10 V.S.A. § 1410(c).

This provision does not restrict the cause of action to personal injury claims.

"Unreasonable harm" is a broad term which encompasses damage to the water supply itself and

also to the health of those who drink from it.  Such a broad definition is supported by the

availability of injunctive relief in a private lawsuit.  In the context of pollution, common forms of

injunctive relief would address issues of remediation and clean-up intended to preserve the water

source.  This is relief directed at the protection of "property" at least as much as it seeks to

prevent or afford compensation for "personal injury."

---

[3] The Vermont Department of Health also plays a role in issuing recommendations and assisting in the testing of private water supplies.  *See* Vt. Dep't of Health, Drinking Water Testing, http://www.healthvermont.gov/lab/drinking-water (last visited Apr. 18, 2017).  In contrast to public water supplies, health-related directives for private residential wells are non-binding recommendations.  *See* Vt. Dep't of Health, What Should You Test?, Private Water Supplies, http://www.healthvermont.gov/public-health-laboratory/drinking-water-testing/what-should-you-test (last visited Apr. 18, 2017).

If there were any uncertainty regarding the legal theories under which a private lawsuit might proceed, these are alleviated by § 1410(d), which limits liability for agricultural contamination to conduct which is "either negligent, reckless or intentional."  The same tort theories would be available against manufacturers and other sources of pollution. Section 1410(d) excludes by implication strict liability claims against farmers.  No such limitation applies under § 1410(c) to claims against defendants not involved in agriculture. Section 1410(c) creates a new statutory remedy for all persons affected by groundwater contamination.

In addition to this new private cause of action, § 1410(f) contains a savings provision: "Nothing in this section shall be construed to preclude or supplant any other statutory or common-law remedies."  Since the common law before 1985 permitted a property owner to sue for damage to an underwater source, that tort claim survives under the savings provision.

Read together, the new remedy in § 1410(c) and the savings provision in § 1410(f) provide comprehensive private remedies allowing property owners to sue for damage to the groundwater underlying their individual properties.  The existing theories of negligence, nuisance, strict liability and intentional harm are preserved and augmented by a new right to seek damages for "unreasonable harm" caused by a person who alters the character and quality of groundwater.  There is no language limiting these suits to cases in which the plaintiff has grown sick or suffered other injury from drinking contaminated water.

The preservation of private remedies is consistent with the public regulatory responsibilities which the Groundwater Protection Act entrusts to the DEC.   Under the Act and

the Vermont Groundwater Protection Rule authorized by the Act,[4] the Department has broad

authority to set standards for the use and protection of potable water and to order action to

prevent further contamination when an enforcement standard is exceeded.   Groundwater

Protection Rule §§ 12-803, 12-804.  Such proceedings are currently underway concerning the

PFOA contamination at issue here.  The Groundwater Protection Act, however, provides no

mechanism for the payment of compensation to property owners or others who suffer injury from

the discharge of pollutants.  The legislation preserves and extends traditional tort remedies to

fulfill this function.

There is one other issue which requires attention.  Section 1390(5) also includes a

reference to new rights of legal action by individuals and appears to restrict these to issues of

quantity only.  The subsection provides in part:

> The designation of the groundwater resources of the state as a public trust
> resource shall not be construed to allow a new right of legal action by an
> individual other than the state of Vermont, except to remedy injury to a
> particularized interest related to water quantity protected under this subchapter.

10 V.S.A. § 1390(5).[5]

Water quantity is an important issue in groundwater protection, but not one at stake in

this case or in other cases involving contamination.  Section 1390 could be read to limit the *new*

cause of action created by § 1410(c) to issues of insufficient water supply through, for example,

excessive withdrawal by a large-scale user.  Such a reading would be inconsistent with

---

[4] *See* Vt. DEC Environmental Protection Rules, ch. 12, Groundwater Protection Rule and Strategy (effective Dec. 16, 2016), *available at* http://dec.vermont.gov/sites/dec/files/documents/2016_12_16_GWPR&Sadopted.pdf.

[5] The Vermont Supreme Court has not yet determined whether section 1390 creates a new cause of action. *State v. Atlantic Richfield Co.,* 2016 Vt. 61, ¶ 4 ("We do not decide whether § 1390 created a new cause of action in favor of the State…")

11

§§ 1410(c) and (d), which specifically authorize lawsuits over the alteration of water quality and character.

The court resolves this apparent inconsistency by following the rule of statutory construction that the more specific provision governs in the case of conflict between general statements of policy and the more concrete provisions. *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228 (1957). Section 1410(d) is especially helpful. It limits claims against farms and other agricultural activities for harm to "groundwater quality or character" to conduct which is negligent or worse. Such claims might include damage to neighboring wells due to fertilizer, pesticide or manure runoff. These potential claims have nothing at all to do with water quantity yet they are specifically permitted by § 1410(d) on theories of negligence and reckless or intentional conduct. In a similar vein, § 1410(c) includes claims for withdrawing or diverting water as well as altering its character or quality. Withdrawal and diverting may well affect water *quantity*; altering its character or quality does not.

There is no question that the sentence in § 1390(5) makes it difficult to bring §§ 1390 and 1410 into complete harmony. But regardless of whether one reads § 1390(5) as limiting the scope of any new cause of action under the Groundwater Protection Act to disputes over usage and quantity, the savings provision preserves existing tort remedies for both damage to person and property.

The court addresses the Vermont case law bearing on the interpretation of the Groundwater Protection Act below in the context of its discussion on private nuisance. The out-of-state cases upon which Saint-Gobain relies are distinguishable or unpersuasive. In *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 465 (D.N.J. 2009), the court stated that "contamination alone does not constitute an 'injury' sufficient to substantiate a negligence

claim."  But, unlike in *Rowe*, Plaintiffs do allege "derivative harm" from the contamination.

They allege that their well water is "unfit for use," *see id.*, as reflected by their allegation that

they have been advised not to use their well water for drinking or cooking, and have been

required to use bottled water for those purposes.[6]

In *West Morgan-East Lawrence Water & Sewer Authority v. 3M Co.*, No. 5:15-cv-01750-

AKK, 2016 WL 6584932, at *4 (N.D. Ala. Sept. 20, 2016), the court dismissed a trespass claim

brought against the 3M company stemming from alleged PFOA contamination, reasoning that

there was no allegation of physical or structural damage to the res.  But the court in that case was

applying Alabama trespass law, which requires a showing of "substantial damages to the res."

*Id.*  The Vermont Supreme Court has recently declined to adopt a "hard-line" position

concerning the "impact" required to sustain a trespass action in cases involving intangible matter

such as airborne or, by extension, water-borne particles.  *Larkin*, 2008 VT 61, ¶ 14.  In *Larkin*,

the plaintiff had failed on summary judgment to proffer any evidence concerning the dispersion

of pesticides on its property or any potential safety or health concerns related to the pesticide use.

*Id.* ¶ 16.  This case is in a different procedural posture, and the allegations—which include

assertions of potential health and safety concerns—are sufficient for present purposes to maintain

the trespass action.  *Ivory v. International Business Machines Corp.*, 983 N.Y.S.2d 110

(App. Div. 2014), also concerns trespass, but is distinguishable for the reasons discussed in

*Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-cv-0917(LEK/DJS), 2017 WL

486939, at *10 (N.D.N.Y. Feb. 6, 2017), *appeal docketed*, No. 17-493 (2d Cir. Feb. 16, 2017).

**B.    Medical Monitoring**

---

[6] The decision in *Rowe* cited by Saint-Gobain is a ruling on motions for class certification of common law claims.  The court expresses no opinion here regarding the propriety of class treatment for Plaintiffs' negligence or other claims.

The court defers any consideration of the potential remedy of medical monitoring to a time when the factual record is developed. Medical monitoring is not itself a cause of action. It is a form of relief. The court has insufficient information about the need and appropriateness of medical monitoring. The motion to dismiss all claims related to medical monitoring is denied without prejudice to the right of the defendant to renew the motion or to bring the issue back before the court as a motion for partial summary judgment following discovery.

### C.    Claims of Private Nuisance

In contrast to claims of negligence, strict liability and trespass, the plaintiffs' claims of private nuisance do not include the element of entry or interference with possession of real property, but instead involve alleged interference with use and enjoyment. *Larkin*, 2008 VT 61, ¶ 8. As the Vermont Supreme Court explained in a recent case:

> The law of private nuisance springs from the general principle that it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. In Vermont, a private nuisance is defined as an interference with the use and enjoyment of another's property that is both unreasonable and substantial. Whether a particular interference is unreasonable is a question for the factfinder, and the standard for determining whether a particular type of interference is substantial is that of definite offensiveness, inconvenience or annoyance to the normal person in the community.

*Myrick v. Peck Elec. Co.*, 2017 VT 4, ¶ 4 (internal citations and quotations omitted).

On the face of the complaint, the contamination of private residential water supplies by a hazardous chemical requiring use of bottled water or the installation of a filtration system appears to represent an unreasonable and substantial interference with the use of property. *Accord, Baker*, 2017 WL 486939, at *11 (plaintiffs with private wells suffered a "special loss" sufficient to maintain a private nuisance action). Defendant renews its argument that the application of the public trust doctrine to groundwater eliminates any private nuisance remedy since the water belongs to the state, not to any individual. The use of the water, however, is

14

exercised by the individual residents, and it is compensation for the interference with this use which lies at the heart of the nuisance claim.

The same discussion laid out above with respect to the common law torts of negligence, trespass, and strict liability apply to the tort of nuisance. In establishing a remedy for "unreasonable harm" through interference with the groundwater supply, § 1410(c) codifies the elements of the common law nuisance claim. The savings provision also functions to preserve the existing nuisance remedy. The court has discussed these issues at length above. The court turns now to the case law concerning claims of contamination of groundwater, which are expressed both as nuisance and negligence claims.

In *Allen v. Uni-First Corp.*, 151 Vt. 229, 558 A.2d 961 (1988), the Vermont Supreme Court recognized a claim for diminished value of property due to chemical contamination. The Court reversed the trial court's decision to limit any award of damages to properties directly affected by the contamination by the chemical solvent perchloroethylene. The Vermont Supreme Court permitted recovery by landowners who could demonstrate that the value of their property was diminished by reports of widespread contamination.

> Here, the jury heard testimony regarding: (1) real estate values prior to media reports in July of 1983 concerning the contamination; (2) markedly decreased values as of July, 1983: and (3) offers and completed sales at these decreased values. They also heard plaintiffs testify that the sudden decrease in values could be attributed to no other factor. This evidence would allow lay persons of average intelligence to reach conclusions regarding causation [of a decline in property values] based on their own knowledge and experience . . . .

*Id.* at 235. The plaintiffs included people who could not demonstrate the presence of perchloroethylene but nevertheless lost money as a result of diminished property values across Williamstown. In that respect, the *Uni-First* holding permits a nuisance claim in cases of no contamination on the basis of reputation and market value only. Plaintiffs in this case do not go so far. They allege the actual presence of PFOA on their property and therefore have stronger

15

nuisance claims than in *Uni-First*.  See also *Nicholas v. Town of Pownal*, 2002 WL 34423792

(Vt. Sup.Ct.) (unreported decision recognizing neighbor's claim for stigma due to reasonable

fear of illness due to soil contamination).

      *Uni-First* was filed in 1983.  At most it demonstrates the state of nuisance law before

enactment of the Groundwater Protection Act.  In *Myrick*, however, Justice Eaton recognized the

continued viability of the *Uni-First* holding in the context of pollution cases.

> *Uni-First* represents a narrow category of private nuisance claims involving
> chemical contamination that threatens to or in fact causes an unreasonable
> interference.  In *Uni-First*, the harm was not diminished property value but the
> "actual and substantial" threat of contamination, and the proper measure for
> damages was the diminution in value.  In other words, a decrease in property
> value does not mean there has been an interference with that property's use, a
> requisite for a nuisance claim.

*Myrick*, 2017 VT 4, ¶ 12 (citations omitted).

      The *Myrick* decision concerned a claim that a neighboring solar field diminished property

values due to its unsightly appearance.  The Vermont Supreme Court rejected nuisance claims

based only on aesthetic harm.  But in recognizing the authority of *Uni-First* (and limiting its

holding to cases of actual and substantial threat of contamination), the Court clearly indicated

that contamination of Groundwater could support claims of lost property value and that recovery

under a nuisance theory was not limited to personal injury.

      In fairness to the defendant's arguments, neither *Uni-First* nor *Myrick* considered the

effect of the Groundwater Pollution Act on contamination claims.  *Uni-First* came too early;

*Myrick* did not concern contamination at all.  For a consideration of contamination claims *after*

enactment of the Groundwater Protection Act, the court turns to *Graham v. Canadian National*

*Railway Co.*, 749 F. Supp. 1300 (D. Vt. 1990).

      *Graham* concerned claims of personal injury and property damage arising from the

spraying of herbicides along railroad right of ways and the migration of these chemicals into the

residents' well water.  Following a bench trial, the court issued findings of fact and conclusions of law.  It ruled in favor of the defendants on the issue of causation.  "The full record fails to establish that applications of herbicides by [defendant] during the relevant years were sufficient in amount, by way of the dosage, to cause the physical harm to [plaintiffs] and their property for which they seek recovery."  *Id.* at 1320.

In reaching this decision, the district court followed the Restatement (Second) of Torts, § 849 as an expression of governing principles:

> An interference with the use of water caused by an act or conduct that is not itself a use of water but that affects the quality or quantity of the water may subject the actor to liability if the act or conduct
>
> (a) constitutes a nuisance,
>
> (b) constitutes a trespass, or
>
> (c) is negligent, reckless or abnormally dangerous with respect to the use.

*Graham*, 749 F. Supp. at 1317 (quoting Restatement (Second) of Torts § 849).  The court explained:

> The polluter is subject to liability for creating a private nuisance, provided his conduct is the legal cause of the physical harm that is inflicted on the health and property interests of the complainant.  That is to say, the wrongdoer has brought an invasion of personal or property interests that the law will remedy.

*Id.*

Entirely absent from the court's discussion is any reference to the Groundwater Protection Act or any claim by the railroad defendant that the Act precluded claims of property damage.  Since the plaintiffs claimed the direct deposit of the herbicide on their land and persons as well as the contamination of groundwater, it may be that the groundwater issues took a back seat to claims of direct spraying.  In contrast with this case, there were simultaneous claims of personal injury and property damage which would have greatly weakened any claim that state

sovereignty over groundwater through the public trust doctrine prevented the plaintiffs from making their own claim of property damage.

The primary contribution that *Graham* makes to the law of groundwater contamination is the adoption of the Restatement provision. The court recognized the viability of multiple tort theories of recovery, including private nuisance, trespass, and negligence, as a result of interference with the water supply. *Graham* reinforces the court's conclusions regarding the availability of private remedies following passage of the Groundwater Protection Act.

One other case requires consideration. In *Towns v. Northern Security Insurance Co.*, 2008 VT 98, 184 Vt. 322, 964 A.2d 1150, the Vermont Supreme Court rejected a claim by an insurer that the "owned-property exclusion" in a standard homeowner's liability policy barred claims from pollution of the insured's own property. The insured operated a trash hauling business. He dumped trash on his own property and used it as fill. In time, substances in the trash leached out into the groundwater. By then, Mr. Towns had sold his property to a third-party. He was sued by the state for remediation and other remedies. His insurer denied coverage on several grounds, including the ground that in contaminating the groundwater, he had contaminated his own property for which liability coverage was not available. The Vermont Supreme Court rejected the argument. The Court reasoned that because groundwater is a public resource or trust of the state, it was not owned by the insured for purposes of the exclusion. Coverage applied.

The present case is very different. Plaintiffs do not seek to recover the value of the contaminated water. They do not—indeed they cannot—claim that they own the groundwater. They allege only that they used it. (Doc. 1 ¶ 69.) The Groundwater Protection Act makes it clear that no individual owns the water beneath his or her property. Plaintiffs seek property

damage related to interference with the use of the property which they own: the residence, grounds and other buildings whose inhabitants used the well water until the contamination became known.

Taken as a whole, the limited body of case law available since enactment of the Groundwater Protection Act confirms a view that tort actions for diminished property value based upon diminished use of groundwater remain viable under Vermont law. Such claims were available prior to enactment of the Groundwater Protection Act, and they are specifically preserved by the savings provision and augmented by the new private cause of action supplied by § 1410(c).[7]

### D.    Availability of Private Nuisance Remedies for Individual Injuries

The harm for which plaintiffs seek compensation is harm to individual property owners. Such claims have long been permitted by Vermont decisional law. The Groundwater Protection Act recognized the existence of such claims and made explicit the right of a "person" to bring private actions to recover damages from "another person." 10 V.S.A. § 1410(c). There is no requirement in Vermont law that private nuisance actions for contamination of a private water supply be filed only by governmental agencies. *Accord*, *Baker*, 2017 WL 486939, at *11

---

[7] Although its decision does not involve any analysis of Vermont's Groundwater Protection Act, the Northern District of New York recently rejected Saint-Gobain's argument that, because groundwater in New York is a public resource held by the state for public benefit, the plaintiffs could not prove any injury to support their negligence, strict liability, or trespass claims. *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-cv-0917(LEK/DJS), 2017 WL 486939 (N.D.N.Y. Feb. 6, 2017), *appeal docketed*, No. 17-493 (2d Cir. Feb. 16, 2017). The analysis in *Baker* focuses on New York law and is different than the analysis above, but the result is in accord with the court's conclusions in this case. The court is not persuaded that *Hoosick Falls Associates v. Saint-Gobain Performance Plastics Corp.*, No. 252833/2016 (N.Y. Sup. Ct. Apr. 17, 2017), represents a better framework for addressing the issues than *Baker*. To the contrary, *Hoosick Falls Associates* is distinguishable because the only harm alleged in that case was "stigma"; there was no allegation of PFOA soil or water exposure or contamination.

(private right of action for PFOA contamination of private wells was not eliminated even though the number of wells at issue was "quite high"; contamination of private wells lacked public character of a municipal water supply, and contamination among wells varied significantly).

### E.      Suits by Subsequent Purchasers

As it happens, the three original named plaintiffs in this case all purchased their properties after ChemFab closed the second of its Bennington factories.[8]  Defendant argues that a claim of nuisance for contamination can only be brought by property owners in possession at the time of injury.  Defendant relies upon two cases—*Windsor School District v. State of Vermont*, No. 536-10-96 Wncv, 2002 WL 34454092 (Vt. Super. Ct. Feb. 15, 2002), *aff'd* 2008 VT 27, 183 Vt. 452, 956 A.2d 528, and *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985)—as a basis for limiting the nuisance remedy to property owners holding title at the time of contamination.

These cases limit the nuisance remedy but not in the manner Defendant suggests. *Windsor School District* was a hazardous waste clean-up case litigated between sequential owners of the property.  The state prison contaminated a site with chemicals associated with wood preservation.  Years later the school authorities built playing fields in part on the former prison property.  The trial court dismissed claims of implied indemnity, nuisance, trespass and ultrahazardous activity.  It recognized a private right of action under 10 V.S.A. § 66215(i), Vermont's Waste Management Act.

In dismissing the nuisance claim, the court stated that "[n]uisance claims resolve conflicts between neighboring, contemporaneous landowners, and the courts have consistently held that

---

[8] The record is not complete concerning the dates that the two new named plaintiffs acquired their properties.  For purposes of the motion to dismiss, the court assumes that James Sullivan purchased his home after closure of the ChemFab factories in Bennington County.

you cannot sue a predecessor in title for environmental contamination." *Windsor Sch. Dist.*,

2002 WL 34454092.  The reference to "neighboring [and] contemporaneous landowners"

distinguished them from parties who have bought and sold real estate from one another.  The

nuisance claim is horizontal, not vertical, in its operation.  But this principle does not exclude

suits by later owners who discover contamination and bring suit against the responsible parties.

In surveying the possible claims against the state in *Windsor School District*, Judge Bryan

considered the availability of a remedy under the Groundwater Protection Act.

> The difficulty with Windsor's claim is that while there has been groundwater
> contamination at the site, neither Windsor, nor anyone else, makes any use of the
> groundwater, either on or off the site . . . .  While it is certainly logical to require
> one who causes soil or groundwater contamination to clean it up, I cannot
> conclude that "unreasonable harm" has happened here to support a right of action
> contemplated by § 1410(c).  This section provides a remedy for unreasonable
> harm.  It is not intended to regulate the cleanup burden.

*Id.*  As this passage indicates, had the *Windsor School District* case involved damage to the

drinking supply, a nuisance remedy or the closely-related statutory remedy provided by

§ 1410(c) would have been available.

Similarly, *Philadelphia Electric* concerned liability from one owner to a successor

concerning a single parcel of contaminated land.  The court rejected a nuisance remedy for the

same reasons.  "Neighbors, unlike the purchasers of the land upon which a nuisance exists, have

no opportunity to protect themselves through inspection and negotiation." *Philadelphia Electric*,

762 F.2d at 314.  The decision contains no suggestion that only the original neighbors who were

in place at the time of the contamination have the right to make a claim of contamination of their

water source.

### F.    Battery Claims

Plaintiffs also assert a claim of battery.  (Doc. 1 ¶¶ 104–08.)  In contrast to the other

theories of recovery, battery is an intentional tort.  The elements are: an act intended to cause

harmful or offensive contact with another person.   Restatement (Second) of Torts, § 13 (1965).

It applies most directly to claims arising out of fights and assaults.   It may also apply to medical

procedures undertaken intentionally but without the patient's consent.   *Christman v. Davis*,

2005 VT 119, 179 Vt. 99, 889 A.2d 746.   It applies less frequently to claims of pollution and

contamination.   *See Major v. Astrazeneca, Inc.*, No. 5:01-CV-618 (Lead) (FJS/GJD), 2006 WL

2640622, at *20 (N.D.N.Y. Sept. 13, 2006) ("A valid claim for battery exists where a person

intentionally touches another without that person's consent.   Plaintiffs' reliance upon the

doctrine of transferred intent is apparently a concession that they do not have evidence that

Defendants intended to physically contact them.   To establish transferred intent, Plaintiffs must

at least prove that Defendants intended to physically contact someone." (citations omitted)).

Plaintiffs defend the battery claim on the ground that they do not have to prove intent to

physically contact a particular individual.   Rather, they argue, "[t]he intent element of battery is

satisfied if the actor knows that the harmful or offensive contact 'will, to a substantial certainty,

be produced by his act.'"   (Doc. 48 at 26 (quoting Restatement (Second) of Torts § 18, cmt. e,

and Restatement (Second) of Torts § 8A cmt. b ("If the actor knows that the consequences are

certain, or substantially certain to result from his act, and still goes ahead, he is treated by the law

as if he had in fact desired to produce the result.")).)

Much as in the case of the medical monitoring claim, dismissal of the battery claim at this

stage would be premature.   Plaintiffs have alleged that Defendant "intended to contact the

Plaintiffs and Class Members through its release of PFOA into the Plaintiffs' and Class

Members' wells, soils, and groundwater supply, or were recklessly indifferent to whether such

contact occurred."   (Doc. 1 ¶ 106.)   Plaintiffs expand on these allegations in their memorandum,

explaining that "Defendant continued to release toxic chemicals into the surrounding air, water,

and neighboring properties over a period of decades, despite repeated and widespread complaints from neighboring property owners, and therefore with knowledge that its releases were resulting in harmful and offensive contact with these owners and residents." (Doc. 48 at 28.)

The court will deny the motion for judgment on the pleadings with respect to the claim of battery. The denial is without prejudice to the right of the defendant to renew the motion at a later date when both parties will be in a position to support or refute the allegations with record evidence. Accepting at face value the allegations of the complaint that the release of the PFOA was intentional within the meaning of the battery cause of action, the court cannot grant the motion to for judgment on the pleadings.

## Conclusion

Saint-Gobain's Rule 12(c) motion for judgment on the pleadings (Doc. 35) is DENIED. With respect to the claim of battery (Count 4) and for medical monitoring, the court DENIES dismissal of these claims without prejudice to the right of the defendant to renew the motion at a later date.

Dated at Rutland, in the District of Vermont, this 1st day of May, 2017.

Geoffrey W. Crawford, Judge
United States District Court