UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 JUN 30  AM 11: 18

CLERK

BY_____
DEPUTY CLERK

|  |  |  |
|---|---|---|
| JAMES D. SULLIVAN and LESLIE ADDISON, WILLIAM S. SUMNER, JR.,) RONALD S. HAUSTHOR, GORDON GARRISON, and TED and LINDA CRAWFORD individually, and on behalf of a Class of persons similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **SECOND AMENDED** **COMPLAINT – CLASS ACTION** |
| v. | ) ) ) | **Civil Action No. 5:16-cv-000125-GWC** |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) ) | *JURY TRIAL DEMANDED* |

Plaintiffs, on behalf of themselves, and on behalf of a class of other persons similarly situated, file this Class Action Complaint against Defendant Saint-Gobain Performance Plastics Corporation ("Saint-Gobain"), and allege as follows:

## STATEMENT OF THE CASE

1.     This is a Class action on behalf of Plaintiffs and Class of people similarly situated who have been damaged and continue to be damaged by the wrongful conduct of Defendant Saint-Gobain Performance Plastics arising out of Defendant's use, handling, discharge and disposal of perflourooctanoic acid ("PFOA"), a toxic, perfluorinated chemical, in North Bennington and Bennington, Vermont, which has resulted in the severe contamination of the local groundwater aquifer, soils, and numerous private drinking water supply wells with PFOA in and around Bennington and North Bennington.  In particular, for over 20 years, Defendant utilized PFOA in its manufacturing processes at a facility in North Bennington, and discharged

significant amounts of PFOA into the environment through air emissions, as well as through various discharges to soils, sediments, and surface waters, thereby causing widespread groundwater and property contamination. Plaintiffs and Class Members bring negligence, nuisance, trespass, battery, and strict liability claims against Defendant due to the diminution in property value, loss of use and enjoyment of property, annoyance, upset, aggravation and inconvenience and other damages which they have suffered as a result of the PFOA contamination caused by Defendant. Plaintiffs and Class Members also seek damages and/or equitable relief for the unreasonable harm to groundwater caused by Defendant in violation of the Vermont Groundwater Protection Act, 10 V.S.A. §1410, as a result of this PFOA contamination, and also seek further equitable and injunctive relief to compel Defendant to establish and implement remedial measures sufficient to permanently prevent the further contamination, and eliminate the current contamination, of Plaintiffs' and Class Members' properties and/or private drinking water supplies with PFOA.

## JURISIDICTION AND VENUE

2.     This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1332(a), because the Plaintiffs are citizens of the State of Vermont and the Defendant is a citizen of a different state, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.     This Court also has jurisdiction over this action in accordance with 28 U.S.C. § 1332(d)(2)(A), because it is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant, and the amount in controversy exceeds the sum or value of five million dollars ($5,000,000), exclusive of interest and costs. The proposed Class

in this case includes numerous citizens of the State of Vermont, and the Defendant is a resident of a different state.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because this action concerns damage to property located in this District, because Defendant has conducted substantial business in this District, has caused harm to Class Members residing in this District, Plaintiffs reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Vermont.

## PARTIES

5.     Plaintiffs James D. Sullivan and Leslie Addison are citizens and residents of North Bennington, Vermont, and are the owners of the real property located at 35 Asa Way in North Bennington, Vermont, 05257, where they reside.  On March 1, 2016, the private drinking water well located at 35 Asa Way was sampled by the State of Vermont, and analytical results from this sampling showed the well to be contaminated with PFOA at 293 parts per trillion, well above the Vermont Health Advisory limit of 20 parts per trillion.   As a result of the contamination of their private drinking water well, groundwater, and soil, Mr. Sullivan and Ms. Addison have suffered, amongst other damages set out herein, diminution in property value, loss of use and enjoyment of property, annoyance, upset, aggravation and inconvenience.

6.     Plaintiff William S. Sumner, Jr., is a citizen and resident of North Bennington, Vermont, and, along with his wife, owns the real property located at 37 Susan Taylor Lane in North Bennington, Vermont, 05257, where he resides.  On March 1, 2016, the private drinking water well located at 37 Susan Taylor Lane was sampled by the State of Vermont, and analytical results from this sampling showed the well to be contaminated with PFOA at 580 parts per trillion, well above the Vermont Health Advisory limit of 20 parts per trillion. As a result of the

contamination of his private drinking water well, groundwater, and soil, Mr. Sumner has suffered, amongst other damages set out herein, diminution in property value, loss of use and enjoyment of property, annoyance, upset, aggravation and inconvenience.

7.     Plaintiff Ronald S. Hausthor is a citizen and resident of North Bennington, Vermont, and, along with his wife, owns the real property located at 301 Harrington Road in North Bennington, Vermont, 05257, where he resides.  On March 1, 2016, the private drinking water well located at 301 Harrington Road was sampled by the State of Vermont, and analytical results from this sampling showed the well to be contaminated with PFOA at 2730 parts per trillion, well above the Vermont Health Advisory limit of 20 parts per trillion.  As a result of the contamination of his private drinking water well, groundwater, and soil, Mr. Hausthor has suffered, amongst other damages set out herein, diminution in property value, loss of use and enjoyment of property, annoyance, upset, aggravation and inconvenience.

8.     Plaintiff Gordon Garrison is a citizen and resident of North Bennington, Vermont, and is the owner of the real property located at 19 Hillside Street, North Bennington, Vermont, 05257, where he resides.  The Garrison property receives its drinking and domestic water from the Town of Bennington; however, the property is located within the area of concern or zone of contamination as identified by the Vermont DEC in response to the discovery of the Defendant's contamination of Bennington and North Bennington with PFOA.  As a result of his property's location within the zone of contamination, and as a result of the actual or threatened contamination of his groundwater, property and soils with PFOA, Garrison has suffered, amongst other damages set out herein, diminution in property value, loss of use and enjoyment of property, annoyance, upset, aggravation and inconvenience.

4

9.      Plaintiffs Theodore and Linda Crawford are citizens and residents of Bennington, Vermont, and own the real property located at 643 West Road, Bennington, Vermont, 05201, where they reside.  On April 19, 2016, the private drinking water well located at 643 West Road was sampled, and analytical results from this sampling failed to detect the presence of PFOA; however, this property is located within the area of concern or zone of contamination as identified by the Vermont DEC in response to the discovery of the Defendant's contamination of Bennington and North Bennington with PFOA.  As a result of their property's location within the zone of contamination, the threated contamination of their well with PFOA, and the actual or threatened contamination of their property and soils with PFOA, the Crawfords have suffered, amongst other damages set out herein, diminution in property value, loss of use and enjoyment of property, annoyance, upset, aggravation and inconvenience.

10.      Plaintiffs James D. Sullivan, Leslie Addison, William S. Sumner, Jr., Ronald S. Hausthor, Gordon Garrison, Theodore Crawford, and Linda Crawford will collectively be referred to herein as "Plaintiffs."

11.      Defendant Saint-Gobain Performance Plastics Corporation ("Saint-Gobain") is a California corporation with its principal place of business located at 31500 Solon Road, Solon, Ohio, 44139.

12.      Defendant Saint-Gobain operates at least 45 manufacturing sites in 16 countries across North America, Europe, and Asia, and has more than 4,000 employees.  Saint-Gobain is a subsidiary of Compagnie de Saint-Gobain, a Paris-based multinational corporation that is one of the top 100 industrial companies in the world, with $46 billion in sales in 2015.

13.      Defendant Saint-Gobain and its predecessor ChemFab Corporation, at various times as set out in more detail herein, operated manufacturing facilities in North Bennington and

Bennington, Vermont, including the manufacturing facility located at 1030 Water Street in North Bennington, Vermont.

14.    The Vermont Department of Environmental Conservation has identified Defendant Saint-Gobain as a party responsible for the contamination of the local groundwater aquifer and numerous private drinking water supply wells in and around North Bennington and Bennington with PFOA, a toxic, perfluorinated chemical which was utilized by Saint-Gobain and its predecessor ChemFab Corporation in manufacturing operations in North Bennington and Bennington.

## GENERAL AND FACTUAL ALLEGATIONS

**Background and Hazards of PFOA**

15.    PFOA, which is also known as "C8," is a man-made, perfluorinated chemical that does not occur naturally in the environment.  It is a stable chemical that is both lipid and water-repellent, resulting in its widespread use in a wide variety of manufacturing and industrial processes and commercial applications.

16.    PFOA was used in the production of the E. I. du Pont de Nemours and Company's ("DuPont") Teflon™ non-stick coating, which can contain residual levels of PFOA, and is widely found in, amongst other products, non-stick cookware, stain-resistant carpets and fabrics, water repellant clothing, and food packaging.

17.    PFOA was also utilized in various manufacturing processes as a surfactant or dispersant, including the application of Teflon to fabrics.

18.    PFOA has been released into the environment during manufacturing processes that utilize the chemical, as well as during the production, use and disposal of products that contain PFOA.

19.     The stable carbon-fluorine bonds that make PFOA such a prevalent industrial and consumer product also result in its persistence. There is no known environmental breakdown mechanism for PFOA. It is readily absorbed into biota and accumulates with repeated exposure.

20.     PFOA has been classified by the United States Environmental Protection Agency ("EPA") as an Emerging Contaminant of Concern because of its threat to human health and the environment. PFOA's toxicity and persistence in the environment make it dangerous to human health and the environment.

21.     When humans are exposed to PFOA, this toxic chemical binds to plasma proteins in the blood and is readily absorbed and distributed throughout the body. The liver and kidneys are important binding and processing sites for PFOA, resulting in physiologic changes to these and other organs. Because of strong carbon-fluorine bonds, PFOA is stable to metabolic degradation, resistant to biotransformation, and has a long half-life in the body. This toxic chemical accumulates in the body over time and causes long-term physiologic alterations and damage to the blood, liver, kidneys, immune system, and other organs.

22.     The human diseases caused by exposure to PFOA include cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol. The association between exposure to PFOA and certain cancers has been reported by the C8 Health Project, an independent Science Panel charged with reviewing the evidence linking PFOA to diseases based on health research carried out in a Mid-Ohio Valley population exposed to PFOA and related chemicals as a result of releases from a DuPont chemical plant.

23.     The C8 Science Panel identified kidney cancer and testicular cancer as having a "probable link" to PFOA exposure in the Mid-Ohio Valley population exposed to PFOA in drinking water. Epidemiological studies of workers exposed to PFOA on the job support the

7

association between PFOA exposure and both kidney and testicular cancer and also suggest associations with prostate and ovarian cancer and non-Hodgkin's lymphoma. Rodent studies also support the link with cancer. In 2006, the majority of EPA's Science Advisory Board expert committee recommended that PFOA be considered "likely to be carcinogenic to humans."

24.     Additionally, the C8 Science Panel found a probable link between exposure to PFOA and the following human diseases: thyroid disease, pregnancy-induced hypertension, ulcerative colitis, and high cholesterol. Furthermore, in recent years, immunotoxicity of PFOA and related compounds has been demonstrated in a wide variety of species and models, including humans. For instance, a study of ninety-nine Norwegian children at age three found that maternal serum PFOA concentrations were associated with decreased vaccine responses, especially toward rubella vaccine, and increased frequencies of common cold and gastroenteritis. The combined human and experimental evidence strongly supports adverse effects on immune functions at relatively low exposure levels.

25.     Upon information and belief, Defendant Saint-Gobain and its predecessor ChemFab Corporation have long been aware of the persistence and toxicity of PFOA, in part as a result of communications with manufacturers and users of this chemical and other perfluorinated chemicals.

26.     In early March of 2016, as a result of the discovery of PFOA contamination in groundwater and potable water supply wells in North Bennington, the Vermont Department of Environmental Conservation ("DEC"), based on the recommendation of the Vermont Department of Health ("DOH"), designated a Vermont drinking water Health Advisory limit/interim groundwater enforcement standard for PFOA of 20 parts per trillion ("ppt"), or 0.02

parts per billion ("VHA limit").  In December 2016, DEC adopted a final rule setting a permanent groundwater enforcement standard of 20 ppt.

27.     On May 19, 2016, the EPA published a Drinking Water Health Advisory for PFOA that suggested a PFOA limit in drinking water of 70 ppt.

28.     In 2006, the State of New Jersey adopted a drinking water health advisory for PFOA of 40 ppt. In 2014, New Jersey proposed lowering this advisory limit to 20 ppt, the same limit adopted by the State of Vermont.  In 2017, New Jersey recommended a Maximum Contaminant Level for PFOA in drinking water of 14 ppt.

**Saint-Gobain Plant Background and Ownership History**

29.     The DEC has identified the former Saint-Gobain manufacturing facility located at 1030 Water Street in North Bennington (the "Saint-Gobain Plant" or "the Plant") as a probable source of the PFOA contamination in the local groundwater aquifer and numerous private drinking water supply wells in and around North Bennington.

30.     The Saint-Gobain Plant was operated by Defendant Saint-Gobain and its predecessor ChemFab Corporation from approximately 1977 through 2002, and was engaged in the manufacture of polytetrafluoroethylene (more commonly known as Teflon) coated woven fiberglass fabrics. Defendant Saint-Gobain and its predecessor utilized perfluorinated chemical solutions containing PFOA in the manufacturing operations at the Saint-Gobain Plant.

31.     Upon information and belief, Chemical Fabrics Corporation, a Delaware corporation, began the manufacturing operations described herein at a facility located on Northside Drive in Bennington, Vermont (the "Northside Drive facility") in or about 1968 under the trade name "ChemFab."

32.     PFOA contamination has been found in the local groundwater aquifer and private drinking water supply wells around the Northside Drive facility.

33.     In late 1977, Chemical Fabrics Corporation moved its manufacturing operations from the Northside Drive facility in Bennington to the Saint-Gobain Plant in North Bennington.

34.     In December of 1983, Chemical Fabrics Corporation acquired legal title to property on which the Saint-Gobain Plant is situated via a property transfer from the Bennington County Industrial Corporation.

35.     In November of 1991, Chemical Fabrics Corporation adopted ChemFab Corporation as its legal name. ChemFab Corporation's sales peaked in 1999 at over $126 million.

36.     Upon information and belief, Defendant Saint-Gobain's predecessor ChemFab Corporation worked closely with DuPont in the use of PFOA-containing solutions for coating fabrics, including roofing fabrics, at the Northside Drive facility and at the Saint-Gobain Plant.

37.     In or about August of 2000, Defendant Saint-Gobain acquired ChemFab Corporation for $171 million through a Merger Agreement by which Norton Company, a wholly owned subsidiary of Defendant Saint-Gobain, purchased all of ChemFab Corporation's outstanding shares of stock, outstanding options, and assumed ChemFab Corporation's net financial debt.

38.     As a result of the 2000 Merger Agreement, Defendant Saint-Gobain assumed any and all liabilities of ChemFab Corporation, including any and all liabilities related to or arising out of ChemFab Corporation's manufacturing operations in Vermont, including at the Northside Drive facility and at the Saint-Gobain Plant.

10

39.     Based on the 2000 Merger Agreement, Defendant Saint-Gobain and its predecessor ChemFab Corporation will hereinafter be referred to as "Defendant," "Saint-Gobain," or "Defendant Saint-Gobain."

40.     Following the acquisition of ChemFab Corporation, Defendant Saint-Gobain continued the manufacturing operations described herein at the Saint-Gobain Plant in North Bennington.  Saint-Gobain became record owner of the property on which the Saint-Gobain Plant is situated in May of 2001.

41.     In July of 2001, Defendant Saint-Gobain announced that it would close the Saint-Gobain Plant in North Bennington by August of 2002, eliminating approximately 90 jobs. Amongst other reasons, this decision was due to Saint-Gobain's desire to avoid compliance with the Vermont air pollution regulatory standards.

42.     Defendant Saint-Gobain planned to move the Saint-Gobain Plant manufacturing operations to other locations, including Merrimack, New Hampshire, as Vermont required certain emissions abatement equipment to reduce and clean-up air emissions that was not required in New Hampshire, making New Hampshire a more attractive regulatory market for Saint-Gobain's manufacturing operations.

**Saint-Gobain Plant Manufacturing Operations and PFOA Use/Disposal**

43.     The Teflon-coated woven fabrics manufactured by Defendant at the Saint-Gobain Plant were used in a wide variety of commercial and industrial applications, including as roofing material for large structures such as dome roofs, laminate substrate for circuit boards, and cooking sheets.

44.     Defendant's manufacturing operations at the Saint-Gobain Plant consisted primarily of the application of Teflon coatings to fiberglass fabrics in up to 13 coating lines,

where the fabrics were dip coated in a liquid chemical solution consisting of Teflon and various other chemicals, including PFOA.

45.    This chemical solution was then melted or "fused" onto the fabrics in each coating line's vertical oven, or tower, at temperatures in excess of 650 °F.  The exhaust from each vertical oven was released into the air through each coating line's tower, thereby releasing hazardous air emissions, including PFOA, into the atmosphere in and around the Saint-Gobain Plant.

46.    Defendant's manufacturing operations at the Saint-Gobain Plant resulted in at least 30 air quality complaints to the DEC's Air Pollution Control Division between 1977 and 2000.  The majority of these complaints pertained to noxious odors released from the Plant, while others dealt with large amounts of smoke and/or visible emissions being emitted from the Plant.

47.    Defendant's manufacturing operations at the Saint-Gobain Plant resulted in multiple enforcement actions brought by the DEC's Air Pollution Control Division against Defendant Saint-Gobain due to odors and/or other issues related to the Saint-Gobain Plant's air emissions.

48.    Defendant's manufacturing operations at the Saint-Gobain Plant created the atmospheric deposition, via air emissions, of significant amounts of PFOA into the environment, resulting in environmental contamination around the facility, including the contamination of the local groundwater aquifer and numerous private drinking water supply wells.

49.    ChemFab Corporation, Defendant Saint-Gobain's predecessor, disposed of waste, including degreasers, lubricating and hydraulic oils, settling basin sludge, and waste oil and

12

solvents, at the Bennington Municipal Landfill ("Bennington Landfill") between 1969 and 1987, the date of the Bennington Landfill's closure.

50.      Following its closure, the Bennington Landfill was designated as a Superfund site under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  ChemFab Corporation was identified as a Potentially Responsible Party ("PRP") under CERCLA as part of the Bennington Landfill's Superfund designation and was required to pay the United States and/or the State of Vermont approximately $180,000.00.

51.      In addition to its air emissions, Defendant Saint-Gobain routinely discharged chemicals, including PFOA, into floor drains throughout the Saint-Gobain Plant.  Chemical spills which included PFOA also were discharged into these drains.  Used chemical solutions that included PFOA were put into barrels and compacted outside the Plant, resulting in discharges onto the ground and into Paran Creek.  Defendant Saint-Gobain also discharged liquids through one or more pipes to the exterior of the Plant; these discharges flowed onto the ground and into Paran Creek. These various discharges of chemicals, including PFOA, into the environment resulted in contamination of the soil, surface water, and groundwater around the Saint-Gobain Plant.

52.      Throughout the operation of the Saint-Gobain Plant, Defendant had no policies or procedures regarding the proper or adequate handling, cleanup, or disposal of PFOA.

53.      Upon information and belief, due to inadequate and unsafe practices related to the handling, cleanup, and/or disposal of PFOA by Defendant at the Saint-Gobain Plant, Saint-Gobain emitted, leaked, spilled, dumped, released, or otherwise discharged PFOA from the Saint-Gobain Plant into soil, sediments, groundwater, and/or surface waters, thereby causing

environmental contamination around the facility, including the contamination of the local groundwater aquifer and numerous private drinking water supply wells.

54.     Upon information and belief, Defendant Saint-Gobain discharged PFOA from the Saint-Gobain Plant into the environment through other means that will be revealed during discovery.

**Discovery of PFOA Contamination by the State DEC**

55.     In early February of 2016, the DEC, in response to the discovery of PFOA contamination from a Saint-Gobain facility in nearby Hoosick Falls, New York, sampled three private drinking water wells and two commercial wells near the site of the Saint-Gobain Plant in North Bennington for the presence of perfluorinated chemicals.  All five of these wells were found to contain PFOA at levels above 20 ppt, the VHA limit established by the DOH.

56.     Based on these sampling results, the DEC, in early March of 2016, developed an initial sampling plan to sample all private drinking water wells and water sources, including surface water and sediments, within a 1.5 mile radius of the Saint-Gobain Plant.  The State of Vermont (the "State") also committed to the provision of bottled water to all residents within this 1.5 mile radius until all impacted water sources could be determined.

57.     As part of this initial sampling plan, DEC sampled approximately 180 private drinking water wells within a 1.5 mile radius of the Saint-Gobain Plant. The analytical results from this sampling showed that approximately 116 of these wells contained some level of PFOA contamination, and that approximately 105 of these wells were contaminated with levels of PFOA in excess of 20 ppt.  In fact, analytical results from this initial sampling showed levels of PFOA contamination in private drinking water wells as high as 2,730 ppt, more than 136 times the VHA limit established by the DOH.

58.     In early March 2016, DEC notified Defendant Saint-Gobain that it was likely responsible for the recently discovered PFOA contamination around the Saint-Gobain Plant and formally requested that Saint-Gobain commit to a series of actions to address the threat to public health, welfare, and the environment posed by the PFOA contamination.

59.     In mid-March of 2016, based on the results of the initial sampling plan, DEC expanded its sampling of private drinking water wells into three areas outside the original 1.5 mile radius around the Saint-Gobain Plant.  Of the approximate 50 wells sampled in these three expanded areas, 28 wells were shown to contain some level of PFOA contamination, and 19 of these wells were shown to be contaminated with levels of PFOA in excess of 20 ppt. Furthermore, five monitoring wells at the Bennington Landfill showed levels of PFOA contamination between 18 ppt and 140 ppt.

60.     In early April of 2016, DEC announced that it had again expanded the sampling area beyond the expanded area established in mid-March, to include approximately 150 additional private drinking water supply wells in the area between the William H. Morse State Airport and the Village of Old Bennington, in addition to areas around the former Bennington Landfill.  DEC also announced that it would be conducting "spot check" samples outside of this expanded area near Corey Lane, Whipstock Road, Airport Road, along Route 7A, in the area of Cold Spring Road near Shaftsbury, as well as near other area landfills.

61.     In late April of 2016, DEC again expanded the sampling area to include additional areas around the Northside Drive facility as well as areas around the Kocher Drive Dump.

62.     Between February and mid-April of 2016, DEC sampled approximately 232 private drinking water wells for PFOA contamination, and of these wells, approximately 126 wells showed levels of PFOA contamination above the DOH Health Advisory Limit of 20 ppt.

63.     By mid-April of 2017, DEC had sampled approximately 570 private drinking water wells for PFOA contamination, and of these wells, 276 showed levels of PFOA contamination above the DOH Health Advisory Limit of 20 ppt.

64.     On April 13, 2016, the Vermont Agency of Natural Resources ("ANR"), based on its findings that PFOA is toxic, persistent in the environment, causes and contributes to adverse chronic health effects, and is a suspected carcinogen, adopted an emergency rule classifying PFOA as a hazardous waste under Vermont Hazardous Waste Management regulations.   In December 2016, Vermont ANR adopted a permanent rule classifying PFOA as a hazardous waste.

65.     In late April of 2016, the DOH, in conjunction with the Centers for Disease Control ("CDC"), as part of the State's response to the PFOA contamination of private drinking water wells, began to fund blood testing of North Bennington and Bennington residents whose drinking water wells have shown the presence of elevated levels of PFOA.

66.     Plaintiffs and Members of the Class whose wells have been contaminated with PFOA above the 20 ppt limit have been advised not to use their well water for drinking or cooking purposes.

67.     Plaintiffs and Members of the Class whose private drinking water wells have been contaminated with PFOA have also suffered soil contamination in addition to the ground water contamination on their property.

68.     As a result of the ground water and soil contamination, Plaintiffs and Class Members have suffered diminution of property value.

16

69.     As a result of the ground water contamination, Plaintiffs and Class Members have been required to use bottled water and have suffered annoyance, upset, and aggravation and inconvenience.

70.     As a result of the contamination of their private drinking water supply wells with PFOA, Plaintiffs and Class Members have consumed and ingested PFOA over many years, with deleterious long-term physiologic alterations and damage to their blood, liver, kidneys, immune system, and other organs.

71.     Defendant Saint-Gobain, through its handling and disposal of PFOA, has contributed and is contributing to the past or present handling, storage, treatment, transportation, or disposal of a solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment, pursuant to federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B).

## CLASS ACTION ALLEGATIONS

72.     Paragraphs 1 - 71 of this Complaint are hereby realleged and incorporated by reference herein.

### Fed. R. Civ. P. 23(a) and 23(b)(3)

73.     Plaintiffs bring this action pursuant to the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure as a Class action on their own behalf and on behalf of other persons similarly situated.  This action satisfies the numerosity, commonality, typicality, predominance, and superiority requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

74.     Plaintiffs and Members of the proposed Class are residents of North Bennington and Bennington, Vermont who reside or resided in the Zone of Contamination that has been designated by the State, and have been damaged through the contamination of their private

17

drinking water supplies with PFOA, and/or the diminution of their property values due to the widespread contamination of properties with PFOA within the Zone of Contamination, and/or through exposure to PFOA-contaminated water.

75.     The Zone of Contamination is those areas of North Bennington and Bennington, Vermont, designated by the State of Vermont as "Designated Areas of Concern in North Bennington and Bennington" on April 26, 2016, the boundaries of which being most recently delineated on April 17, 2017.  As discussed herein, DEC has expanded the boundaries of the Zone of Contamination as the extent of the PFOA contamination has continued to expand beyond the original (and subsequently revised) areas of interest, and, as such, the Zone of Contamination may continue to expand and require amendment and/or modification as defined.

76.     Plaintiffs bring this Class action on behalf of the proposed Classes as set forth below:

***Property Damages and Groundwater Protection Act Class***

>   All natural persons, whether minor or adult, including any person claiming by, through or under a Class Member, who have interests in real property within the Zone of Contamination, including, but not limited to, those persons whose private water supply wells have been found to be contaminated with PFOA above 20 ppt.

***Exposure to Contaminated Water Class (Medical Monitoring and other damages)***

>   All persons, whether minor or adult, including any person claiming by, through or under a Class Member, who, as of the time a class is certified in this case, have resided in the Zone of Contamination and have ingested PFOA-contaminated water in the Zone of Contamination and who have suffered accumulation of PFOA in the

18

bodies as demonstrated by blood serum tests disclosing a PFOA level in their blood above the recognized background levels.

77.    Excluded from the Classes are:

a.    Defendant and any entities in which Defendant has a controlling interest, and their legal representatives, officers, directors, successors, or assigns;

b.    The Judge to who this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

c.    Any attorneys, or their immediate family, representing Plaintiffs or Members of the proposed Class;

d.    All persons who otherwise would be included under one or more of the class descriptions but who have filed a lawsuit for manifest personal injury for PFOA-related illness related to exposure to contaminated water;

e.    All persons or entities that properly execute and timely file a request for exclusion from the Class.

78.    Plaintiffs reserve the right to modify and/or amend the definition of the Class if, prior to the Court's determination on whether certification is appropriate, discovery and further investigation reveals that either Class should be modified or amended in any way.

**Numerosity**

79.    Although the exact number of Class Members is uncertain at this time and can be ascertained only through appropriate discovery, the Members of the Class are so numerous that separate joinder of each member is impracticable.  Upon information and belief, the number of Class Members in each class is likely to be well over 500. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and the Court.

80.    Putative Class Members are readily identifiable through publicly available property records.

## Typicality

81.    Plaintiffs' claims are typical of the claims to be advanced by Members of the Classes, and their claims encompass those of the other Class Members in each class, in that the facts and circumstances giving rise to liability are the same, the claims are based on the same legal theories, and the damages suffered by the Plaintiffs are the same kinds of damages suffered by the Members of the Classes.

## Adequate Representation

82.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, as their interests do not conflict, their interests are co-extensive with common rights of recovery based on the same essential facts and legal theories, they are members of the same communities, they are similarly damaged and are seeking the same remedies, and they intend to prosecute this action vigorously.

83.    Plaintiffs have retained counsel competent and experienced in complex Class action and toxic tort litigation, including actions like this one, representing putative Class Members whose properties have been contaminated and/or devalued by the acts and omissions of a polluter.  Plaintiffs' counsel also intends to prosecute this action vigorously.

## Predominance of Common Questions

84.    With respect to issues and claims raised herein, questions of law and fact common to Class Members predominate over any questions affecting only individual members of the Classes.  The only individual question affecting individual Members of the Classes is the precise amount of damages to which each Class Member is entitled, and such damages may be

reasonably and fully determined and calculated through the mechanism of a class action.  On the other hand, there are numerous questions of law or fact common to the Classes, including, but not limited to:

a. The factual history of use of PFOA by Defendant in its manufacturing operations in North Bennington and Bennington, and in particular at the Saint-Gobain Plant, as well as the factual history of the use, handling, discharge and disposal of PFOA by Defendant at the Saint-Gobain Plant;

b. Whether Defendant owed a duty to Plaintiffs and Members of the Classes to prevent and/or minimize any discharge or release of PFOA into the surrounding environment;

c. Whether Defendant knew or reasonably should have known that the failure to have policies or procedures regarding the proper handling, cleanup, or disposal of PFOA would result in contamination to groundwater and soils and cause damages to Plaintiffs and Members of the Classes;

d. Whether it was reasonably foreseeable to Defendant that the discharge or release of PFOA into the environment would result in contamination of groundwater and soils and cause damages to Plaintiffs and Members of the Classes;

e. Whether Defendant has caused the devaluation of Plaintiffs' and Class Members' property;

f. Whether the use, handling, discharge and/or disposal of PFOA by Defendant at its facilities have created a nuisance as to Plaintiffs and Members of the Classes by interfering with their use and enjoyment of their property;

g. Whether the disposal of PFOA by Defendant may create an imminent and substantial endangerment to health and environment;

21

h.  Whether the use, handling, discharge and/or disposal of PFOA by Defendant resulted in an invasion of the properties of Plaintiffs and Members of the Classes affecting their interest in the exclusive possession of their property;

i.  Whether the use, handling, discharge and/or disposal of PFOA by Defendant constitutes an abnormally dangerous activity for which Defendant is strictly liable; and

j.  Whether Defendant's contamination of the groundwater in the Zone of Contamination in Bennington and North Bennington with toxic PFOA constitutes unreasonable harm to this groundwater through the alteration of its character or quality in violation of Vermont's Groundwater Protection Act, 10 V.S.A. § 1410(c).

### Superiority

85.     A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy.

86.     Absent a Class action, most Class Members would likely find the cost of litigating their claims to be prohibitively high and, therefore, would have not an effective remedy at law. Further, there is no interest by Class Members in individually controlling the prosecution of separate actions.

87.     Class treatment of common questions of law and fact will conserve the resources of the courts and litigants, and will promote consistency and efficiency of adjudication. Whatever difficulties may exist in the management of a Class action will be greatly outweighed by its benefits.

### Fed. R. Civ. P. 23(a) and 23(b)(2) Injunctive or Declaratory Relief

88.     In addition to the above, Plaintiffs bring this Class action under Fed. R. Civ. P. 23(a) and 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Classes, such that final injunctive relief or declaratory relief is appropriate with respect to each Class as a whole.  Such injunctive relief includes, but is not limited to: (1) an injunction to require the connection of each impacted water supply onto municipal water; (2) an injunction to require remediation of the groundwater aquifer upon which Plaintiffs and Class Members depend on for their drinking water; (3) an Order requiring Defendant to implement remedial measures sufficient to permanently prevent PFOAs from further contaminating Class Members' drinking water and/or properties; (4) equitable relief pursuant to the Vermont Groundwater Protection Act, 10 V.S.A. § 1410(c); and (5) an Order requiring a medical monitoring program sufficient to monitor the deleterious effects and potentially-deleterious effects of PFOA on the human body and to detect and remedy these effects to the extent possible.

### Fed. R. Civ. P. 23(a) and 23(c)(4) Certification of Particular Issues

89.     In the alternative to certification under Fed. R. Civ. P. 23(b)(2) or 23(b)(3), Plaintiffs and Members of the Classes seek to maintain a Class action with respect to particular issues under Fed. R. Civ. P. 23(a) and 23(c)(4).

90.     The liability of Defendant for the damages caused to Plaintiffs and Class Members in the Zone of Contamination, including liability for negligence, nuisance, trespass, strict liability, and violation of the Groundwater Protection Act, is suitable for issue certification under Fed. R. Civ. P. 23(c)(4).

## CLAIMS FOR RELIEF

### COUNT 1: NEGLIGENCE

91.     Paragraphs 1 - 90 of this Complaint are hereby realleged and incorporated by reference herein.

92.     Defendant Saint-Gobain owed a duty to Plaintiffs and Class Members to exercise due and reasonable care in its use, handling, disposal and discharge of PFOA and to prevent or minimize any discharge or release of PFOA into the surrounding environment, including into the air, soils, surface water and groundwater, and in particular into the groundwater aquifer which is relied upon by residents of North Bennington and Bennington as the source of their potable water supply.

93.     Defendant Saint-Gobain knew or reasonably should have known that the use of PFOA in its manufacturing processes and/or the discharge or release of PFOA into the environment required adequate safety precautions to ensure that PFOA was not released into the surrounding environment.

94.     Defendant Saint-Gobain knew or reasonably should have known that the use of PFOA in its manufacturing processes and/or the discharge or release of PFOA into the environment was potentially hazardous to human health and the environment.

95.     Defendant Saint-Gobain breached the foregoing duties owed to Plaintiffs and Members of the Class by failing to exercise due care in its use and handling of PFOA and by discharging and disposing of PFOA into the environment in a manner that resulted in the contamination of the air, soils, the local groundwater aquifer, numerous private drinking water supply wells, and private properties.

24

96.     These unsafe levels of PFOA in their private drinking water supply wells have deprived Plaintiffs and Class Members of potable water and resulted in a reduction of Plaintiffs' and Class Members' property values.

97.     As a direct, proximate and foreseeable result of Defendant's breach, Plaintiffs and Members of the Class have suffered damages in the form of real property damage, out of pocket expense, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience, for which Defendant Saint-Gobain is liable in damages.

## COUNT 2: PRIVATE NUISANCE

98.     Paragraphs 1 - 97 of this Complaint are hereby realleged and incorporated by reference herein.

99.     Defendant Saint-Gobain, through its acts and omissions relating to its use, handling, discharge, and/or disposal of PFOA, has contaminated Plaintiffs' and Class Members' properties and/or private drinking water supply wells with PFOA, thereby unreasonably and substantially interfering with Plaintiffs' and Class Members' property rights, privileges, and use and enjoyment of property so as to constitute a private nuisance.

100.    As a direct and proximate result of Defendant's creation and maintenance of a private nuisance, Plaintiffs and Class Members have suffered damages in the form of real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience, for which Defendant Saint-Gobain is liable in damages.

## COUNT 3: TRESPASS

101.    Paragraphs 1 - 100 of this Complaint are hereby realleged and incorporated by reference herein.

102.    Defendant's intentional acts or omissions in its use, handling, discharge, and/or disposal of PFOA has proximately caused PFOA to enter onto the property of the Plaintiffs and Class Members, resulting in the contamination of Plaintiffs' and Class Members' properties and private drinking water supply wells with PFOA, without Plaintiffs' and Class Members' permission, thereby affecting Plaintiffs' and Class Members' interest in the exclusive possession of their property.

103.    Defendant Saint-Gobain knew or reasonably should have known that its acts or omissions alleged herein could result in an invasion of Plaintiffs' and Class Members' property interests, and that Plaintiffs and Class Members would not consent to this trespass.

104.    As a direct and proximate result of Defendant's trespass, Plaintiffs and Class Members have suffered damages in the form of real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience, for which Defendant Saint-Gobain is liable in damages.

## COUNT 4: BATTERY

105.    Paragraphs 1 - 104 of this Complaint are hereby realleged and incorporated by reference herein.

106.    Defendant Saint-Gobain contacted the Plaintiffs and Class Members through the release of PFOA into the Plaintiffs' and Class Members' wells, soils, and groundwater supplies, and thereby into the bodies of the Plaintiffs and Class Members.

107.    Defendant Saint-Gobain intended to contact the Plaintiffs and Class Members through its release of PFOA into the Plaintiffs' and Class Members' wells, soils, and groundwater supply, or were recklessly indifferent to whether such contact occurred.

108.    The contact between the toxic PFOA and the Plaintiffs and Class Members was harmful or offensive.

109.    As a direct and proximate result of Defendant's battery, Plaintiffs and Class Members have suffered damages, including the necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience, for which Defendant Saint-Gobain is liable in damages.

## COUNT 5: STRICT LIABILITY

110.    Paragraphs 1 – 109 of this Complaint are hereby realleged are incorporated by reference herein.

111.    Defendant Saint-Gobain's manufacturing processes utilizing PFOA, as well as its handling, disposal and/or discharge of PFOA—a hazardous and toxic chemical—constituted an abnormally dangerous activity for which Defendant is strictly liable.

112.    PFOAs toxicity, persistence in the environment and in the human body, and other properties pose an inherent and extraordinary danger of lasting contamination of property and of threats to human health.

113.    The contamination of the property, drinking water, and bodies of Plaintiffs and Class Members was a probable and foreseeable consequence that resulted from Defendant Saint-Gobain's use of PFOA in its manufacturing processes, handling, disposal and/or discharge of PFOA.

27

114.    As a direct and proximate result of Defendant's abnormally dangerous activity, Plaintiffs and Class Members have suffered damages in the form of real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience, for which Defendant Saint-Gobain is liable in damages.

## COUNT 6: VIOLATION OF THE VERMONT GROUNDWATER PROTECTION ACT

115.    Paragraphs 1 – 114 of this Complaint are hereby realleged are incorporated by reference herein.

116.    Pursuant to the Vermont Groundwater Protection Act, 10 V.S.A. § 1390 et seq., "all persons have a right to the beneficial use and enjoyment of groundwater free from unreasonable interference with other persons." 10 V.S.A. § 1410(a)(4).

117.    Defendant Saint-Gobain's contamination of the groundwater in Bennington and North Bennington with toxic PFOA constitutes unreasonable harm through the alteration of the character or quality of the groundwater in violation of the Groundwater Protection Act, 10 V.S.A. § 1410(c).

118.    Plaintiffs are "persons" within the meaning of 10 V.S.A. § 1410(b)(3), and are persons who may maintain an action under the Act for equitable relief and/or to recover damages for Saint-Gobain's unreasonable harm to the groundwater in Bennington and North Bennington.

119.    As a direct and proximate result of Defendant Saint-Gobain's violation of the Groundwater Protection Act, Defendant is also liable to Plaintiffs for equitable relief, including, but not limited remediation and clean-up to of the contaminated groundwater. Defendant also is liable to Plaintiffs for damages for its unreasonable harm to the groundwater, including damage to the water supply itself.

**RELIEF DEMANDED**

WHEREFORE, Plaintiffs and Members of the above proposed Class respectfully request this Court to grant the following relief:

(a) That this case be certified as a Class action as proposed in this Second Amended Complaint pursuant to applicable Rules of Civil Procedure;

(b) Award Plaintiffs and Class Members damages in an amount greater than Five Million Dollars ($5,000,000) sufficient to compensate them for real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience;

(c) Issue an injunction requiring Defendant to: (1) connect each impacted water supply within the Zone of Contamination onto municipal water; (2) the establishment and implementation of remedial measures sufficient to permanently prevent PFOAs from further contaminating Plaintiffs' and Class Members' drinking water supplies and/or properties; (3) the establishment and implementation of a long-term medical testing protocol for Plaintiffs and Class Members to monitor their health and diagnose at an early stage any ailments associated with exposure, inhalation or ingestion of PFOA; and (4) the establishment of additional steps, to be proven at trial, that are determined necessary to remediate Plaintiffs' and all Class Members' properties and/or residences to eliminate the presence of PFOA;

(d) Award appropriate equitable relief and damages for the Defendant's unreasonable harm to groundwater pursuant to Vermont's Groundwater Protection Act, 10 V.S.A. § 1410(c);

29

(e) Award attorney fees and costs and expenses incurred in connection with the litigation of this matter; and

(f) Award such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted this 28th day of June, 2017.

Emily J. Joselson, Esq.
James W. Swift, Esq.
LANGROCK SPERRY & WOOL, L.L.P.
P.O. Drawer 351
Middlebury, VT 05753
T: (802) 388-6356
F: (802) 388-6149
ejoselson@langrock.com
jswift@langrock.com

Gary A. Davis, Esq.
(*Pro Hac Vice*)
James S. Whitlock, Esq.
(*Pro Hac Vice*)
Douglas A. Ruley, Esq.
DAVIS & WHITLOCK, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
druley@enviroattorney.com
jwhitlock@enviroattorney.com
gadavis@enviroattorney.com

Patrick J. Bernal, Esq.
Robert E. Woolmington, Esq.
WOOLMINGTON, CAMPBELL, BERNAL &
BENT, P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
T: (802) 362-2560
F: (802) 362-7109
patrick@greenmtlaw.com
rob@greenmtlaw.com

David F. Silver, Esq.
Timothy M. Andrews, Esq.
BARR STERNBERG MOSS SILVER &
MUNSON, P.C.
507 Main Street
Bennington, VT 05201
T: (802) 442-6341
F: (802) 442-1151
tandrews@barrsternberg.com
dsilver@barrsternberg.com

*Attorneys for Plaintiffs*