UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JAMES D. SULLIVAN, LESLIE ADDISON, WILLIAM S. SUMNER, JR., RONALD S. HAUSTHOR, GORDON GARRISON, TED and LINDA CRAWFORD, individually, and on behalf of a Class of persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION,<br><br>Defendant. | Case No. 5:16-cv-125 |

**DECISION ON MOTION TO COMPEL PRODUCTION OF MEDICAL RECORDS AND INFORMATION**
**(Doc. 83)**

This is a groundwater pollution case arising out of the alleged discharge of perfluorooctanoic acid ("PFOA") from two factories in Bennington and North Bennington, Vermont. Defendant Saint-Gobain Performance Plastics Corporation ("Saint-Gobain") is the successor to Chemical Fabrics Corporation. Plaintiffs allege that from 1977 through 2002, both companies discharged PFOA into the air and water. They claim that the resulting contamination has reduced the value of their property and endangered their health. They seek money damages, connection to clean water through the public water supply, and medical monitoring to give warning of any future health problems related to exposure to PFOA. (*See* Doc. 89.)

Plaintiffs propose two classes of claimants: people whose real property has been damaged by contamination, and people who have ingested PFOA-contaminated water and have elevated levels of PFOA in their blood serum. The latter group seeks medical monitoring. Many potential class members will have both types of claims. Among the groups excluded are people

who have filed a lawsuit for personal injury for PFOA-related illness due to contaminated water. (Doc. 89 ¶ 77(d).)

The case is at an early stage. The court has issued one substantive ruling declining to dismiss or stay the case until efforts by the Vermont Department of Environmental Conservation to establish maximum permissible levels of PFOA and related state-court litigation are concluded. (Doc. 29.) Under the current scheduling order, Plaintiffs are obligated to file their motion for class certification by October 1, 2017. (Doc. 98.) In the meantime, both sides are engaging in discovery.

I.      **Motion to Compel**

Defendant has filed a motion to compel relating to production of medical records, employment records, and workers compensation records. It also seeks answers to interrogatories related to these records. For each proposed class representative who alleges that he or she has ingested PFOA through drinking water, the defendant seeks 50 years of medical records and all employment and workers compensation records. (Doc. 83.)

Defendant argues that whether medical monitoring is justified in any individual case requires consideration of the class member's history of exposure to PFOA as well as other factors unrelated to PFOA which may require an increased level of medical scrutiny. Defendant seeks to conduct an individualized inquiry into the health history of each class representative (excluding people who do not have elevated PFOA levels and assert property damage claims only).

Plaintiffs oppose the request on the ground that individual health histories are irrelevant to the question of whether the population of people exposed to PFOA requires a higher level of monitoring. (*See* Doc. 91.) The court has considered Saint-Gobain's reply (Doc. 95), Plaintiff's

2

sur-reply (Doc. 100), and Saint-Gobain's response (Doc. 102). The court heard argument on the motion at a hearing on August 28, 2017, at which time the court took the motion under advisement.

## II. Brief Survey of Varying Approaches to Medical Monitoring

Fed. R. Civ. P. 26(b)(1) governs the scope of discovery. It permits discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Relevance in this case depends upon Vermont state law which establishes what the plaintiffs must prove to prevail on their medical monitoring claim.

Vermont has a limited body of decisional law on the issue of medical monitoring. In *Stead v. F.E. Myers Co.*, 785 F. Supp. 56 (D. Vt. 1990), a couple exposed to possible health risks through the contamination of their well water by the defendant's submersible pump were permitted to introduce evidence of an increased risk of cancer in support of a claim for the cost of medical monitoring. The court denied the defendant's motion to exclude this evidence. The motion was premised on the ground that plaintiffs' experts "cannot quantify to a reasonable degree of medical certainty the increased risk of cancer that [they] may experience." *Id.* at 57. The court noted that plaintiffs made no claim of damages "stemming directly from an increased risk of cancer." *Id.*

> Rather, as was stated in the complaint, [they] seek to offer proof of an increased risk of cancer that, while admittedly unquantifiable, is substantial enough to require medical monitoring for many years, the cost for which they seek recovery. When offered for this purpose, quantification of the increased risk to a reasonable degree of medical certainty is not required.

*Id.*

3

Since *Stead*, there have been few medical monitoring cases in Vermont. *See Soutiere v. Betzdearborn, Inc.*, No. 2:99-cv-299, 2002 WL 34381147, at *4 (D. Vt. July 24, 2002) (declining to decide "whether Vermont would recognize medical monitoring as a cause of action or an element of compensable damages").

The parties have identified two lines of decisional law in other states. Courts in some states, particularly Pennsylvania and New Jersey, have described a claim for medical monitoring as an independent cause of action. In *Redland Soccer Club, Inc. v. Department of the Army*, 696 A.2d 137 (Pa. 1997), the Pennsylvania Supreme Court identified the following elements for what it described as a cause of action for medical monitoring:

(1) exposure greater than normal background levels;

(2) to a proven hazardous substance;

(3) caused by the defendant's negligence;

(4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;

(5) a monitoring procedure exists that makes the early detection of the disease possible;

(6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure;

(7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Id.* at 145–46.

*Redland* was a mass tort action brought by approximately 135 individuals who sought the formation of a single trust fund to cover the cost of medical monitoring across the exposed population. The Pennsylvania Supreme Court did not require 135 individual trials to determine whether each claimant could prove the elements of the claim. In declining to exclude the testimony of plaintiffs' medical expert concerning the for various screening procedures and tests

4

at particular age points for the entire population exposed to the contaminants, the court permitted a trial based on collective, not individual experience.

Other courts have applied more stringent requirements based upon the perception that medical monitoring is a cause of action which each plaintiff must establish on the basis of his or her own experience and evidence. In *Rowe v. E.I. Dupont de Nemours & Co.*, No. 06-1810, 2008 WL 5412912 (D.N.J. Dec. 23, 2008), the trial court rejected certification of a class of medical monitoring claimants on the ground that both the proof of exposure and the proof of increased risk of disease must be conducted at the level of the individual. The judge recognized the burden of such a requirement.

> Although the Court recognizes that it would take significant investigative efforts to obtain information specific to each individual in the proposed class, the difficulty of this task does not excuse Plaintiffs from doing it. A class action is not intended to be an easy way around research problems. While the public health sector may rely on assumptions, our tort litigation system does not operate in the same way. Plaintiffs have the burden of proving that each class member has suffered significant exposure to PFOA—they cannot circumvent this requirement by simply relying on assumptions about the general population.

*Id.* at *14.

In contrast, a second group of states led by New York describe medical monitoring as a remedy requiring proof of exposure to toxic chemicals, increased risk of medical harm, and proof by expert testimony that future monitoring costs may be "reasonably anticipated." *Askey v. Occidental Chem. Corp.*, 477 N.Y.S. 2d 242, 247 (App. Div. 1984).[1] The issue has implications not only regarding whether the proof may be individual or based on group experience and data but also on whether existing physical injury is required as a condition for recovery. *See Caronia*

---

[1] The New York Court of Appeals declined to follow *Askey* on an unrelated issue about claim accrual. *See Snyder v. Town Insulation, Inc.*, 615 N.E.2d 999, 1001 (N.Y. 1993).

5

*v. Philip Morris USA, Inc.*, 5 N.E. 3d 11 (N.Y. 2013) (medical monitoring remedy unavailable in the absence of other compensable injury).

Whether the medical monitoring claim is called a remedy or a cause of action does not answer the discovery question. In either event, the plaintiffs' burden of proof is very much the same. The plaintiffs must show:

- exposure to a potentially harmful substance;
- for which the defendant is liable under an accepted legal theory such as negligence, nuisance or strict liability;
- an increase in the risk of injury or disease caused by exposure;
- the availability of a monitoring program which is
    (1) different from the care provided to anyone who sees a doctor regularly; and
    (2) useful for early identification of injury associated with exposure to the harmful substance.

These are among the fundamental questions raised by this case.

For purposes of discovery, the parties do not disagree significantly over the scope of plaintiffs' burden of proof except in one respect. The defense insists that the individual health history of each claimant is critical to the claim. The plaintiffs assert that proof of exposure, increased risk, and the usefulness of medical monitoring are questions to be answered on a class-wide basis without considering individual health histories.

### III. Unnecessary to Decide Now What Law Governs

The discovery motion before the court provides an inadequate basis on which to make a decision which will affect the rest of the case. It is too early to make a fundamental mistake, and there is no need to do so. There are good reasons to wait before committing to one theory of the case. These include the following:

6

The issues before the court at the certification stage do not concern whether one side or the other wins. They concern numerosity, common questions of fact and law, typicality of the claims or defenses of the representative parties, and the ability of the class representatives to fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23. The last two categories require a scrutiny of the claims and interests of the class representatives. And the defense is not required to take the plaintiffs' word for it that typicality and adequate protection are present. Whether a proposed class representative has a history of unrelated exposure to toxins or some special susceptibility to the chemicals involved is relevant to these last two criteria. The court does not suggest for a moment that these class representatives who have demonstrated a certain amount of selflessness and determination in agreeing to stand up for their fellow residents in this matter are compromised in their ability to serve in a representational capacity. But the class action process will be stronger if they are subjected to reasonable scrutiny.

Both sides are permitted to develop their case in their own way. Plaintiffs have already indicated that they intend to offer the results of individual blood serum tests for exposure to PFOA. These are relevant to the issue of common questions of fact and law, especially if additional testimony relates the elevated levels to exposure from defendant's factories. Again, the defense is not required to take the plaintiffs' word for it concerning common elements of exposure and causation. The class representatives serve the function of being a sample of the class members as a whole. An inquiry into other potential sources for the elevated PFOA is fair. Again, the court expresses no opinion about whether other sources of PFOA contamination are likely to be present. But the defense cannot be precluded from looking.

IV.     **Reduction of Scope of Discovery Request**

For the above reasons, the court will grant the motion to compel in part. But before doing so, the court considers the scope of the request. It is excessive. At oral argument, the defense indicated that despite asking for such an intrusive and monumental disclosure, counsel intended to apply a rule of reason in limiting their requests. This time it is the plaintiffs who are not required to take the other's side word for it. The court will reduce the scope of the request to reflect the true needs of the case.

A.      **Medical Records**

Requesting medical records over 50 years—close to a lifetime in many cases—is excessive. It would require medical records to be located as far back as 1967. It would require the disclosure of records of births and deliveries, childhood illness, orthopedic injuries, treatment for psychological problems, and a host of other conditions which are highly unlikely to contain any information about chemical exposure. The court will permit the discovery of records of primary physicians for the last 20 years. If these reveal any reasonable basis for a belief that other doctors or hospitals have information about potential exposure to toxins or treatment for conditions related to PFOA exposure, the defense may follow up with additional requests within the 20 year period. Any request shall be copied to plaintiffs' counsel. Named Plaintiffs shall answer interrogatories concerning all places they have received medical treatment and the conditions for which they sought treatment in the last 20 years.

B.      **Employment Records**

Named Plaintiffs shall answer interrogatories concerning their employment over the course of their lives. It seems unlikely that a school teacher became contaminated with PFOA through her employment. A factory or construction worker may not be so fortunate. Defendant

is entitled to seek disclosure of all employers over the course of the named Plaintiff's work history and to request records from those employers which have some reasonable potential for being the source of exposure to PFOA. Sending out requests to every employer will result in the disclosure of irrelevant disciplinary history, tax and income information, performance reviews, and other information which has nothing to do with toxic exposure. Again, any request shall be copied to Plaintiffs' counsel. Each such copy shall be accompanied by a short explanation of the good faith basis for believing that such employment may have resulted in exposure to PFOA.

### C. Workers Compensation Files

These shall be produced. Plaintiffs shall answer interrogatories concerning any workers compensation claims they may have made over the course of their work history.

### Conclusion

The motion to compel (Doc. 83) is GRANTED IN PART. The defendant may conduct discovery of health, employment, and workers compensation records as directed by this decision.

Dated at Rutland, in the District of Vermont, this 12 day of September, 2017.

Geoffrey W. Crawford, Judge
United States District Court