UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

JAMES D. SULLIVAN *et al.*,
individually, and on behalf of a
Class of persons similarly situated,
                    *Plaintiffs,*

          v.

SAINT-GOBAIN PERFORMANCE
PLASTICS CORPORATION,
                    *Defendant.*

Civil Action No. 5:16-cv-00125-GWC

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT REGARDING THE REMEDY OF MEDICAL MONITORING**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ............................................................................................................................1

   I.   Vermont Recognizes The Remedy Of Medical Monitoring.......................................1

      A.  District of Vermont Precedent Supports the Remedy of
Medical Monitoring. ...................................................................................................1

      B.  Vermont Decisions and the Restatement (Second) of Torts
Support the Remedy...................................................................................................2

      C.  Decisions of Other Jurisdictions Support Medical Monitoring. ...................................3

      D.  The Exposure Class Has Suffered Harm Sufficient to Support
Medical Monitoring. ...................................................................................................6

      E.  Legislative History of Vermont Bills is Irrelevant to the
Court's Decision. ........................................................................................................7

   II.  The Exposure Class Is Entitled To Partial Summary Judgment On
Exposure And The Availability Of A Monitoring Program That
Differs From Routine Care .........................................................................................8

      A.  There Are No Genuine Factual Issues as To Exposure. ...............................................8

      B.  Dr. Ducatman's Monitoring Program Does Not Duplicate
Routine Medical Care. ................................................................................................9

CONCLUSION.......................................................................................................................11

i

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. The Board of Education of City of New York*,
648 F. App'x 118 (2d Cir. 2016) .......................................................................... 1

*Ali v. Mukasey*,
529 F.3d 478 (2d Cir. 2008) ................................................................................ 9

*Allen v. Uni–First Corp.*,
151 Vt. 229 (1988) ............................................................................................... 3

*Baker v. Saint–Gobain Performance Plastics Corp.*,
232 F. Supp. 3d 233 (N.D. N.Y. 2017)............................................................... 4

*Bell v. 3M Company*,
344 F. Supp. 3d 1207 (D. Colo. 2018)................................................................ 4

*Bower v. Westinghouse Elec. Corp.*,
522 S.E.2d 424 (W.Va. 1999).............................................................................. 5

*Burdick v Tonoga*,
2018 WL 3355239 (N.Y. Sup. Ct. July 3, 2018) ................................................ 8

*Caronia v. Philip Morris USA, Inc.*,
5 N.E. 3d 11 (N.Y. 2013)................................................................................ 4, 5

*Dacey v. Design*,
2003 WL 25652480 (Vt. Super. Ct. 2003) .......................................................... 2

*Donovan v. Philip Morris USA, Inc.*,
2012 WL 957633 (D. Mass. Mar. 21, 2012)........................................................ 5

*Du Grenier v. Encompass Ins. Co.*,
2017 WL 9472173 (D. Vt. Dec. 28, 2017) .......................................................... 1

*Dumontier v. Schlumberger Tech. Corp.*,
543 F.3d 567 (9th Cir. 2008) ............................................................................... 5

*Frank K. v. Comm'r of Social Security*,
371 F. Supp. 3d 163 (D. Vt. 2019) ...................................................................... 9

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
746 F.2d 816 (D.C. Cir. 1984)............................................................................. 5

1001082.1

*Hansen v. Mountain Fuel Supply Co.,*
858 P.2d 970 (Utah 1993) .......................................................................... 5

*Hardwick v. 3M Company,*
2019 WL 4757134 (S.D. Ohio Sept. 30, 2019) ......................................... 5

*Hinton ex rel. Hinton v. Monsanto Co.,*
813 So.2d 827 (Ala. 2001) ......................................................................... 7

*Holtz v. Rockefeller & Co., Inc.,*
258 F.3d 62 (2d Cir. 2001) ......................................................................... 1

*In re Paoli Railroad Yard PCB Litigation,*
916 F.2d 829 (3d Cir. 1990) ....................................................................... 1

*In re SLM Intern., Inc.,*
1999 WL 34971879 (Bankr. D. Vt. July 30, 1999) ................................... 3

*In re Young's Tuttle Street Row,*
182 Vt. 631 (2007) ...................................................................................... 2

*John Larkin, Inc. v. Marceau,*
184 Vt. 207 (2008) ...................................................................................... 3

*Juaire v. Juaire,*
128 Vt. 149 (1969) ...................................................................................... 7

*Merry v. Westinghouse Elec. Corp.,*
684 F. Supp. 847 (M.D. Pa. 1988) ............................................................. 1

*Metro-North Commuter R. Co. v. Buckley,*
521 U.S. 424 (1997) ................................................................................ 3, 4

*Meyer ex. rel. Coplin v. Fluor Corp.,*
220 S.W. 3d 712 (Mo. 2007) ..................................................................... 5

*Myrick v. Peck Elec. Co.,*
204 Vt. 128 (2017) ................................................................................. 3, 6

*Neronsky v. Sutowski,*
2002 WL 34422308 (Vt. 2002) .................................................................. 2

*O'Connell v. Killington, Ltd.,*
164 Vt. 73 (1995) ........................................................................................ 2

*Perrine v. E.I. du Pont de Nemours and Co.,*
694 S.E.2d 815 (W.Va. 2010) .................................................................... 5

1001082.1

*Redland Soccer Club, Inc. v. Dept. of the Army*,
  696 A.2d 137 (Pa. 1997) ................................................................. 5

*Rhodes v. E.I. du Pont de Nemours & Co.*,
  636 F.3d 88 (4th Cir. 2011) ........................................................... 5

*Soutiere v. Betzdearborn, Inc.*,
  2002 WL 34381147 (D. Vt. July 24, 2002) .................................. 1

*Stead v. F.E. Myers Co.*,
  785 F. Supp. 56 (D. Vt. 1990) ...................................................... 1

*Sullivan v. Saint–Gobain Performance Plastics Corp.*,
  2017 WL 3726435 (D. Vt. May 1, 2017) ...................................... 3

*Theer v. Philip Carey Co.*,
  628 A.2d 724 (N.J.1993) ............................................................... 5

*Titchenal v. Dexter*,
  166 Vt. 373 (1997) ........................................................................ 7

*United States v. Tenzer*,
  213 F.3d 34 (2d Cir. 2000) ........................................................... 9

*Walsh v. Cluba*,
  198 Vt. 453 (2015) ........................................................................ 2

*West Morgan-East Lawrence Water and Sewer Authority v. 3M Company*,
  208 F.Supp.3d 1227 (N.D. Ala. 2016) ......................................... 5

**Other Authorities**

Restatement (Second) of Torts (1965) ................................................... 3, 6

Restatement (Second) of Torts (1977) ................................................ 2, 3, 7

Restatement (Third) of Torts, Liab. for Econ. Harm, (approved 2018) ........ 6

Restatement (Third) of Torts, Phys. & Emot. Harm, (2010) ...................... 6

**ARGUMENT**

Plaintiffs' Motion for Summary Judgment [Doc. 310] demonstrates that the Court should enter partial summary judgment for Plaintiffs on the legal question as to whether Vermont recognizes the remedy of medical monitoring. Plaintiffs' Motion further establishes that, while Defendant is not entitled to summary judgment on the Exposure Class's entitlement to medical monitoring, Plaintiffs are entitled to partial summary judgment on two elements of this Court's four-part test for medical monitoring under Vermont law.[1] Defendant has also filed a Motion for Summary Judgment [Doc. 321] raising issues pertaining to medical monitoring, which Plaintiffs will address in their Response thereto.

**I.     VERMONT RECOGNIZES THE REMEDY OF MEDICAL MONITORING.**

   **A.  District of Vermont Precedent Supports the Remedy of Medical Monitoring.**

Defendant erroneously rejects this Court's decision in *Stead v. F.E. Myers Co.*, 785 F. Supp. 56 (D. Vt. 1990), as precedent as to whether Vermont would recognize the remedy of medical monitoring. [Doc. 320 at 4]. Although *Stead* did not explicitly discuss how the Vermont Supreme Court would decide the question, Judge Billings, who served 18 years as a Vermont judge, including nine years on the Supreme Court, did not hesitate to follow the leading cases approving medical monitoring. *Stead*, 785 F. Supp. at 57.[2] Twelve years later, Judge Sessions did not question the availability of medical monitoring, only the form the relief would take. *Soutiere v. Betzdearborn, Inc.*, 2002 WL 34381147, at *4 (D. Vt. July 24, 2002)

---

[1] The Court should exercise its "broad discretion" and excuse Plaintiffs' inadvertent omission of a separate statement of undisputed facts in support of its motion for summary judgment pursuant to L.R. 56(a). *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Plaintiffs' motion sets forth the relevant facts, is fully supported by record citations, and does not require the Court to "hunt through voluminous records" to decipher Plaintiffs' contentions. *Id.* at 74; *see also Du Grenier v. Encompass Ins. Co.*, 2017 WL 9472173, at *4 (D. Vt. Dec. 28, 2017). Furthermore, Defendant has claimed no prejudice from this omission, *Alexander v. The Board of Education of City of New York*, 648 F. App'x 118, 122 (2d Cir. 2016), and in fact filed a Statement of Disputed Facts in response to Plaintiffs' factual contentions. [Doc. 320-1].

[2] C*iting In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829 (3d Cir. 1990); *Merry v. Westinghouse Elec. Corp.*, 684 F. Supp. 847 (M.D. Pa. 1988).

("Regardless of whether Vermont would recognize medical monitoring as a cause of action or an element of compensable damages …").

B. **Vermont Decisions and the Restatement (Second) of Torts Support the Remedy.**

Contrary to Defendant's arguments, the remedy of medical monitoring is entirely compatible with longstanding principles of Vermont common law and the Restatement (Second) of Torts, starting with the principle, undisputed by Defendant, that Plaintiffs may recover for the cost of future medical expenses with competent expert proof. *See e.g., Neronsky v. Sutowski*, 2002 WL 34422308, at *2 (Vt. 2002);  Restatement (Second) Torts §§ 910, 912, 924 (1977). Defendant's primary argument is that medical monitoring is inconsistent with rulings by Vermont courts requiring physical harm in <u>negligence</u> actions for economic losses.  [Doc. 320 at 22].

Ignoring the purpose of the economic loss rule, which is to "maintain the distinction between contract law and tort law," Defendant downplays the well-established principle that negligence liability for economic losses can be found where those losses are accompanied by physical harm, either to person or property.  *Walsh v. Cluba*, 198 Vt. 453, 466 (2015); *O'Connell v. Killington, Ltd*., 164 Vt. 73, 77 (1995).  The Vermont Supreme Court has not defined "physical harm" in such cases, and to the extent Defendant relies on Vermont law for a definition, it quotes from irrelevant cases in an attempt to redefine the terms.[3]

Although the Vermont Supreme Court has only addressed the economic loss rule and the physical harm exception in the context of negligence actions, there is ample precedent for different injury requirements for nuisance, trespass, and strict liability.   Recognizing this

---

[3] Defendant quotes a Vermont trial court order using the terms "actual physical injury" that had nothing to do with the economic loss rule and which granted summary judgment because there was no expert proof to support any injury.  *Dacey v. Design*, 2003 WL 25652480 (Vt. Super. Ct. 2003).  Defendant also quotes from *In re Young's Tuttle Street Row*, 182 Vt. 631, 632 (2007), an appeal of a zoning decision.

2

precedent, this Court has concluded that "actual and substantial threat of contamination" provides the "invasion of … property rights" giving rise to <u>nuisance</u>. *Sullivan v. Saint–Gobain Performance Plastics Corp.*, 2017 WL 3726435, at *2, *8 (D. Vt. May 1, 2017), *citing Allen v. Uni–First Corp.*, 151 Vt. 229, 235 (1988);  *Myrick v. Peck Elec. Co.*, 204 Vt. 128, 131, 136 (2017).[4]

For <u>trespass</u>, this Court concluded that Vermont law does not contain "a 'hard-line' position concerning the 'impact' required to sustain a trespass action in cases involving intangible matter such as airborne or, by extension, water-borne particles." *Sullivan,* 2017 WL 3726435, at *7, *citing John Larkin, Inc. v. Marceau*, 184 Vt. 207, 213 (2008).  The Court found the "potential health and safety concerns" in this case are sufficient to maintain the trespass action.  *Id.*

For <u>strict liability</u>, Defendant is wrong about a rigid "physical injury" requirement.  The Restatement (Second) of Torts § 519 (1977), cited by Defendant, does not use the term "physical injury," as Defendant suggests.  [Doc. 320 at 13].[5]  Instead, it uses "harm," which is defined as "the existence of loss or detriment in fact of any kind to a person resulting from any cause."  *Id.,* § 7(2) (1965).[6]

## C.  <u>Decisions of Other Jurisdictions Support Medical Monitoring</u>.

Moving outside Vermont, Defendant places great weight on the U.S. Supreme Court's decision in *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997), which dealt with the

---

[4] *See also In re SLM Intern., Inc.*, 1999 WL 34971879, at *14 (Bankr. D. Vt. July 30, 1999) ("Vermont law expressly recognizes 'stigma' damages in environmental contamination cases, that is, fear of contamination alone may be enough to cause damages which are recoverable against the tortfeasor").

[5] "One who carries on an abnormally dangerous activity is subject to liability for <u>harm</u> to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the <u>harm</u>" [emphasis added].  Restatement (Second) of Torts § 519 (1977).

[6] Defendant argues that Vermont courts would be "reluctant to invoke" strict liability in a case like this.  [Doc. 320 at 22].  However, the Restatement's Reporter's Note lists "release into air of poisonous gas or dust" as an example of a typical abnormally dangerous activity.  Notably, Defendant did not seek summary judgment on the strict liability claim.

definition of "injury" under the Federal Employers' Liability Act (FELA), not common law. Contrary to Defendant's suggestion, *Buckley* did not reject medical monitoring, only lump sum damages for medical monitoring. *Id.* at 440–44. The Court did not disagree with state courts that recognize medical monitoring in common law actions, but instead noted that these courts have "suggested, or imposed, special limitations on that remedy," including court-supervised funds to administer medical surveillance. *Id.* at 440–41.[7] Several state courts have approved medical monitoring since *Buckley*, *see infra*, and the special limitations placed on the remedy by this Court, including for the proof necessary to establish the remedy [Doc. 106 at 5], as well as consideration of a court-supervised program [Doc. 303 at 25, 26], are consistent with the ruling.

Because Defendant is appealing a federal court decision recognizing medical monitoring under New York law, it argues that Plaintiffs are mistaken about New York law.[8] [Doc. 320 at 15-16]. However, *Caronia* did not deny medical monitoring; it found that medial monitoring is a remedy, not an independent equitable cause of action. *Caronia v. Philip Morris USA, Inc.*, 5 N.E. 3d 11, 13-14, 18-19 (N.Y. 2013). The court also discussed prior decisions on the harm supporting the remedy, *Id.* at 18-19, which provide ample support that New York recognizes medical monitoring as a remedy for exposure to PFOA based on the plaintiffs' blood levels and the contamination of their soil and groundwater. *Baker*, 232 F. Supp. 3d at 251–52.

As discussed in Plaintiffs' opening brief, most states that have considered medical monitoring due to toxic exposures have recognized the remedy as consistent with basic tort principles followed by Vermont courts. [Doc. 310 at 14-16]. While some of these states look beyond the economic loss rule requirement of physical harm, they do so consistent with well-

---

[7] *See Bell v. 3M Company*, 344 F. Supp. 3d 1207, 1221-23 (D. Colo. 2018) (discussing the effect *Buckley* has on medical monitoring remedies under state common law in a case involving PFOA and PFOS exposure).

[8] *See Baker v. Saint–Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233 (N.D. N.Y. 2017), *appeal argued*.

established common law tort principles.[9]

However, this Court need not find Vermont courts would look beyond a physical harm requirement to recognize the remedy of medical monitoring.  Instead, it is likely they would recognize the excessive levels of PFOA in the blood of Exposure Class members, the resulting alterations to biomarkers and bodily functions, and the contamination of their properties and water supplies with PFOA as sufficient physical harm to warrant the remedy of medical monitoring, as have the courts of New York, New Jersey, Massachusetts, Pennsylvania, Utah, and Ohio.[10]  Defendant cites contrary cases from other jurisdictions on whether PFOA blood levels and alterations of bodily functions constitute physical harm to the person, but these are not persuasive.[11]  [Doc. 320 at 18-21].  Defendant's reliance on *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 98 (4th Cir. 2011), is misplaced, because the elements for each tort and the requisite injury were based on the vagaries of West Virginia law.  Further, West Virginia has recognized a standalone claim for medical monitoring, instead.  *Perrine v. E.I. du Pont de Nemours and Co.*, 694 S.E.2d 815, 873 (W.Va. 2010);  *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 430-33 (W.Va. 1999).[12]  Vermont courts would likely rely upon the widely accepted

---

[9] *See e.g.*, *Meyer ex. rel. Coplin v. Fluor Corp.*, 220 S.W. 3d 712, 717-719 (Mo. 2007) (*en banc*) ("[r]ecovery for medical monitoring damages is thus consistent with … the principle that a plaintiff is entitled to full compensation for past or present injuries caused by the defendant");  *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 430-33 (W.Va. 1999) ("Since before the turn of the century, this jurisdiction sanctioned the recovery of future medical expenses … The 'injury' that underlies a claim for medical monitoring—just as with any other cause of action sounding in tort—is 'the invasion of any legally protected interest'");  *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 826 (D.C. Cir. 1984) ("It is difficult to dispute that an individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury").

[10] *Caronia*, 5 N.E. 3d at 16; *Theer v. Philip Carey Co.*, 628 A.2d 724, 733 (N.J. 1993);  *Donovan v. Philip Morris USA, Inc.*, 2012 WL 957633, at *21-25 (D. Mass. Mar. 21, 2012);  *Redland Soccer Club, Inc. v. Dept. of the Army*, 696 A.2d 137 (Pa. 1997);  *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 977 (Utah 1993);  *Hardwick v. 3M Company*, 2019 WL 4757134, at *9 (S.D. Ohio Sept. 30, 2019) (medical monitoring for PFOA exposure).

[11] One case cited by Defendant, *Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567, 570 (9th Cir. 2008), contains a pithy quote, but the decision turned on the question of whether the Price-Anderson Act's definition of "bodily injury" included radiation exposure, not relevant to the question of the scope of Vermont's economic loss rule.

[12] The other case cited by Defendant, *West Morgan-East Lawrence Water and Sewer Authority v. 3M Company*, 208 F.Supp.3d 1227 (N.D. Ala. 2016), did not involve a claim for medical monitoring, but the court did note that the

definition of "physical harm" in the Restatement (Second) of Torts, which would include both the PFOA blood levels and the alterations to biomarkers and bodily functions in this case, because "physical impairment" is found where "the structure or function of any part of the other's body is altered to any extent even though the alteration causes no other harm." Restatement (Second) Torts § 7(3); § 15 cmt. a.[13]

D. **The Exposure Class Has Suffered Harm Sufficient to Support Medical Monitoring**.

Defendant next erroneously argues that members of the Exposure Class have not suffered physical harm to their properties. To the contrary, residence in the Zone of Contamination, the area of soil and groundwater contamination by Defendant's PFOA, is a prerequisite for membership in the Exposure Class. [Doc. 303 at 7]. Exposure Class members, by definition, drank PFOA contaminated groundwater from wells on their properties. *Id.* Furthermore, it is not the "mere presence of PFOA on their property" that warrants medical monitoring, it is the high levels of PFOA in their blood from drinking that water. Indeed, the presence of PFOA on the property and in the groundwater is a physical harm that takes this case outside the economic loss rule for negligence, even if the blood levels themselves are not considered physical harm.

As this Court has decided, Plaintiffs' nuisance claim does not require "physical harm" to property, although the PFOA contamination provides this harm. *Myrick*, instead of supporting Defendant's argument, found that in "private nuisance claims involving chemical contamination," the harm is the "actual and substantial threat of contamination." *Myrick*, 204 Vt. at 136. Similarly, the trespass by Defendant's chemicals deposited onto the soils and into the

---

Alabama economic loss rule requiring "manifest present injury" would preclude a personal injury claim for elevated levels of PFOA and PFOS in the plaintiffs' blood. *Id.* at 1233. However, the court sustained plaintiffs' claims for negligence, nuisance, abatement of nuisance, battery, and wantonness. *Id.* at 1233-38.

[13] Defendant counters with a quote from the Restatement (Third) of Torts, Phys. & Emot. Harm, § 4 & cmt c., however, there is no reported case in which the Vermont Supreme Court has adopted this new section, which changes some definitions in the Restatement (Second) § 7. Defendant fails to mention that the Restatement (Third) also modifies the "economic loss rule" and contains a new Chapter 1 on Unintentional Infliction of Economic Loss. Restatement (Third) of Torts, Liab. for Econ. Harm, ch. 1 (approved 2018).

drinking water wells of Exposure Class members, harming their property, also supports the remedy of medical monitoring.[14]

There is no support in Vermont law for a narrow, inflexible definition of physical harm for medical monitoring as a remedy for any tort action, such as the "manifest, present illness" requirement from Alabama. *Hinton ex rel. Hinton v. Monsanto Co.*, 813 So.2d 827 (Ala. 2001). Because Plaintiffs' legal rights to pursue remedies for their claims are well supported by Vermont law, this Court has the authority to fashion the equitable remedy of medical monitoring. *See e.g. Titchenal v. Dexter*, 166 Vt. 373, 377 (1997); *Juaire v. Juaire*, 128 Vt. 149, 152 (1969).

## E. Legislative History of Vermont Bills is Irrelevant to the Court's Decision.

Finally, in predicting how Vermont courts would decide the issue of the availability of medical monitoring for common law claims, this Court need not consider the legislative history of medical monitoring bills in the Vermont legislature, because it is irrelevant. There is no legislation to interpret, only court-made law. Defendant's argument is a red herring: lobbyists' statements in support of or in opposition to the bills have nothing to do with how Vermont courts would decide the question in the absence of legislation.[15] In fact, the Vermont Legislature twice passed legislation recognizing the remedy of medical monitoring, in 2018 and 2019,[16] and Governor Phil Scott, in vetoing both bills, expressly endorsed the remedy of medical monitoring.[17] The legislations' stated purpose was to "eliminate . . . uncertainty" left by the lack

---

[14] This same harm also supports the claim for strict liability, if Plaintiffs prove "abnormally dangerous activity." Restatement (Second) of Torts § 519, § 7(2).

[15] If lobbyists' statements can be used to predict what the Vermont courts would do, then an industry lobbyist's statement should also be considered: "I think it's pretty safe to say that Vermont courts will acknowledge medical monitoring as a claim …" Def's Ex. 3 [audio file] (Testimony of Warren Coleman, Esq., before House Judiciary Committee on S.37, Apr. 25, 2019), at 9:33-10:11.

[16] https://legislature.vermont.gov/bill/status/2018/S.197 (S. 197 passed with Senate vote of 17 to 13, and House vote of 92 to 45); https://legislature.vermont.gov/bill/status/2020/S.37 (S. 37 passed with Senate vote of 19 to 11; and House vote of 100 to 42).

[17] Text of Governor Scott's 2018 veto, at https://governor.vermont.gov/governor-scotts-blog/governor-scotts-veto-message-s197, and his 2019 veto, at https://governor.vermont.gov/sites/scott/files/S.37%20veto%20letter%206-17-

of Vermont Supreme Court precedent on medical monitoring.[18]

Plaintiffs are entitled to partial summary judgment as a matter of law on the question of whether medical monitoring is an available remedy for the common law tort claims in this case.

## II.   THE EXPOSURE CLASS IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON EXPOSURE AND THE AVAILABILITY OF A MONITORING PROGRAM THAT DIFFERS FROM ROUTINE CARE.

The undisputed facts and the Court's prior rulings establish that Plaintiffs are entitled to partial summary judgment on two elements of this Court's four-part test for medical monitoring: exposure to a potentially harmful substance, and the availability of a monitoring program that differs from routine care.  [Doc. 105 at 6].

### A.   There Are No Genuine Factual Issues as To Exposure.

The evidence of exposure here is undisputed, as PFOA blood serum tests unequivocally demonstrate that all members of the Exposure Class have been exposed to above background levels of PFOA.  Specifically, these tests demonstrate that Exposure Class members, including the named class representatives, have suffered PFOA exposures above the national background level of 2.1 µg/l,[19] the exposure level Dr. Ducatman identified as necessitating medical monitoring.  As Defendant has produced no evidence whatsoever to create any genuine factual issue as to this element, the Court should enter partial summary judgment in favor of Plaintiffs.  *See Burdick v Tonoga*, 2018 WL 3355239, at *11 (N.Y. Sup. Ct. July 3, 2018) ("no dispute that exposure above background levels has been established through blood serum tests").

Defendant's sole argument against entry of partial summary judgment on this class-wide

---

19.pdf.

[18] https://legislature.vermont.gov/assets/Legislative-Reports/2017-1-13-FINAL-Act-154-Legislative-Report-and-Appendices.pdf, Appendix G, at 27 – 28.

[19] Representative Plaintiffs Sullivan, Addison, Sumner, Hausthor, Linda Crawford and Knight all: reside in the Zone of Contamination;  consumed PFOA contaminated water;  and, as demonstrated by PFOA blood serum tests, have above-background levels of PFOA in their blood.  [Doc. 107-50, ¶ 5];  [Doc. 107-51, ¶ 5];  [Doc. 107-52, ¶ 6];  [Doc. 107-53, ¶ 5];  [Doc. 107-56, ¶ 5];  [Doc. 107-57, ¶ 5].

PFOA exposure is procedural and immaterial – that because class notice has not yet issued, there is "insufficient knowledge" of the identity of the members of the Exposure Class or their levels of exposure.  [Doc. 320 at 5].  While this Court has not yet directed Plaintiffs to issue class notice under Rule 23,[20] identification of and notice to the Exposure Class has no bearing on whether Plaintiffs have demonstrated exposure as a matter of law.  Furthermore, the specific exposure levels of as yet unidentified class members are irrelevant, so long as they have a blood test demonstrating a PFOA blood level in excess of 2.1 µg/l.  [Doc. 303 at 27].  Similarly, the Court should also reject Defendant's attempts to conflate two different elements of this Court's test—exposure and increased risk.  [Doc. 320 at 5-7].  These are distinct requirements, and while Defendant's experts dispute increased risk, they do not dispute the exposure itself.  Plaintiffs have acknowledged, despite the clear weight of expert testimony, that there are disputed factual issues on increased risk precluding summary judgment for either party.  [Doc. 310 at 22].

**B. <u>Dr. Ducatman's Monitoring Program Does Not Duplicate Routine Medical Care</u>.**

The Court should also enter partial summary judgment for Plaintiffs on the first portion of the fourth element of this Court's test—the availability of a monitoring program which is different from the care provided to anyone who sees a doctor regularly—as it has already concluded that Dr. Ducatman's program meets this criterion.  This conclusion is the law of the case,[21] and the Court should not entertain Defendant's attempts to continue to dispute resolved issues.[22]

---

[20] Plaintiffs have filed a Motion for Appointment of Class Counsel [Doc. 316] in anticipation of, among other things, issuing class notice(s).

[21] *Frank K. v. Comm'r of Social Security*, 371 F. Supp. 3d 163, 170 (D. Vt. 2019) (one branch of law-of-the-case doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'") (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) and *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

[22] Although the issue was decided in the context of class certification, the Court had full expert reports and nearly three weeks of testimony before it, and its ruling on this issue was unequivocal.

In its Response, Defendant focuses almost exclusively on disputing the *usefulness* of Dr. Ducatman's monitoring program [Doc. 320, at 9-11], which is a distinct part of the fourth element of this Court's test.[23]  As to the availability of a different program, Defendant contends, purportedly based on the medical records of some of the named Plaintiffs, that "Dr. Ducatman proposes monitoring that the individual named Plaintiffs already do or should receive."  [Doc. 320, at 9].  However, this Court, following review of thousands of pages of expert reports, days of testimony from both parties' medical monitoring experts, and arguments of counsel, already rejected this precise argument, concluding:

> Since testing rests in the hands of medical professionals, an explanation that the remedy is for additional testing not routinely provided is clear enough.  The remedy of additional testing is not tailored to the relationship each class member has with his or her physician or their health history beyond exposure to PFOA.

[Doc. 303, at 32 (emphasis added)];  [*id.* at 17 ("If a class member already suffers from elevated cholesterol, she can skip the test, or more likely receive confirmation that the condition is still present")];  *see also* [Doc. 219-12, at 35 (Dr. Ducatman stating there is evidence that some, not all, named Plaintiffs received some, not all, of his recommended clinical tests, which is the "predictable outcome in the absence of a designed program")].  Further, whether Dr. Ducatman's monitoring program duplicates care Defendant contends the named Plaintiffs should receive [Doc. 320 at 9] is irrelevant, as this Court's test does not account for hypothetical care.[24]

---

[23] Defendant's expert testimony in this regard is highly suspect, particularly the fact that Dr. Guzelian has never in his career encountered a medical monitoring program that met his criteria of usefulness.  [Doc. 288, at 141:25-142:4].

[24] This specious contention is premised on Dr. Guzelian's assumption that "each plaintiff will follow the usual protocols for ordinary preventive medical care appropriate for a person in his or her circumstances," which Dr. Ducatman has testified is "fundamentally flawed" and contrary to the medical literature on preventive care.  [Doc. 219-12, at 35-36].

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court grant partial summary judgment in their favor on the purely legal issue of the availability of the remedy of medical monitoring under Vermont law. Plaintiffs also request partial summary judgment on the exposure element of the Court's four-part test for medical monitoring and the requirement in the fourth element that the program not duplicate routine medical care.

DATED at Middlebury, Vermont this 15th day of November, 2019.

<div style="display:flex; justify-content:space-between;">
<div>

*/s/ Emily J. Joselson*
Emily J. Joselson, Esq.
James W. Swift, Esq.
Justin G. Sherman, Esq.
LANGROCK SPERRY & WOOL, L.L.P.
111 South Pleasant Street
P.O. Drawer 351
Middlebury, VT 05753-0351
T: (802) 388-6356
F: (802) 388-6149
ejoselson@langrock.com
jswift@langrock.com
jsherman@langrock.com

David F. Silver, Esq.
Rachel B. Strecker, Esq.
BARR STERNBERG MOSS SILVER &
MUNSON, P.C.
507 Main Street
Bennington, VT 05201
T: (802) 442-6341
F: (802) 442-1151
dsilver@barrsternberg.com
rstrecker@barrsternberg.com

</div>
<div>

Gary A. Davis. Esq.
(*Pro Hac Vice*)
James S. Whitlock, Esq.
(*Pro Hac Vice*)
DAVIS & WHITLOCK, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

</div>
</div>

*Attorneys for Plaintiffs and the Class*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 15, 2019, a copy of the foregoing was filed electronically in the United State District Court for the District of Vermont.  Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


*/s/ Emily J. Joselson*
Emily J. Joselson, Esq.
*Attorney for Plaintiffs*

12