UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| JAMES D. SULLIVAN, et al., individually, and on behalf of a Class of persons similarly situated,<br><br>　　　　　　　　　　*Plaintiffs*,<br><br>　　　v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION,<br><br>　　　　　　　　　　*Defendant*. | Case No. 5:16-cv-00125-GWC<br><br>Hon. Geoffrey W. Crawford |

**SAINT-GOBAIN'S OPPOSITION TO PLAINTIFFS' MOTION TO
MODIFY SCHEDULING ORDER TO PERMIT DISCLOSURE OF
<u>NEW EXPERT REAL ESTATE APPRAISAL WITNESS</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 3

    I.     There Is No Explanation for an Expert Disclosure That Is Nearly Three Years Late. ......................................................................................................... 3

    II.    Mr. Bailey's Testimony Is Not "Important" Because It Is Futile. ......................... 7

    III.   Saint-Gobain Would Be Severely Prejudiced by This Late Disclosure .............. 12

    IV.   The Trial Continuance Will Not Cure the Prejudice to Saint-Gobain. ................ 15

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

CASES

*Africano v. Atrium Med. Corp.*,
   No. 17-cv-07238 (N.D. Ill. Sept. 3, 2020) ............................................................14

*Bean v. Sears, Roebuck & Co.*,
   129 Vt. 278, 276 A.2d 613 (1971) ........................................................................11

*Beyer v. Anchor Insulation Co.*,
   2016 WL 3676091 (D. Conn. 2016) ...................................................................3, 15

*Bradley v. Buck*,
   131 Vt. 368 (1973) ...........................................................................................11, 12

*Browe v. CTC Corp.*,
   2017 WL 5992333 (D. Vt. 2017) ..........................................................................14

*Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*,
   2019 WL 5694256 (E.D.N.Y. 2019) ......................................................................13

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006) ..................................................................................15

*Downey v. Adloox Inc.*,
   2018 WL 794592 (S.D.N.Y. 2018) ...........................................................................8

*Ellingsworth v. Vermeer Mfg. Co.*,
   949 F.3d 1097 (8th Cir. 2020) .............................................................................1, 7

*Eng-Hatcher v. Sprint Nextel Corp.*,
   2008 WL 4104015 (S.D.N.Y. 2008) .........................................................................1

*Glastetter v. Novartis Pharms. Corp.*,
   107 F. Supp. 2d 1015 (E.D. Mo. 2000), *aff'd*, 252 F.3d 986 (8th Cir. 2001) ..........15

*Gucci Am., Inc. v. Guess?, Inc.*,
   790 F. Supp. 2d 136 (S.D.N.Y. 2011) ....................................................................15

*Haller v. AstraZeneca Pharms. LP*,
   598 F. Supp. 2d 1271 (M.D. Fla. 2009) ..............................................................2, 15

*Hard Surface Sols., Inc. v. Sherwin-Williams Co.*,
   271 F.R.D. 612 (N.D. Ill. 2010) ............................................................................14

*Hiramoto v. Goddard Coll. Corp.*,
   2016 WL 10516022 (D. Vt. 2016) ..........................................................................15

*In re Nat'l Australia Bank Sec. Litig.*,
    2006 WL 3844465 (S.D.N.Y. 2006), *aff'd on other grounds*, *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ...................... 12

*Kramer v. Chabot*,
    152 Vt. 53, 564 A.2d 292 (1989) ........................................................................ 10

*Lambrinos v. Exxon Mobil Corp.*,
    2006 WL 2238977 (N.D.N.Y. Aug. 4, 2006) ...................................................... 10

*Langlois v. Town of Proctor*,
    198 Vt. 137, 113 A.3d 44 (2014) ........................................................................ 11

*Levinson v. Westport Nat. Bank*,
    2013 WL 3280013 (D. Conn. 2013) ...................................................................... 3

*Lopez Espiritu v. Hartman*,
    2020 WL 93891 (E.D.N.Y. 2020) .......................................................................... 8

*McLaughlin v. Langrock, Sperry & Wool, LLP*,
    2020 WL 3118646 (D. Vt. 2020) ........................................................................... 8

*Miller v. Pfizer, Inc.*,
    356 F.3d 1326 (10th Cir. 2004) ........................................................................... 15

*Outley v. City of New York*,
    837 F.2d 587 (2d Cir.1988) ............................................................................... 3, 7

*Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*,
    2015 VT 60 (2015) .......................................................................................... 10, 11

*SEC v. McGinnis*,
    2018 WL 1633592 (D. Vt. 2018) ......................................................................... 14

*Smith v. Bradt*,
    329 F.R.D. 500 (W.D.N.Y. 2019) .......................................................................... 1

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
    118 F 3d 955 (2d Cir.1997) ................................................................................ 3, 7

*Tetzlaff v. Educ. Credit Mgmt. Corp.*,
    521 B.R. 875 (E.D. Wis. 2014), *aff'd*, 794 F.3d 756 (7th Cir. 2015) ...................... 7

*Wiener v. AXA Equitable Life Ins. Co.*,
    2019 WL 1228074 (S.D.N.Y. 2019) ..................................................................... 13

## OTHER AUTHORITIES

15 U.S.C. § 78u-4(e)(1) ......................................................................................... 12

Albert R. Wilson, *Real Estate Damages Measurement: What Works, What Doesn't, and Why Not* 4 (2017) ............................................................................10

Fed. R. Civ. P. 37 ........................................................................................3, 13, 15

Fed. R. Civ. P. 26 ...................................................................................................3

Fed. R. Evid. 701 ...............................................................................................5, 6

Fed. R. Evid. 702 ...................................................................................................5

## PRELIMINARY STATEMENT

Plaintiffs ask the Court to retroactively modify its scheduling order to extend—by nearly three years—their December 2017 deadline to disclose merits experts and allow them to proffer the testimony of Michael Bailey, who purports to opine on the diminution in value of the Named Plaintiffs' homes. But the Court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 4104015, at *1 (S.D.N.Y. 2008). "Thus, a party seeking modification must demonstrate that, despite its diligent efforts, the schedule could not have reasonably been met." *Id.* (citing Fed. R. Civ. P. 16, Advisory Committee Notes, 1983 Amendment). To excuse their untimeliness, Plaintiffs must proffer an adequate explanation, show that the evidence is important, and remedy the prejudice to Saint-Gobain. Plaintiffs have not made such a showing, nor can they.

Plaintiffs cannot explain their delay of nearly three years given that "the desirability of expert testimony should have been readily apparent … when the deadlines of the current Case Management Order were agreed upon." *Smith v. Bradt*, 329 F.R.D. 500, 505 (W.D.N.Y. 2019). Their lack of expert testimony on diminution in value was repeatedly raised by Saint-Gobain—in depositions, expert reports, motions *in limine*, and a motion for summary judgment. Even the most recent event that Plaintiffs say notified them of this issue was the Court's ruling—not its first, but only its most recent—***seven months ago***. Despite the warning signs, Plaintiffs made and sustained a calculated choice to press their theory that lay testimony alone on diminution in value was sufficient. Their decision to first notify the Court and Saint-Gobain of this request just four months before trial, and after their new proposed expert had already completed a 275-page report, finds no excuse. There is no change in the facts or the law, just "a change in litigation strategy," which is not good cause. *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020).

1

This conduct also undermines Plaintiffs' contention that this testimony is important to their case. Their positions equivocate between whether their lay testimony is sufficient (and this new report is thus offered in an "abundance of caution") and whether this expert testimony is essential to their case. But even if it were essential, Mr. Bailey's opinion is futile due to its lack of fit with the facts and governing law. His opinion does not support Plaintiffs' claims of diminution in value damages. His diminished value estimate differs from Plaintiffs' by as much as three-fold, and his home value estimates differ by as much as $145,000. Further, Mr. Bailey's concept of diminution in value does not address the actual standard of damages. He does not address the critical question of whether Plaintiffs' home values ***now*** are lower than they would have been but for PFOA. Instead, he opines only that, ***for a single month in 2016***, they were lower by 13% on average. This is not a theory of damages; it is a theory of windfall: seeking a purported temporary paper loss that was never realized plus retaining the increased value of the asset after it appreciated. That theory should be rejected.

The prejudice to Saint-Gobain from allowing this late-breaking theory would be immense. Even with a continuance, for Plaintiffs to be permitted to sharply pivot, nearly three years after their expert reports were due, to a brand-new theory of damages would substantially harm Saint-Gobain. This case has consistently been litigated on Plaintiffs' calculated theory that lay testimony is adequate to show diminution in value. Saint-Gobain invested a great deal of time and resources in defending against this theory through depositions, expert reports, motion practice, and hearings. All that effort will be for naught if Plaintiffs are permitted to treat this litigation as a "veritable moving target." *Haller v. AstraZeneca Pharms. LP*, 598 F. Supp. 2d 1271, 1296-97 (M.D. Fla. 2009). At every step, Plaintiffs made the strategic choice not to proffer expert testimony on diminution in value, until now. Their request to do so should be denied.

## ARGUMENT

Plaintiffs' attempt to put the burden on Saint-Gobain to demonstrate cause for exclusion of Mr. Bailey's opinion is contrary to the law and unavailing.  The Rules are clear:  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is ***not allowed*** to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, ***unless the failure was substantially justified or is harmless***."  Fed. R. Civ. P. 37(c) (emphasis added).  "The purpose of Rule 37(c)(1) is to prevent the practice of 'sandbagging' an opposing party with new evidence," as Plaintiffs try to do here.  *Levinson v. Westport Nat. Bank*, 2013 WL 3280013, at *5 (D. Conn. 2013) (citation omitted).  Exclusion of Mr. Bailey's opinion is thus "***automatic*** absent a determination of either substantial justification or harmlessness."  *Beyer v. Anchor Insulation Co*., 2016 WL 3676091, at *3 (D. Conn. 2016) (emphasis added).

In the Second Circuit, substantial justification or harmlessness are evaluated under a four-factor test:  "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc*., 118 F 3d 955, 961 (2d Cir.1997) (quoting *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir.1988)).  Each *Outley* factor weighs heavily in favor of excluding Mr. Bailey's testimony.

## I.    There Is No Explanation for an Expert Disclosure That Is Nearly Three Years Late.

Plaintiffs have provided no adequate explanation for their failure to disclose Mr. Bailey's expert opinion within the ample time permitted under the Court's scheduling order (or any time in the three years thereafter).  Plaintiffs claim they are reacting to some perceived "change in the Court's interpretation of the law permitting individual property owners to testify about their

property damages." (Mot. at 9.) In fact, they have long been on notice that their decision to prove their case on property damage without expert testimony was unlikely to prevail. Multiple events in this case highlighted Plaintiffs' need for expert testimony on the issue of property damage. Yet for nearly three years they declined every opportunity to change course. Now, half a year after the Court's last ruling on the matter, they claim to have seen the need for a change. But Plaintiffs' late-breaking regret for a strategic decision they made at the outset of this case and committed to for the duration is not an adequate explanation for why they should be permitted to abandon the theories that Saint-Gobain litigated against for four-and-a-half years and start over.

The many events of the last three years that should have suggested a different approach to Plaintiffs, all of which they discounted or ignored, include the following:

**December 2017.** When Plaintiffs disclosed their expert testimony in support of the merits of their claims, they did not disclose any expert on diminution in property value. Notably, one of their experts, Robert Unsworth, touted his background in "private claims for property value diminution due to groundwater contamination" (Unsworth Merits Rpt. at 26), yet Plaintiffs declined to retain him for this purpose. (Unsworth Tr. at 95:10-22.)

**April 2018.** Shortly before the depositions of the Named Plaintiffs, Plaintiffs furnished a disclosure stating the diminution in value damages that each claimed. (Pls. 4th Initial Disclosures.) At deposition, Saint-Gobain questioned each of the Named Plaintiffs on the substance and basis of their opinions on their home's property value during fact depositions in April 2018. (*See, e.g.* Sumner Tr. at 108:11-24). As Saint-Gobain has briefed extensively, none could provide a reliable basis for their belief that Saint-Gobain caused any alleged diminution. (*See*, Dkt. 216; 321.)

**May 2018.** In accordance with the Court's scheduling order, Saint-Gobain furnished its expert disclosures and identified two appraisal experts, Thomas Jackson, Ph.D., and Trevor

Phillips, who opined that the "Named Plaintiffs' claims of property value diminution are unsupported by the analysis of appropriate market data using generally accepted appraisal methodology." (Phillips Rpt. at 4; *see also* Jackson Rpt. at 21.) Because the Named Plaintiffs' testimony on causation lacked a basis beyond personal belief (*see, e.g.*, T. Crawford Tr. at 159:18-161:13), Mr. Phillips opined that "their claims are neither valid nor reliable." (Phillips Rpt. at 4.)

**July to September 2018.** After expert disclosures were to have been complete, Plaintiffs attempted their first expert do-over, serving rebuttal reports that were not contemplated by the scheduling order, including reports from new experts. Even then, Plaintiffs adhered to their theory of lay testimony on diminution in value. Mr. Unsworth served a rebuttal report, ***not*** offering an opinion on diminution in value, but vouching for the Named Plaintiffs' opinions: "Mr. Phillips' assertion that owners of real property … are unqualified to testify as to the diminution in their homes' values resulting from PFOA contamination of groundwater is unsupportable." (Unsworth Reb. Rpt. at 2.) Yet at deposition, Mr. Unsworth cabined that opinion, testifying that it was meant only to convey "whether [he] think[s] the individual plaintiffs are qualified or whether it's reasonable for them to express an opinion [on diminution in property value]. ***How they're going to go about doing this, I don't know***." (Unsworth Reb. Tr. at 184:22-185:7 (emphasis added).)

**November 2018.** Saint-Gobain moved to exclude the Named Plaintiffs' opinions on property value under Rule 701 and 702. (Dkt. 216.) Plaintiffs did not offer any expert testimony to support their claims, but chose to defend their proffer under Vermont law. (Dkt. 227.)

**April 2019.** On the eve of the Court's hearing on *Daubert* and class certification, Plaintiffs attempted their second expert do-over, in which several of their experts, including Mr. Unsworth, furnished last-minute supplements. (Dkt. 245.) Notably, Plaintiffs did not furnish any expert testimony to support their diminution in value claims.

**July 2019.**   The Court denied Saint-Gobain's motion to exclude Plaintiffs' valuation testimony, ruling that it "satisfied the requirements of Rule 701 so long as the witnesses stick close to their own knowledge and perception" (Dkt. 301 at 6), but "these claims may be weakened by the absence of expert testimony" (Mot. at 3 (quoting Dkt. 301 at 6)), since it is "difficult to support through objective measures." (Dkt. 301 at 6.) The Court rejected Plaintiffs' reliance on Vermont law and held that admissibility was governed by the Federal Rules of Evidence. (Dkt. 301 at 5.)

**November 2019.**   Saint-Gobain moved for summary judgment on Plaintiffs' property claims, pointing out that they had no admissible evidence that any alleged diminution in value was *caused* by PFOA. (Dkt. 321-1 at 23.) Plaintiffs did not argue in response that they should be permitted to fill that evidentiary gap but instead continued to rely solely on their own testimony.

**February 2020.**   The Court ruled that it would consider the admissibility of Plaintiffs' testimony on causation at the time of trial. The Court also issued a "note of caution" that Vermont law "does not give a property owner *carte blanche* to testify as a qualified expert in real estate appraisal or to offer hearsay to the jury as the basis for her opinion." (Dkt. 342 at 3.)

**September 2020.**   Sometime after the February 4, 2020 order, Plaintiffs retained Mr. Bailey, who began work on a nearly 300-page report. (Mot. at 5.) But the first they informed the Court or Saint-Gobain was September 11, 2020—nearly three years after their last expert disclosure deadline, and seven months after the Court's note of caution.

This chronology makes plain that Plaintiffs have no excuse for being nearly three years too late to attempt to prove what they contend is an "important" feature of their case. It was not a recent development that put them on notice of these issues, but rather their belated realization— after Saint-Gobain litigated the question for years—that they might not prevail. Where, as here, a party's attempt to conduct additional discovery "ha[s] more to do with a change in litigation

strategy than in the factual or legal basis of his case," it "is not sufficient to establish good cause and the district court [i]s well within its discretion to deny the motion." *Ellingsworth*, 949 F.3d at 1100. The Court should deny Plaintiffs' motion to proffer Mr. Bailey's testimony.

Even if "it wasn't until after the Court's February 4, 2020, Order … that Plaintiffs decided it would be prudent to retain an expert appraiser … concerning the property damages issue" (Mot. at 5), that belated realization does not explain Plaintiffs' failure to notify the Court or Saint-Gobain of Mr. Bailey's retention until September 2020. Courts have thus precluded new expert testimony where the party "knew that he might want to present additional experts … but did not alert the court to this fact until" five months later. *See Tetzlaff v. Educ. Credit Mgmt. Corp*., 521 B.R. 875, 880 (E.D. Wis. 2014), *aff'd*, 794 F.3d 756 (7th Cir. 2015). The same goes here. Plaintiffs had many opportunities to do so while conferring with Saint-Gobain about the trial schedule and related preparations; yet Saint-Gobain first heard of Mr. Bailey the same day as the Court.

## II.  Mr. Bailey's Testimony Is Not "Important" Because It Is Futile.

At the outset, Plaintiffs are at cross-purposes with themselves in attempting to show "the importance of the testimony" by Mr. Bailey. *Softel*, 118 F .3d at 961. On the one hand, they argue that "Vermont and federal law" supports their choice "to rely solely on the testimony of the named Plaintiffs for evidence of their property values." (Mot. at 2.) Plaintiffs thus paint their untimely expert disclosure as an "elect[ive]" decision, made only "out of an abundance of caution." *Id*. at 3. Yet when they are forced to reconcile these claims with the second prong of the *Outley* test—the importance of the new evidence—they shift to arguing that it is "***potentially critical for Plaintiffs***." (*Id*. at 5 (emphasis added).)

This vacillation shows Plaintiffs' current lack of expert testimony on property diminution is a "hole in the case," which "it would seem that [plaintiffs'] counsel should have realized" before

the eve of trial, and which "only serves to underscore the inexcusable quality of its delayed submission." *Lopez Espiritu v. Hartman,* 2020 WL 93891, at *7 (E.D.N.Y. 2020) (citation omitted).  But if this testimony is just a supplement to theirs, it is entitled to little weight in this analysis, *see McLaughlin v. Langrock, Sperry & Wool, LLP*, 2020 WL 3118646, at *6 (D. Vt. 2020), since Plaintiffs say they "can indisputably introduce other evidence—including [their] own testimony." *Downey v. Adloox Inc.*, 2018 WL 794592, at *2 (S.D.N.Y. 2018) (quotation omitted).

Moreover, the substance of Mr. Bailey's testimony lacks a factual or legal fit to Plaintiffs' case.  It does not support Plaintiffs' alleged diminution in value damages at all.  Mr. Bailey's opinions on diminution vary from Plaintiffs' opinions by as much as a ***factor of three***.  For example, Mr. Sumner estimated a 33% diminution in the value of his home, but Mr. Bailey opines there was an 11% diminution in value.  And Mr. Bailey's estimates of values differ from Plaintiffs' by an extremely wide margin—for example, Mr. Garrison's estimate of his home's pre-PFOA value differs from Mr. Bailey's by ***$144,000***.  These differences are set forth in the following chart:

| Plaintiffs | Plaintiffs' Alleged Percent Diminution / (Value Loss)[1] | Bailey's Alleged Percent Diminution / (Value Loss) | Difference Between Pre-PFOA Values |
|---|---|---|---|
| Sumner | 33% (value pre-PFOA $280K; post-PFOA $185K) | 11% (value pre-PFOA $192K; post-PFOA $172K) | $88K |
| Garrison | 23% (value pre-PFOA $330K; post-PFOA $255K) | 11% (value pre-PFOA $186K; post-PFOA $165K) | $144K |
| Sullivan & Addison | 33% (value pre-PFOA $420K; post-PFOA $280K) | 17% (value pre-PFOA $289K; post-PFOA $240K) | $131K |
| Hausthor | 33% (value pre-PFOA $300K; post-PFOA $200K) | 12% (value pre-PFOA $222K; post-PFOA $195K) | $78K |
| Mr. & Mrs. Crawford | 30% (value pre-PFOA $200K; post-PFOA $140K) | 14% (value pre-PFOA $148K; post-PFOA $127K) | $52K |
| Knight | 36% (value pre-PFOA $370K; post-PFOA $240K) | 13% (value pre-PFOA $292K; post-PFOA $253K) | $78K |

---

[1] Plaintiffs provided a range for their pre-PFOA and post-PFOA estimates of value.  This chart represents the maximum range of diminution in value alleged—that is, their highest pre-PFOA value estimate as compared to their lowest post-PFOA value estimate.

Not only does Mr. Bailey's opinion not support Plaintiffs' estimates, but it does not address the critical question of whether Plaintiffs have present damages to their home values attributable to PFOA.  He does not address the current values of Plaintiffs' homes as compared to their values prior to the discovery of PFOA (which would likely show a substantial increase in value).  Instead, on instructions from Plaintiffs' lawyers (Bailey Rpt. at 3), his analysis is limited to "the difference in fair market value *immediately before* and *immediately after* the contamination, or market awareness thereof"—that is, the one-month difference in value between February and March 2016. (*Id*. (emphasis added).)  This new theory contradicts Plaintiffs' testimony on diminution in value, all of which was based on current—not historical—values (all emphasis supplied):

- ➤ Leslie Addison testified that "I believe my house to be *worth what is in my disclosure here now* had it not been for PFOA."  (Addison Tr. at 137:7-20.)

- ➤ Linda Crawford testified that "we always thought we would probably sell it for, you know, 185 to 200, and *now it's probably 140 to 155*."  (L. Crawford Tr. at 148:19-25.)

- ➤ Gordon Garrison testified his home is "*worth now much less*" and a "prospective buyer would want to pay a heck of a lot less."  (Garrison Tr. at 142:19-25, 151:12-152:7.)

- ➤ Ronald Hausthor testified that "Saint-Gobain harmed our ability to sell our property for *what it is valued at*."  (Hausthor Tr. at 119:21-120:1.)

- ➤ Billy Knight testified that "*if we do end up selling* the home," people would "*not want to buy* the home or … get a lesser price … because of the PFOA."  (Knight Tr. at 95:7-20.)

- ➤ James Sullivan testified that "a connection to municipal water" would "improve … the value of the home *from its current condition*."  (Sullivan Tr. at 92:18-93:7.)

- ➤ William Sumner testified that "*[w]hy would anybody buy my house* when they could, … buy a house in a non-contaminated zone."  (Sumner Tr. at 108:1-20.)

- ➤ Ted Crawford testified his estimate of diminution in value was based on remediation—the assumption he *would "get connected"* to municipal water.  (T. Crawford at 203:24-205:6.)

    But even more important, the difference, if any, in value of the Named Plaintiffs' properties

9

between February and March 2016 is irrelevant to this case.[2]  As a matter of law, a one-month

purported difference in value in 2016 is not in any respect a "measure of damages" that would

"make the injured party whole again."  *Kramer v. Chabot*, 152 Vt. 53, 57, 564 A.2d 292, 294

(1989).  It would be completely contrary to the purpose of compensatory damages of making the

plaintiff "substantially equivalent in a pecuniary way to that which [the plaintiff] would have

occupied had no tort been committed."  *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop.*

*Owners Ass'n*, 2015 VT 60, ¶ 18 (2015) (quoting Restatement (Second) of Torts § 903 cmt. a

(1979)).  Courts have therefore excluded appraisal reports effective as of the time of alleged injury,

finding them "simply too outdated to be probative as to the value of the property … years later."

*Lambrinos v. Exxon Mobil Corp.*, 2006 WL 2238977, at *7 (N.D.N.Y. Aug. 4, 2006).  The same

is true of Mr. Bailey's report here.

This is why diminution in value damages are fundamentally only for the "owner who

owned the property" before the problem was detected "and sold the property, or experienced a

measurable negative economic impact, after that date."  *See* Albert R. Wilson, *Real Estate*

*Damages Measurement: What Works, What Doesn't, and Why Not* 4 (2017) (Ex. 1).  That

diminished value must be measured "***as of the date of a sale*** or refinancing at disadvantageous

terms" because, among other things, "diminution in value is dynamic," and "values will tend to

move back toward normal."  *Id.* (emphasis added).  Without requiring that actual adverse impact,

"the owner will be in a position to recover twice, once when the compensation is granted and later

when the diminution has decreased further."  *Id.*  Yet Mr. Bailey's opinion contemplates exactly

that, allowing Plaintiffs to collect an alleged brief, historical diminution in value that was never

---

[2] Saint-Gobain understands that separate briefing on this issue will occur with proposed jury
instructions and reserves its right to present additional briefing and argument on this point.

realized with a sale, while at the same time collecting on their home's subsequent appreciation based on "'what it will fetch'" in the current market. *Bean v. Sears, Roebuck & Co*., 129 Vt. 278, 284, 276 A.2d 613, 617 (1971) (quotation omitted).

Vermont law rejects such speculative and unjust measures of damages by requiring courts to evaluate not only the harm caused by the defendant's conduct, but also other events that have offset that harm.   As the Court held, a plaintiff cannot seek damages based on conditions immediately after an injury while ignoring the subsequent treatment and mitigation of that injury. *See Langlois v. Town of Proctor*, 198 Vt. 137, 113 A.3d 44 (2014).   And thus, in *Post & Beam Equities*, the Vermont Supreme Court held that evidence of the plaintiff's restaurant's lost revenue due to a closure "cannot support" an award of damages "without evidence of the impact of the reduction" in costs that also occurred—evaluating lost revenue without evaluating saved costs says nothing of actual loss. *See* 2015 VT 60, ¶ 19.   Here also, even if Mr. Bailey's opinion as to March 2016 values were correct, it cannot support diminution in value damages because it does not address the effect of intervening changes in the following years, which would likely show that Plaintiffs have no actual loss.

Plaintiffs have relied on *Bradley v. Buck*, 131 Vt. 368 (1973), to argue that Vermont law requires measuring diminution of value ***immediately*** after contamination was discovered, and no further.   (Mot at 2 n.1.)   *Bradley* says nothing of the kind—to do so would be contrary to the principles of compensatory damages outlined above, which are fundamental to tort law.   Indeed, *Bradley* did not even involve a diminution in value claim—rather, owners of a restaurant sought to recover *remediation* costs after an oil spill and the defendant proffered valuation evidence as a defense. *Bradley*, 131 Vt. at 370.   The defendant argued it should have been permitted to present evidence that the restaurant sold at an increased value several years after the incident. *Id*.   The

11

Vermont Supreme Court disagreed, holding that, to the extent market value was relevant to a claim for *remediation* costs, it was relevant at the time those costs were incurred, not several years later, and thus the jury's award based on ***actual cost to repair*** was appropriate. *Id.* at 371. The case does not address affirmative claims for diminution in value damages, and it certainly does ***not*** endorse the view that the value immediately after the damage is the only one that matters. *See id.*

Plaintiffs' theory is irreconcilable with the fundamental nature of compensatory damages. A holder of an asset that experiences is a drop in value and then a subsequent recovery cannot sue based on the drop while ignoring the recovery. It is for this reason that the federal securities laws hold that an investor's damages for a dip in market price are limited if the stock bounces back in the next 90 days. *See* 15 U.S.C. § 78u-4(e)(1). That provision was "in large part enacted to prevent putative plaintiffs from seizing upon short-term price swings in the market." *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844465, at *9 n.10 (S.D.N.Y. 2006), *aff'd on other grounds*, *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010). Thus, absent any other allegation of harm, such a plaintiff who purchases an asset that ultimately increases in value before it is sold has "failed to allege that he was damaged in any way" and thus cannot recover. *See id.* Here also, where Mr. Bailey's testimony only speaks to the time immediately after the discovery of the alleged injury and fails to address later changes in price of the asset—including the effect of remediation—allowing his testimony would be futile.

## III.   Saint-Gobain Would Be Severely Prejudiced by This Late Disclosure.

The prejudice to Saint-Gobain posed by this last-minute disclosure is substantial. Over nearly three years, Plaintiffs represented that they can and will prove their case exclusively through the use of homeowners' testimony. Saint-Gobain defended this action and developed its trial strategies accordingly. It deposed the Named Plaintiffs based on this representation (Garrison Tr.

at 42:11-25), submitted expert reports responding directly to this theory (Phillips Rpt. at 20 & Tbl. 2), took expert depositions on that theory, and briefed its admissibility and value. (Dkt. 216; 321.) Now, just a few months from trial, to allow Mr. Bailey "to testify would 'redraw[] the boundaries of the case and almost certainly' prejudice Defendant['s] ability to 'accommodate potentially significant shifts in the theories being offered' against [it]." *Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*, 2019 WL 5694256, at \*8 (E.D.N.Y. 2019) (quotation omitted).

Mr. Bailey's report does far more than "simply provide[] additional evidence for the Plaintiffs' preexisting claims." (Mot. at 6.) Throughout this litigation, the Plaintiffs offered a single method by which they estimate property damages: the difference between their personal opinion of their home's value prior to the discovery of PFOA in March 2016 and its ***present value***:

> Q: How did you estimate that diminished range of value?
> A: Well, I arrived at it by looking at what I believe the house to be worth and then taking into consideration that it now sits in a zone of contamination established by the state, and ***I feel it's worth now much less because of it.***

(Garrison Tr. at 42:11-25 (emphasis added).) This theory of damages has no nexus to Mr. Bailey's new expert opinion. He uses a new dataset, employs a different approach, and advances the novel theory that the only relevant timeline for property damages is from February to March 2016. (Bailey Rpt. at 1-4.) Both the approach and the opinion are drastically different from those offered by the Named Plaintiffs. (*Compare id*. at 1 *with* Phillips Rpt. at 20 & tbl. 2.)

Only exclusion can avoid such prejudice. A potential deposition of Mr. Bailey is not a cure when Saint-Gobain spent years litigating a theory that Plaintiffs appear to be on the verge of abandoning. *See Wiener v. AXA Equitable Life Ins. Co*., 2019 WL 1228074, at \*11 (S.D.N.Y. 2019). "Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery. If that were the determining factor, no court could preclude expert or other testimony that was unseasonably disclosed contrary to the discovery deadline dates

set by the Court." *Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010). Indeed, "[p]rejudice is not as simple as whether a deposition can still be taken":

> It does create prejudice to allow the party with the burden of proof (plaintiff here) to submit an expert opinion that is not a rebuttal opinion but rather an opinion that bolsters the case-in-chief expert. It creates surprise and potentially shifts to the party without the burden (defendant here) the obligation to update its expert report. That creates further expense and delay. ***Courts have long recognized that late disclosures are not harmless just because there is time to do further discovery.***

*Africano v. Atrium Med. Corp.*, No. 17-cv-07238 (N.D. Ill. Sept. 3, 2020) (emphasis added).

The cases cited by Plaintiffs involved circumstances not present here. For example, *McGinnis* involved a supplementary report of a previously disclosed expert, not a brand new expert three years into the case, and the court was ultimately persuaded by the fact that "no trial date ha[d] been set and fact discovery ha[d] not yet closed." *SEC v. McGinnis*, 2018 WL 1633592, at *6 (D. Vt. 2018). Here, in contrast, expert discovery is long since closed, and the parties have been preparing for trial for months. Likewise, the *Browe* court recognized that a party should not be "required to accept [a party's] offer to depose [an expert] on the eve of trial," but was willing to "afford the parties greater flexibility in the presentation of their evidence," "because [it was] a bench trial not a jury trial." *Browe v. CTC Corp.*, 2017 WL 5992333, at *6 (D. Vt. 2017).

Mr. Bailey's untimely opinion represents a paradigm shift in Plaintiffs' theory of their case that cannot be cured with a deposition. Just in the short term, Saint-Gobain would be required to analyze Mr. Bailey's 275-page report, obtain and analyze his reliance materials, depose him, and have its experts submit responsive reports. It would also need to reopen the Plaintiffs' depositions to address contradictions between their testimony and Mr. Bailey's, file a *Daubert* challenge as to the reliability and "fit" of Mr. Bailey's opinions, and prepare for another *Daubert* hearing. Plaintiffs' desire to change strategy should not permit such great prejudice to Saint-Gobain.

**IV.     The Trial Continuance Will Not Cure the Prejudice to Saint-Gobain.**

Litigation theories should not be a "veritable moving target" that litigants infinitely adjust up until trial, hoping to find something that sticks.  *Haller*, 598 F. Supp. 2d at 1296-97; *see also Miller v. Pfizer, Inc*., 356 F.3d 1326, 1330 (10th Cir. 2004); *Glastetter v. Novartis Pharms. Corp*., 107 F. Supp. 2d 1015, 1032 (E.D. Mo. 2000), *aff'd*, 252 F.3d 986 (8th Cir. 2001).  A continuance would not cure prejudice, but ratify it: it would not reimburse Saint-Gobain the nearly three years it spent defending a case that Plaintiffs now abandon in favor of a new theory.  Plaintiffs made an informed, strategic decision to rely on their own testimony on diminution in value, and Saint-Gobain has defended accordingly.  For Plaintiffs to so drastically change course now would waste years of time and resources—far too high a price for "an abundance of caution."  (Mot. at 3.)

Denial of Plaintiffs' motion is the only remedy to prevent the immense prejudice that would be caused by Plaintiffs' untimely disclosure.  Drastic problems require "drastic remed[ies]" (Mot. at 8), and Plaintiffs' attempt to flip the burden onto Saint-Gobain is unavailing.  "Reopening discovery after the discovery period has closed requires a showing of good cause," *Gucci Am., Inc. v. Guess?, Inc*., 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011), and the burden of showing it is on the movant.  *See Hiramoto v. Goddard Coll. Corp*., 2016 WL 10516022, at *3 (D. Vt. 2016).  Regardless of Plaintiffs' purported good faith—which the Second Circuit has held "should not be read into" Rule 37(c), *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)—they have not shown that their "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).  Thus, the Rule's "preclusionary sanction is automatic."  *Beyer*, 2016 WL 3676091, at *3.

## <u>CONCLUSION</u>

For the foregoing reasons, Saint-Gobain respectfully submits the Court should deny Plaintiffs' motion to permit the untimely expert disclosure of Michael Bailey.

Dated:   September 25, 2020                    Respectfully submitted,

                                              /s/ *Timothy C. Doherty, Jr.*
                                              Timothy C. Doherty, Jr.
                                              **DOWNS RACHLIN MARTIN PLLC**
                                              199 Main Street
                                              Burlington, VT 05402
                                              Tel: (802) 863-2375
                                              Fax: (802) 862-7512
                                              tdoherty@drm.com

                                              Sheila L. Birnbaum (*pro hac vice*)
                                              Mark S. Cheffo (*pro hac vice*)
                                              Rachel Passaretti-Wu (*pro hac vice*)
                                              Bert L. Wolff (*pro hac vice*)
                                              Lincoln Davis Wilson (*pro hac vice*)
                                              **DECHERT LLP**
                                              Three Bryant Park
                                              1095 Avenue of the Americas
                                              New York, NY  10036
                                              Tel: (212) 698-3500
                                              Fax: (212)698-3599
                                              sheila.birnbaum@dechert.com
                                              mark.cheffo@dechert.com
                                              rachel.passaretti-wu@dechert.com
                                              bert.wolff@dechert.com
                                              lincoln.wilson@dechert.com

                                              *Attorneys for Saint-Gobain Performance*
                                                  *Plastics Corp.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 25, 2020, I served the foregoing SAINT-GOBAIN'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER TO PERMIT DISCLOSURE OF NEW EXPERT REAL ESTATE APPRAISAL WITNESS on the following counsel by electronic case filing:

Gary A. Davis
James S. Whitlock
**DAVIS & WHITLOCK, P.C.**
21 Battery Park Ave., Suite 206
Asheville, NC 28801
Telephone:  (828) 622-0044
Facsimile:  (828) 398-0435
jwhitlock@enviroattorney.com
gadavis@enviroattorney.com

Emily J. Joselson, Esq.
James W. Swift, Esq.
**LANGROCK SPERRY & WOOL, L.L.P.**
P.O. Drawer 351
Middlebury, VT 05753
Telephone:  (802) 388-6356
Facsimile:  (802) 388-6149
ejoselson@langrock.com
jswift@langrock.com

David F. Silver, Esq.
Timothy M. Andrews, Esq.
**BARR STERNBERG MOSS**
  **SILVER & MUNSON, P.C.**
507 Main Street
Bennington, VT 05201
Telephone:  (802) 442-6341
Facsimile:  (802) 442-1151
tandrews@barrsternberg.com
dsilver@barrsternberg.com

DATED:  September 25, 2020

*/s/ Timothy C. Doherty, Jr.*
Timothy C. Doherty, Jr.

17