UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JAMES D. SULLIVAN, LESLIE ADDISON, WILLIAM S. SUMNER, JR., RONALD S. HAUSTHOR, GORDON GARRISON, LINDA CRAWFORD, TED CRAWFORD, and BILLY J. KNIGHT, individually, and on behalf of a Class of persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 5:16-cv-125<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON AMOUNT OF ATTORNEYS FEE**

Defendant Saint-Gobain seeks to present a direct offer of settlement to the Property Class members because the two sides have not agreed on a settlement proposal that both can support. The court has previously ruled that class counsel is entitled to an attorneys fee in the event that the direct settlement offer by Defendant becomes effective. (Doc. 423.) More recently, the court has paused consideration of the direct offer initiative in light of the accusations by its former in-house attorney that Saint-Gobain engaged in discovery violations. (*See* Doc. 431.) In the meantime, the court will issue a ruling concerning the percentage amount of the attorneys fee which the court will require as a condition for the direct offer if it occurs. With this information in hand, Saint-Gobain can make a decision now about whether it wishes to proceed with the direct offer if the court permits it.

### A. Discovery of Basis for Fee Application

On April 15, 2021, the court held a hearing concerning the percentage to be added to the direct offer of $4,000 or $10,000 (or more) per class member who accepts the offer. Prior to the hearing, plaintiffs' counsel submitted declarations concerning their time charges and out-of-pocket costs as well as proposed billing rates. (Doc. 406.) Plaintiffs' attorneys from three firms have spent approximately 14,000 hours over the course of 5 years of litigation. Defendant seeks disclosure of these time records with privileged information redacted. Plaintiffs object because of the many hours required to comb through the records and remove references to tasks which disclose trial strategy or other privileged information. They object for the same reasons to disclosure of the details of $576,547 in claimed out-of-pocket expenses.

The court will not order further disclosure of the time records. Because the court will require a percentage fee – not a "lodestar" award based on hours spent – the hourly totals are relevant only as a check on the reasonableness of the percentage fee. The maximum percentage fee sought by plaintiffs is 1/3 of $12.82 million or $4.27 million. This figure would require 100 percent acceptance of the direct offer. This maximum percentage amount is not far above the plaintiffs' proposed lodestar figure of $3,971,217. As the rate of acceptance decreases, the lodestar amount soon exceeds the percentage-based fee.

The court is also aware of the intensity with which both sides have litigated every inch of this case. The hourly total described by plaintiffs' counsel is credible and unsurprising.

For these reasons, the review and redaction of five years of lawyer time entries is not an appropriate requirement. The result would be different if the court intended to base an award on the hourly totals themselves. Like anyone paying a bill, defendant would be entitled to receive further detail. But here the hourly charges are offered only to show that the percentage fee is not

excessive. Defendant has already agreed to a similar percentage fee payable upon settlement of the medical monitoring claim. Reviewing and editing all the time charges in light of the limited purpose for which they are offered is disproportionate to their secondary role in supporting the request for a percentage fee.

The issue is different for the out-of-pocket charges. Here the charges themselves form the basis for the plaintiffs' fee request. It is reasonable to require an itemized statement. These entries are less likely to reveal privileged information and disclosure of a strategic issue such as a fee paid to an expert who was not ultimately retained can be handled through redaction. Saint-Gobain is entitled to review these entries to make certain that it is being asked to pay only reasonable litigation expenses.

Plaintiffs shall provide an itemized statement of the out-of-pocket charges within 30 days of a determination that the direct offer has been accepted by a sufficient number of class members to become effective. Any objection shall be filed within 14 days with a response due 14 days later.

### B. Basis for Requiring a 1/3 Percentage Fee as a Condition of Settlement

The court's order granting class counsel's entitlement to a fee referred to the "common fund" doctrine. The Second Circuit has held that attorneys whose efforts created a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The *Goldberger* court described two "distinct" methods to calculate the fee in such cases: the "lodestar" method and a

"simpler" method in which the court sets a percentage of the recovery as a fee with reference to the factors that are used to determine the "multiplier" for the lodestar. *Id.*[1]

## I. Lodestar Calculation

The "lodestar" method for calculating a reasonable fee involves "a determination of the number of hours reasonably expended on the litigation and a reasonable hourly rate." *Top Ridge Invs., LLC v. Anichini, Inc.*, No. 5:16-cv-76, 2018 WL 4629242, at *2 (D. Vt. Sept. 27, 2018). "Although not always conclusive, the lodestar calculation creates a 'presumptively reasonable fee,' and absent extraordinary circumstances, failure to calculate it as a starting point is legal error." *Id.* (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

Plaintiffs' counsel come from three firms. Attorney Joselson is a senior partner at Langrock, Sperry and Wool where she has been employed since 1983. She claims a "lodestar" rate of $350 per hour for her work, $225 per hour for her associates, and $110 per hour for paralegals. The court finds that these rates are reasonable. Attorney Joselson is an experienced and skilled attorney. The sum of $350 per hour falls within the range of hourly rates for a Vermont attorney with her background. The rates for associates and paralegals are also consistent with Vermont rates. *See Bain v. Wrend*, Case No. 5:15-cv-202, unpublished decision, (D. Vt. May 29, 2020) (approving hourly rate request of $275 (partner) and $225 (associate)).

---

[1] Since *Goldberger*, the Second Circuit has stated that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 187 (2d Cir. 2008). *Arbor Hill* did not involve a common fund, however, so it is unclear whether any confusion about the distinction between the "lodestar" method and other factor-based methods affects the two methods authorized in *Goldberger*. In general, this court has "avoided becoming fixated on any particular method" and has considered all relevant methods and factors. *Top Ridge Invs., LLC v. Anichini, Inc.*, No. 5:16-cv-76, 2018 WL 4629242, at *2 (D. Vt. Sept. 27, 2018).

4

Ms. Joselson has calculated that she and others in her firm spent a total of 9,309 hours on this case (excluding time to be compensated for separately in connection with the medical monitoring claim). That results in a lodestar claim of $2,221,770 for her firm's hourly work.

Co-counsel for Plaintiffs include lawyers from the law firm of Davis and Whitlock. They seek an hourly rate of $400 per hour for senior attorneys, $250 for associate attorneys, and $125 for legal assistants. The court is satisfied that these rates are acceptable for national-level environmental counsel. The attorneys at Davis and Whitlock calculate that they have expended 3,985.5 hours on issues not related to medical monitoring. The lodestar figure is $1,451,230.75.

In addition, attorney David Silver and other attorneys from the BarrSternberg law office in Bennington, Vermont have contributed 1,454.20 hours at rates of $300 per hour (partners), $250 per hour (associates), and $90 per hour (support staff). Mr. Silver is an experienced and skilled Vermont attorney who has participated in environmental tort cases in the past. This time excludes time spent on the separate medical monitoring issue. The court is satisfied that these rates are also reasonable. The total lodestar amount for the BarrSternberg office is $299,216.50.

The total lodestar amount for the hourly billing charges of all three firms is $3,972,217.25. In addition, the three firms have unreimbursed expenses totaling $576,547.35.

The court is satisfied that the hourly rates fall within the range of reasonable rates for experienced lawyers in a case that has taken five years to get to the current pre-trial status and has involved multiple expert witnesses, many of whom have already appeared in court.

## II.   The *Goldberger* Factors

As the *Goldberger* court noted, courts have also calculated a reasonable fee in "common fund" cases by applying a percentage to the recovery, with the percentage determined by consideration of a variety of factors. *Goldberger*, 209 F.3d at 47. Mindful of the Second

5

Circuit's instruction to approach fee awards "with an eye to moderation," *id.* at 53, the court analyzes the relevant factors below.[2] First, however, the court reviews the size of the potential recovery to which the percentage would be applied.

Defendants intend to offer $4,000 each to approximately 2,000 property owners and $10,000 each to approximately 200 owners on private wells—all owners of property located within the zone of concern identified by the Vermont Department of Environmental Conservation. If every owner accepts the offer, it will have a total value of $10,000,000, consisting of the sum of $8,000,000 (for property owners on public water supply) and $2,000,000 (for owners on wells). The value decreases if fewer property owners accept the offer. It will increase by $600 per household or $1,320,00 if 100% accept the offer. The court will use $10,000,000 as an estimate of the total cost of a successful direct offer campaign. A 1/3 contingency fee would generate a payment of $3,333,333 for attorneys fees.

### A.     Time and Labor Expended by Counsel

The court has already determined that the time expended by counsel and the resulting "lodestar" figure of $3,972,217 are reasonable. Counsel for both sides have worked long and hard on this matter. Class counsel in particular have developed a difficult case in minute detail and have already covered a wide range of factual and legal issues in hearings with the court.

---

[2] The relevant factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (ellipsis in original; quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

6

B.  **Size and Complexity of the Case**

The case spans more than 30 years of history at two industrial locations. It involves two companies. The issues of the source of environmental contamination and the appropriate remedy have both been complex. This is a large case involving complicated scientific and legal issues.

C.  **Risks Involved in the Litigation**

The case has not yet gone to jury trial. It contains some risk for plaintiffs on the issue of liability and greater risk on the issue of compensable damages. The parties have not cited any empirical studies regarding the risk of non-recovery in environmental tort cases. *Cf. Goldberger*, 209 F.3d at 52 (noting anecdotal evidence and an empirical study indicating that there is "no appreciable risk" of non-recovery in securities class actions).

D.  **Quality of Representation**

Class counsel has been diligent, thoughtful and prepared. They do not hold a monopoly on these qualities in this case, but it is only their performance which is at issue today. The court has been greatly aided by their preparation and advocacy on multiple issues.

E.  **Relationship Between the Requested Fee and the Settlement Amount**

In a case which is contested on many issues and has required class counsel to invest approximately half a million dollars in litigation expenses, a 1/3 contingency fee is reasonable. This is not a case in which the recovery is so large that 1/3 yields a recovery disproportionate to the time spent. *Cf. Goldberger*, 209 F.3d at 52 (in cases with recoveries between $50 and $75 million, "courts have traditionally accounted for these economies of scale by awarding fees in the lower range of about 11% to 19%"). Instead, in this case, the 1/3 contingency fee falls below the lodestar hourly rate calculation. Because the court will assess the fee only against

settlement payments actually made, the amount is likely to fall even further below the lodestar figure.

Although a 1/3 recovery exceeds the 25% "benchmark" described in some cases, the Second Circuit has avoided adopting such a "theoretical construct," *Goldberger*, 209 F.3d at 52, and the court concludes that a higher recovery is warranted in this case in light of the other factors discussed here. One-third falls well within the range of awards in other class actions within the Second Circuit. *See, e.g.*, *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854 (LJL) (KHP), 2021 WL 535635, at *5 (S.D.N.Y. Feb. 12, 2021) (awarding one-third of $445,000 gross settlement fund in Fair Labor Standards Act ("FLSA") case); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-2389, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015) (securities case; awarding one-third fee on a $26.5 million settlement); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 339 (S.D.N.Y. 2012) (awarding fee equivalent to one-third of $850,000 common fund resulting from settlement in FLSA case); *Collins v. Olin Corp.*, No. 3:03-cv-945 (CFD), 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) (awarding one-third fee on $1,391,500 settlement fund in "extremely complex" soil and groundwater contamination case).

### F. Public Policy Concerns

This case has presented issues of importance to the Bennington community and to Vermont as a whole. Plaintiffs have assembled a body of evidence which, if believed, establishes causation of the contamination of substantial sections of Bennington and North

Bennington by the Chem-Fab plants. The case represents an important reckoning for the parties and the greater Bennington community. The award of legal fees to class counsel serves to support the significant public policies in favor of identifying and compensating incidents of environmental contamination. *See Collins*, 2010 WL 1677764, at *6 ("In environmental tort cases, issues of proof and causation are often difficult. Contingent-fee arrangements will encourage other attorneys to accept and prosecute cases on behalf of individuals who have sustained injuries similar to those of the plaintiffs in this case.").

### III.  Litigation Costs

The repayment of reasonable litigation costs to counsel is a conventional part of a fee award. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) ("[C]ounsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses."). In this case, there are approximately 2,200 claimants and total expenses of $576,000 or $262 per claimant. The court will wait to hear from the parties concerning any dispute over the reasonableness of these expenses. Assessing an additional cost component against each settled claim is the only practical way to recover the litigation expenses.

### **CONCLUSION**

The court will condition the communication of the direct offer on Defendant's agreement to pay a 1/3 contingency fee plus a pro rata share of the reasonable expenses. The fee applies only to claims which are actually settled. If the direct settlement falls short of the 70% acceptance level, no contingent fee is due (unless the defendant at its option settles with a lower

percentage). If these terms are unacceptable, Defendant has the right to withdraw from the direct settlement process.

Dated at Rutland, in the District of Vermont, this 10th day of May, 2021.

Geoffrey W. Crawford, Chief Judge
United States District Court