UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| JAMES D. SULLIVAN, et al., individually, and on behalf of a Class of persons similarly situated, | |
| *Plaintiffs*, | Case No. 5:16-cv-00125-GWC |
| v. | Hon. Geoffrey W. Crawford |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION, | |
| *Defendant*. | |

**SAINT-GOBAIN'S BENCH MEMORANDUM**
**REGARDING THE DEPOSITION OF ITS FORMER COUNSEL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

ARGUMENT ............................................................................................................ 2

I.   MR. GROSS CAN TESTIFY ONLY TO MATTERS NOT PRIVILEGED OR
     WITHIN AN EXCEPTION. ........................................................................... 3

     A.   Mr. Gross's Testimony Is Bounded by the Law of Privilege. ............... 3

     B.   Mr. Gross's Testimony Is Presumptively Privileged. ........................... 5

     C.   The Crime/Fraud Exception Requires That Privileged Communications
          Were Used to Further a Specific Crime or Fraud. ................................. 8

II.  COURTS RECOGNIZE A RIGHT TO *VOIR DIRE* TO PROTECT
     TESTIMONIAL PRIVILEGE. ..................................................................... 10

III. THE COURT'S RULE 502(D) ORDER MAY BE IMPLEMENTED BY
     SEALING THE DEPOSITION TRANSCRIPT AND LIMITING ITS
     DISSEMINATION PENDING LITIGATION OF PRIVILEGE ISSUES ..................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcon Labs., Inc. v. Pharmacia Corp.*,
  225 F. Supp. 2d 340 (S.D.N.Y. 2002)......................................................................................2

*Ancilla Sys., Inc. v. Commc'n Assocs., Inc.*,
  1987 WL 19807 (N.D. Ill. 1987) ...........................................................................................11

*In re Application of Chevron Corp.*,
  762 F. Supp. 2d 242 (D. Mass. 2010) ......................................................................................8

*AroChem Int'l, Inc. v. Buirkle*,
  968 F.2d 266 (2d Cir. 1992)......................................................................................................8

*In re Ashworth, Inc. Sec. Litig.*,
  2004 WL 7330636 (S.D. Cal. 2004) ...................................................................................7, 11

*Baisley v. Missisquoi Cemetery Ass'n*,
  167 Vt. 473 (1998)....................................................................................................................2

*U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*,
  2013 WL 1233699 (M.D. Fla. 2013) ......................................................................................14

*Camp v. Berman*,
  2015 WL 3917538 (S.D.N.Y. 2015) .........................................................................................7

*Carnelli v. State*,
  No. 396-6-14 Wncv, 2015 WL 5176771 (Vt. Sup. Ct, Civ. Div. 2015).................................6

*Casey v. Pallito*,
  2016 WL 96157 (D. Vt. 2016)..................................................................................................8

*Citibank, N.A. v. City of Burlington*,
  2013 WL 12227252 (D. Vt. 2013).......................................................................................4, 5

*Coan v. Dunne*,
  2019 WL 1513462 (D. Conn. 2019) .......................................................................................10

*Couture v. Trainer*,
  2017 VT 73, 205 Vt. 319, 174 A.3d 1245 (2017)....................................................................8

*In re Cty. of Erie*,
  473 F.3d 413 (2d Cir. 2007)......................................................................................................2

*De La O v. Arnold-Williams,*
    2007 WL 9717727 (E.D. Wash. 2007) ................................................................11

*Erhart v. BofI Holding, Inc.,*
    269 F. Supp. 3d 1059 (S.D. Cal. 2017)................................................................8

*Garvey v. Morgan Stanley,*
    2017-SOX-00030, slip op. (U.S. DOL 2018) ..........................................................7

*In re Gen. Motors LLC,*
    2015 WL 7574460 (S.D.N.Y. 2015) ....................................................................10

*Genentech, Inc. v. Insmed Inc.,*
    2006 WL 988877 (N.D. Cal. 2006) ....................................................................11

*In re Grand Jury Subpoena,*
    419 F.3d 329 (5th Cir. 2005) ..........................................................................9

*Haines v. Liggett Grp. Inc.,*
    975 F.2d 81 (3d Cir. 1992)..............................................................................9

*In re John Doe, Inc.,*
    13 F.3d 633 (2d Cir. 1994)..............................................................................9

*Johnson v. Medisys Health Network,*
    2011 WL 5222917 (E.D.N.Y. 2011), *report and recommendation adopted as*
    *modified*, 2011 WL 4101323 (E.D.N.Y. 2011)........................................................14

*Knapik v. Mary Hitchcock Mem'l Hosp.,*
    2014 WL 12717394 (D. Vt. 2014)........................................................................4

*MacNamara v. City of N.Y.,*
    2007 WL 3196295 (S.D.N.Y. 2007)....................................................................10

*McKinnon v. F.H. Morgan & Co., Inc.,*
    750 A.2d 1026 (Vt. 2000)................................................................................4

*Mobile Med. Int'l Corp. v. Advanced Mobile Hosp. Sys., Inc.,*
    2013 WL 6238631 (D. Vt. 2013)........................................................................2

*Moore v. Bd. of Trustees of Illinois Cmty. Coll. Dist. No. 508,*
    2010 WL 4703859 (N.D. Ill. 2010) ....................................................................14

*In re Neurontin Antitrust Litig.,*
    801 F. Supp. 2d 304 (D.N.J. 2011) ....................................................................9

*Nypl v. JP Morgan Chase & Co.,*
    2020 WL 2128870 (S.D.N.Y. 2020)....................................................................7

*Prudential Ins. Co. of Am. v. Massaro*,
   2000 WL 1176541 (D.N.J. 2000), *aff'd*, 47 F. App'x 618 (3d Cir. 2002)............................6, 9

*Pullano v. UBS/Paine Webber, Inc.*,
   2007 WL 9779148 (W.D.N.Y. 2007) .........................................................................................3

*Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2020 WL 6273396 (S.D.N.Y. 2020) ...........................................................................................3

*In re Richard Roe, Inc.*,
   68 F.3d 38 (2d Cir. 1995).............................................................................................8, 9, 10

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984).....................................................................................................................13

*In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*,
   2006 WL 1328259 (S.D.N.Y. 2006) ...........................................................................................3

*Sulaymu-Bey v. City of New York*,
   372 F. Supp. 3d 90 (E.D.N.Y. 2019) .......................................................................................10

*Treppel v. Biovail Corp.*,
   2006 WL 468314 (S.D.N.Y. 2006)..............................................................................................3

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
   2000 WL 1253262 (S.D.N.Y. 2000) ...........................................................................................2

*U.S. v. Cunningham*,
   672 F.2d 1064 (2d Cir. 1982).....................................................................................................7

*U.S. v. Yonkers Bd. of Educ.*,
   946 F.2d 180 (2d Cir. 1991).......................................................................................................2

*United Stationers Supply Co. v. King*,
   2013 WL 419346 (E.D.N.C. 2013).............................................................................................8

*Upjohn Co. v. U.S.*,
   449 U.S. 383 (1981).....................................................................................................................2

*Utica Mut. Ins. Co. v. INA Reinsurance Co.*,
   2012 WL 13028279 (N.D.N.Y. 2012) .......................................................................................13

*Wilkinson v. Russell*,
   973 F. Supp. 437 (D. Vt. 1997)...................................................................................................8

*Williams v. Sprint/United Mgmt. Co.*
   2007 WL 445201 (D. Kan. 2007) .........................................................................................11, 12

**Rules**

Federal Rule of Civil Procedure 26 ..................................................................................13

Federal Rule of Evidence 501 ..................................................................................3, 4

Federal Rule of Evidence 502..................................................................................12, 13

ABA Rule of Professional Conduct 1.6 ..................................................................................3

N.Y. Rule of Professional Conduct 1.6..................................................................................3

Pa. Rule of Professional Conduct 1.6 ..................................................................................3

Tex. Rule of Professional Conduct  1.05 ..................................................................................3

Vt. Rule of Evidence 502..................................................................................*passim*

Vt. Rule of Professional Conduct  1.6 ..................................................................................3

## PRELIMINARY STATEMENT

Amiel Gross, previously in-house counsel for Saint-Gobain responsible for this matter, publicly filed a now-dismissed OSHA complaint against his former employer. Over Saint-Gobain's objection, this Court is allowing Plaintiffs to take Mr. Gross's deposition. This deposition is fraught with problems of privilege and confidentiality. Courts disfavor depositions of counsel because any relevant factual information known by the attorney is typically available from other sources and is cloaked with the privilege. To disentangle any discoverable information from privileged communications requires scrupulous care at an immense burden to the party seeking to protect the privilege. For these reasons, the Court has ruled it will attend and supervise the deposition of Mr. Gross. Saint-Gobain therefore submits this bench memorandum to outline what the law requires to safeguard the attorney-client relationship throughout this deposition.

In this diversity case, whether Mr. Gross may offer testimony concerning his former representation of Saint-Gobain is governed by state law. The privilege belongs to Saint-Gobain and no one else. Saint-Gobain has not waived and does not waive the privilege with respect to any of the attorney-client communications with which Mr. Gross was involved. And because of the nature of Mr. Gross's employment, any testimony he may give is presumptively privileged, including any facts he may have learned through privileged communications. So Plaintiffs may obtain his testimony only by rebutting that presumption for specific communications or establishing the narrow crime/fraud exception. That exception cannot be satisfied here, for it requires a showing that Mr. Gross's services *were directly used* to further a specific crime or fraud.

As such, to the extent Saint-Gobain elects to conduct it, precedent supports an initial *voir dire* of Mr. Gross on privilege before any questioning by Plaintiffs. And the record of the deposition should be sealed and limited to allow Saint-Gobain to preserve and protect the privilege.

# ARGUMENT

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). "Courts have recognized the confidentiality of lawyer-client communications for centuries." *Baisley v. Missisquoi Cemetery Ass'n*, 167 Vt. 473, 482 (1998). The purpose of the privilege is to "encourage full and frank communications between attorneys and their clients," which in turn "promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. It exists in order to allow lawyers to "be[] fully informed by the client," on which the provision of "sound legal advice or advocacy" depends. *Id.*; *accord Baisley*, 167 Vt. at 482. And it is "fundamental[]" that "legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). This definition includes advice on "not only what is permissible but also what is desirable." *Id.* at 420 (citation omitted).

Depositions of opposing counsel, including current or former in-house lawyers of a corporation, are "disfavored" because they threaten the privilege. *U.S. v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991). Because of the importance of safeguarding this fundamental privilege, there is a "presumption" against depositions of an opposing party's counsel. *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002). Such depositions have the potential to create an "inappropriate burden or hardship." *Mobile Med. Int'l Corp. v. Advanced Mobile Hosp. Sys., Inc.*, 2013 WL 6238631, at *1 n.2 (D. Vt. 2013) (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003)). "[E]ven if limited to relevant and non-privileged information," such depositions "are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs.*

*Co.*, 2000 WL 1253262, at *2 (S.D.N.Y. 2000).[1]  Where such depositions occur, they must be taken subject to appropriate measures to preserve the protection of the privilege under applicable law.  The scope of the attorney-client privilege and the necessary measures to protect them—including the right to conduct *voir dire* of Mr. Gross and sealing of the transcript—are set out below.

**I.**     **Mr. Gross Can Testify Only to Matters Not Privileged or Within an Exception.**

      **A.**     **Mr. Gross's Testimony Is Bounded by the Law of Privilege.**

The law of privilege, which limits both discovery of information and admissibility of evidence, *see* Vt. R. Evid. 502, corresponds with the ethical duty of confidentiality, *see* Vt. RPC 1.6.  The ethical rules concern an attorney's duty to safeguard client confidences, privilege limits the ability of courts and litigants to inquire into those matters.  Thus, while any testimony given by Mr. Gross implicates his ethical duties,[2] whether and how he may testify in this proceeding is a question of privilege governed by Federal Rule of Evidence 501.

---

[1] In addition to privilege, the same concerns that disfavor depositions of corporate executives apply to depositions of counsel.  *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *10 (S.D.N.Y. 2006).  Such depositions may be "used as a litigation tactic to harass the other side or cause it wasteful expense."  *Treppel v. Biovail Corp.*, 2006 WL 468314, at *1 (S.D.N.Y. 2006) (quoting *Armstrong Cork Co. v. Niagra Mohawk Power Corp.*, 16 F.R.D. 389, 390 (S.D.N.Y.1954)).  They are permitted only where the executive "has unique evidence, personal knowledge of the claims at issue, or [where] other witnesses are incapable of providing testimony about the conduct alleged" in the suit.  *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2020 WL 6273396, at *1 (S.D.N.Y. 2020); *Pullano v. UBS/Paine Webber, Inc.*, 2007 WL 9779148, at *2 (W.D.N.Y. 2007).  In the same manner, an attorney's knowledge of the facts of a matter is not only derived from confidential, privileged communications, but also from the knowledge of other fact witnesses.

[2] Mr. Gross alleges in his OSHA complaint that he is licensed in New York, Pennsylvania, and Texas.  Gross Compl. ¶ 143 n.16.  Regardless of which states' ethical rules Mr. Gross is bound by, the basic principle remains the same:  he is bound to uphold the confidences of his former client. N.Y. RPC 1.6; Tex. RPC 1.05; Pa. RPC 1.6; ABA Rule 1.6.

That Rule dictates that, because this Court's jurisdiction is based on diversity, state law applies to the substance of the privilege. Fed. R. Evid. 501; *Citibank, N.A. v. City of Burlington*, 2013 WL 12227252, at *1 (D. Vt. 2013). Vermont "has adopted the Restatement (Second) of Conflicts for choice-of-law questions in both tort and contract cases." *McKinnon v. F.H. Morgan & Co., Inc.*, 750 A.2d 1026, 1028 (Vt. 2000). While the applicable law for privilege is informed by which state "has the most significant relationship with the communication," in the absence of a conflict with the law of another jurisdiction, courts in this District apply Vermont law. *Knapik v. Mary Hitchcock Mem'l Hosp.*, 2014 WL 12717394, at *4 (D. Vt. 2014). Here, the relevant state jurisdictions are substantially in harmony on the law of privilege, and, in any event, "federal law offers substantially the same protection." *Citibank*, 2013 WL 12227252, at *1. Absent an exception, Vermont law provides that "a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Vt. R. Evid. 502(b).

Saint-Gobain holds and has not waived the privilege. Saint-Gobain did not authorize Mr. Gross to speak publicly about attorney-client communications and has not authorized any of its current counsel to do so either. It did not authorize the filing of Mr. Gross's OSHA complaint, much less its public dissemination. And it has preserved and re-asserted the privilege at every step since Plaintiffs sought to reopen discovery based on Mr. Gross's allegations. *See* April 15, 2021 Hearing Tr. (Dkt. 433) at 6:11-8:1; Opposition to Pls' Mot. to Reopen Discovery (Dkt. 441) at n.2; May 13, 2021 Hearing Tr. (Dkt. 452) at 13:19-14:5, 24:17-25:6, 32:19-33:5, 34:15-22. Absent an exception, Vermont law thus gives Saint-Gobain the right to prevent Mr. Gross from disclosing confidential communications rendered in connection with provisions of legal services.

**B.      Mr. Gross's Testimony Is Presumptively Privileged.**

The matters about which Mr. Gross is to be deposed are presumptively protected by attorney-client privilege.  The elements of the privilege are (1) a communication between counsel and client; (2) made for the purpose of facilitating the rendition of professional legal services; (3) that was confidential.   Vt. R. Evid. 502(b); *see also Citibank*, 2013 WL 12227252, at *1. Communications between counsel and client are specifically defined to include communications between the client's "representative" and the client's lawyer.  Vt. R. Evid. 502(b)(1).[3]  A "client" can be "a corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer."   Vt. R. Evid. 502(a)(1).   Moreover, communications "among lawyers ... representing the same client" are also privileged.  Vt. R. Evid. 502(b)(5).

The vast majority of any relevant communications to or from Mr. Gross during his tenure at Saint-Gobain fall within these definitions.  In his capacity as in-house counsel for Saint-Gobain, Mr. Gross was responsible for managing this litigation as well as similar PFOA lawsuits in New Hampshire and New York.  In this role, he participated in, and was privy to, many privileged attorney-client communications involving Saint-Gobain executives, other attorneys from the company's General Counsel's Office, and Saint-Gobain's outside counsel.  Participating in those

---

[3] A "representative of a client" is defined as follows:

> (A) a person having authority to obtain professional legal services or act on advice rendered pursuant thereto, on behalf of the client, or (B) any other person who, while acting in the scope of employment for the client, makes or receives a confidential communication necessary to effectuate legal representation for the client. In the case of a corporation, the officers and directors and those persons who have the authority to control or substantially participate in a decision regarding action to be taken on the advice of a lawyer are also "representatives of the client."

Vt. R. Evid. 502(a)(2).

privileged communications was the essence of Mr. Gross's position as an attorney for Saint-Gobain. It is reasonable to say that he engaged in such communications nearly every day that he worked for the company. And the allegations of his OSHA Complaint about which Plaintiffs seek discovery concern communications and other matters that occurred in connection to specific work related to defense of this litigation—a meeting over the class certification and *Daubert* hearing and a document review regarding use of certain products. *See* Gross Compl. ¶¶ 75, 88.

Those communications would also meet the broad definition of communications "made for the purpose of facilitating the rendition of professional legal services." Vt. R. Evid. 502(b). A lawyer's services are "legal in nature if the lawyer's professional skill and training would have value in the matter." *Carnelli v. State*, No. 396-6-14 Wncv, 2015 WL 5176771, at *2 (Vt. Sup. Ct, Civ. Div. 2015) (Teachout, J.) (citing Restatement (Third) of Law Governing Lawyers § 72 cmt. b). Noting the "difficult questions" that can arise in assessing privilege with respect to in-house counsel, Judge Teachout recognized that "these attorneys do not really change hats, nor do they separate their work days into nonlegal and legal parts." *Id.* (citation omitted). Thus, "[b]ecause privileged and unprivileged advice is likely to be intimately intertwined, it is especially important in this context for courts to be sensitive that attorneys use their legal expertise, knowledge and training to assist clients in an ever-evolving variety of ways." *Id.* (citation omitted). "[T]he primary consideration is the reasonable expectation of the person in the position of putative client." *Id.* (citation omitted).

Even further, for a deposition of an attorney, the scope of privilege extends not only to communications, but also to the underlying facts. Courts recognize the reach of the privilege to cover facts in this context because it is an "obvious corollary" that "lawyers must not themselves voluntarily divulge information covered by their clients' attorney-client privilege." *Prudential*

*Ins. Co. of Am. v. Massaro*, 2000 WL 1176541, at *7 (D.N.J. 2000), *aff'd*, 47 F. App'x 618 (3d Cir. 2002); *see also In re Ashworth, Inc. Sec. Litig.*, 2004 WL 7330636, at *5 (S.D. Cal. 2004). As OSHA has held in other cases filed by attorneys against their former clients, there is "***a distinction between facts known to a client and facts known to an attorney***." *Garvey v. Morgan Stanley*, 2017-SOX-00030, slip op. at 6 (U.S. DOL 2018) (Ex. 1) (emphasis added). A client may be required to disclose the facts, but an attorney is barred from disclosing the same if those facts were "learned from confidential communications." *Id.*; *see also U.S. v. Cunningham*, 672 F.2d 1064, 1073, n.8 (2d Cir. 1982); *Nypl v. JP Morgan Chase & Co.*, 2020 WL 2128870, at *2 (S.D.N.Y. 2020); *Camp v. Berman*, 2015 WL 3917538, at *2 (S.D.N.Y. 2015). Here, too, while Saint-Gobain cannot withhold discovery of underlying facts, Mr. Gross is barred from testifying about any facts that he learned from confidential communications with Saint-Gobain or its other counsel.

Thus, given Mr. Gross's role enmeshed in the defense of the PFOA litigation, and the broad application of the privilege both to communications and to facts learned through those communications, any testimony he may provide should be presumed to be privileged. Disclosure may be had only if Plaintiffs establish the substance is not within this broad scope or that the narrowly construed crime/fraud exception to privilege applies and that the information is otherwise discoverable.

C.     **The Crime/Fraud Exception Requires That Privileged Communications Were Used to Further a Specific Crime or Fraud.**

Mr. Gross's deposition testimony would not fall within the crime/fraud exception—the only exception to privilege that warrants discussion here (despite its inapplicability).[4]   That exception is strictly limited and there has been no showing that its elements are met.

Consistent with most jurisdictions, Vermont recognizes an exception to attorney-client privilege "[i]f the services of the lawyer were sought or obtained" in "[f]urtherance of [a] crime or fraud."  Vt. R. Evid. 502(d)(1).  Courts emphasize that the crime-fraud exception is "narrow."  *See, e.g.*, *United Stationers Supply Co. v. King*, 2013 WL 419346, at *4 (E.D.N.C. 2013); *In re Application of Chevron Corp.*, 762 F. Supp. 2d 242, 254 (D. Mass. 2010).  As the Second Circuit held in a leading decision on the point, if a court compels testimony pursuant to the exception, then it must "specify the witness or witnesses required to give testimony, the scope of the examination permitted, and the basis ... for applying the crime-fraud exception."  *In re Richard Roe, Inc.*, 68 F.3d 38, 41 (2d Cir. 1995).  The exception has distinct elements.

To invoke the crime-fraud exception, a party "must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed."  *Richard Roe*, 68 F.3d at 40.  This standard requires "that a prudent person have a reasonable basis to suspect the

---

[4] Vermont Rule 502 also provides that there is no privilege "as to a communication relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer."  Vt. R. Evid 502(d)(3).   But even if this exception applied to Mr. Gross's OSHA Complaint, it has no application to Mr. Gross's deposition testimony in ***this litigation***, as even Plaintiffs appear to concede.  *See* Dkt 447 at 1 n.1.  Testifying at deposition in this case is not "reasonably necessary to pursue" Mr. Gross's OSHA suit.  *Cf. Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1087 (S.D. Cal. 2017).  Plaintiffs have also referred to a purportedly absolute "judicial privilege" for testimony, Dkt. 447 at 1 n.1, but the cases they cite are inapposite.  They concern a privilege in defamation law, not the attorney-client privilege.  *E.g.*, *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 267 (2d Cir. 1992); *Casey v. Pallito*, 2016 WL 96157, at *12 (D. Vt. 2016); *Wilkinson v. Russell*, 973 F. Supp. 437, 440 (D. Vt. 1997); *Couture v. Trainer*, 2017 VT 73, ¶ 12, 205 Vt. 319, 325, 174 A.3d 1245, 1249 (2017).

perpetration or attempted perpetration of a crime or fraud." *In re John Doe, Inc.*, 13 F.3d 633, 637 (2d Cir. 1994) (quotation marks and citation omitted). Thus, to invoke the exception, a specific crime or fraud must be identified. *Richard Roe*, 68 F.3d at 41.

Further, the "exception applies only when the court determines that **the client communication or attorney work product** in question was **itself in furtherance** of the crime or fraud." *Richard Roe*, 68 F.3d at 40 (emphasis modified). The "exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *Id.* at 40. A "simple finding of relevance" is not enough. *See id.* at 40-41. Rather, there must be a "specific nexus between the supposed [crime or] fraud and the attorney consultation," *Massaro*, 2000 WL 1176541, at *10 (D.N.J. 2000), and the "advice" must "lead[] to the deed" of the allegedly illicit conduct by the client. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). This means that there must be a showing that "the particular communication with counsel or the attorney work was intended" to "facilitate" the crime or fraud. *Richard Roe*, 68 F.3d at 40; *In re Neurontin Antitrust Litig.*, 801 F. Supp. 2d 304, 309-10 (D.N.J. 2011). These elements are not satisfied here.

Still further, even where these elements are satisfied, the privilege is not stripped from all communications made between the lawyer and client. Instead, the exception "carv[es] out ... to reach only" only those communications that have the required nexus to the purported crime or fraud." *In re Grand Jury Subpoena*, 419 F.3d 329, 347 (5th Cir. 2005). The "proper scope of the ... exception must necessarily be limited to those attorney-client communications and work products reasonably related to the furtherance of the ongoing or future crime or fraud at issue." *Id.* "Otherwise, to put it simply," the "exception swallows the privilege rule." *Id.* So "[i]f production

is ordered, the court shall specify the factual basis for the crime or fraud that the documents or communications are deemed to have furthered." *Richard Roe*, 68 F.3d at 41.

Because the "crime-fraud exception does not create a general waiver of the attorney-client privilege," courts have limited its application. *MacNamara v. City of N.Y.*, 2007 WL 3196295, at *2 (S.D.N.Y. 2007). In *MacNamara*, the court declined to apply the crime-fraud exception to privileged documents and deposition testimony, holding that "plaintiffs have not demonstrated that the documents at issue were used in furtherance of a fraud or crime such that the attorney-client privilege may be pierced" and plaintiffs "have yet to link particular communications with specific examples" of a crime or fraud. *Id.* Another court held that conclusory allegations insufficient to invoke the crime/fraud exception without reference to specific facts regarding how particular communications were used to further the alleged crimes or fraud. *Sulaymu-Bey v. City of New York*, 372 F. Supp. 3d 90, 92 (E.D.N.Y. 2019).[5] Here too, there has been no showing that any privileged communications were used in furtherance of a crime or fraud. Plaintiffs thus have not met their burden for this narrow exception to apply.

## II. Courts Recognize a Right to *Voir Dire* to Protect Testimonial Privilege.

Saint-Gobain holds and has not waived any privilege. Precedent supports the right of Saint-Gobain to conduct a *voir dire* examination of Mr. Gross to the extent Saint-Gobain deems it

---

[5] *See also, e.g.*, *accord Coan v. Dunne*, 2019 WL 1513462, at *4 (D. Conn. 2019) (granting motion to quash as to documents subject to valid claim of attorney-client privilege or work product protection and stating "[t]he attorney-client and work-product privileges are entitled to careful protection, and the Trustee has not made the particularized showing to justify the crime/fraud exception for the vast range of otherwise privileged documents he seeks"); *In re Gen. Motors LLC*, 2015 WL 7574460, at *4 (S.D.N.Y. 2015) (denying motion to compel, citing "purposeful nexus" standard, and stating "[m]ere relevance or temporal proximity does not suffice" to satisfy the exception).

necessary to establish the basis for the assertion of the privilege as to the deposition as a whole or specific issues within it.

For example, in *Ashworth*, a case with close parallels to this one, the plaintiffs sought to depose a purported whistleblower who was a former legal assistant for the defendant.  2004 WL 7330636, at *5.  The defendant asserted the attorney-client privilege on the basis that the witness learned any relevant facts "*only* because she was present during a confidential attorney-client communication or acted as a conduit for information in a privileged attorney-client communication."  *Id.* at *5.  To "establish the predicate for the assertion of the attorney-client privilege," the court allowed the defendant to "conduct limited *voir dire* questioning of at the deposition."  *Id.* at *5 n.4; *see also, e.g.*, *Genentech, Inc. v. Insmed Inc.*, 2006 WL 988877, at *1 (N.D. Cal. 2006); *Ancilla Sys., Inc. v. Commc'n Assocs., Inc.*, 1987 WL 19807, at *1-2 (N.D. Ill. 1987).

Another court determined it was "improper" for counsel not to permit a *voir dire* examination of a witness in order to clarify privilege.  *De La O v. Arnold-Williams*, 2007 WL 9717727, at *2 (E.D. Wash. 2007).  And in *Williams v. Sprint/United Mgmt. Co.*, the court determined that defense counsel failed to meet its burden to establish that the attorney-client privilege applied to a defense witness's testimony by failing to "inquire into the privileged nature of the entire range of responsive information from the witness" during *voir dire*.  2007 WL 445201, at *4 (D. Kan. 2007).  Defense counsel "could very well have carried its burden by conducting a comprehensive *voir dire* examination of the deponent with regard to the entire range of his or her knowledge."  *Id.*  The Court explained:

> In order to successfully conduct a *voir dire* examination of the witness on this issue, counsel should have taken the *voir dire* examination one step further by asking whether all information known by the witness and responsive to the deposition questions (1) originated from the Legal Department; (2) was kept in confidence; and

(3) was generated for the purpose of rendering legal advice. Without this information, it is impossible to know whether or not counsel justifiably instructed the witness not to answer any portion of the questions posed based on the privileged nature of responsive information.

*Id.*

Here, too, Saint-Gobain is entitled to conduct a *voir dire* examination of Mr. Gross to establish the application of the attorney-client privilege. That examination may explore the extent to which Mr. Gross's involvement in the matters in his OSHA Complaint pertained to the provision of legal services for Saint-Gobain. It will show whether, and to what extent, Mr. Gross may have learned facts related to this matter apart from the confidential communications that are protected by the privilege. And it will establish whether any factual basis exists to identify a specific crime or fraud with a direct nexus to Mr. Gross's provision of legal services to Saint-Gobain. That inquiry will provide an evidentiary basis for the Court to determine whether particular lines of inquiry by Plaintiffs are protected by the privilege or whether Mr. Gross's testimony is entirely cloaked in the privilege.

## III.  The Court's Rule 502(d) Order May Be Implemented by Sealing the Deposition Transcript and Limiting Its Dissemination Pending Litigation of Privilege Issues.

This Court has already ordered pursuant to Federal Rule of Evidence 502(d) that "[i]f a party inadvertently discloses information that is subject to any privilege, the inadvertent disclosure will not be a waiver of any claim of attorney-client privilege" and "will not form a basis for a claim that the materials is not so protected." Dkt. 57 at 4-5. The Court has further required prompt notice of any such disclosure and litigation under seal of any challenge to a claim of privilege. *See id.* Within the context of Mr. Gross's deposition, the Court may give effect to this by sealing the transcript and limiting its dissemination pending litigation of any privilege challenges by Plaintiffs via a motion to compel.

The "[a]ttorney-client privilege can … be 'a compelling reason' to seal judicial records." *Utica Mut. Ins. Co. v. INA Reinsurance Co.*, 2012 WL 13028279, at *7 (N.D.N.Y. 2012) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006)). The value of sealing is even more clear in the case of an unfiled pretrial deposition transcript, which is "not [a] public component[] of a civil trial" and thus does not carry the presumption of public access. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Under the Court's stipulated protective order, the transcript is automatically sealed for 30 days after it is final. *See* Dkt. 58 at 6-7. Here, given Saint-Gobain's claims of privilege and concerns regarding the disclosure of client confidences by Mr. Gross during his deposition, the fact that Mr. Gross testifies to a matter during direct or cross-examination cannot of itself be deemed a waiver. *See* Fed. R. Evid. 502(d); Dkt. 57 at 4-5. Saint-Gobain should therefore be allowed during the 30-day period in which the transcript is sealed to assert further privilege objections over any matters to which Mr. Gross may testify. The transcript should remain sealed until the Court rules on any challenges to those objections by Plaintiffs. In addition, during the period of sealing, the dissemination of the transcript and its contents should be limited solely to the Plaintiffs' counsel taking Mr. Gross's deposition.

The factual components of Mr. Gross's claims, including, but not limited to, communications with in-house and outside counsel relating to allegations regarding Mr. Gross's purported investigation of PFOA sites, *see* Gross Compl. ¶ 88, and details regarding internal meetings that included Saint-Gobain's attorneys, *see id.* ¶ 75, suggest that much of Mr. Gross's deposition testimony will be privileged or otherwise protected from disclosure. To the extent that Mr. Gross testifies regarding privileged matters, the deposition testimony is outside the scope of permissible testimony and should be immune from discovery. *See* Fed. R. Civ. P. 26(b). Saint-Gobain and the Court should have an opportunity to review the deposition transcript to make that

determination and "the protection afforded by the attorney-client privilege should not be lost in the process." *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2013 WL 1233699, at *2 (M.D. Fla. 2013).

Other courts have ordered such protections to ensure that the assertion of privilege is protected and preserved. *See, e.g., Moore v. Bd. of Trustees of Illinois Cmty. Coll. Dist. No. 508*, 2010 WL 4703859, at *1 (N.D. Ill. 2010); *Johnson v. Medisys Health Network*, 2011 WL 5222917, at *22 (E.D.N.Y. 2011), *report and recommendation adopted as modified*, 2011 WL 4101323 (E.D.N.Y. 2011).   Here, too, the deposition transcript should therefore be sealed and its dissemination limited "until the Court makes its decision." *U.S. ex rel. Baklid-Kunz*, 2013 WL 1233699, at *2.   To do otherwise would create a risk of harm to Saint-Gobain's interest in preserving the privilege and protecting confidences shared with Mr. Gross while in his role as Saint-Gobain's in-house counsel.

Dated:   June 17, 2021                                      Respectfully submitted,

/s/ *Timothy C. Doherty, Jr.*
Timothy C. Doherty, Jr.
**DOWNS RACHLIN MARTIN PLLC**
199 Main Street
Burlington, VT 05402
Tel: (802) 863-2375
Fax: (802) 862-7512
tdoherty@drm.com

Sheila L. Birnbaum (*pro hac vice*)
Mark S. Cheffo (*pro hac vice*)
Rachel B. Passaretti-Wu (*pro hac vice*)
Lincoln Davis Wilson (*pro hac vice*)
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036
Tel: (212) 698-3500

Fax:(212)698-3599
sheila.birnbaum@dechert.com
mark.cheffo@dechert.com
rachel.passaretti-wu@dechert.com
lincoln.wilson@dechert.com

*Attorneys for Saint-Gobain Performance*
*Plastics Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 17, 2021, I served the foregoing SAINT-GOBAIN'S BENCH MEMORANDUM REGARDING DEPOSITION OF ITS FORMER COUNSEL on the following counsel by electronic mail:

Gary A. Davis
James S. Whitlock
**DAVIS & WHITLOCK, P.C.**
21 Battery Park Ave., Suite 206
Asheville, NC 28801
Telephone:  (828) 622-0044
Facsimile:  (828) 398-0435
jwhitlock@enviroattorney.com
gadavis@enviroattorney.com

David F. Silver, Esq.
Timothy M. Andrews, Esq.
**BARR STERNBERG MOSS
 SILVER & MUNSON, P.C.**
507 Main Street
Bennington, VT 05201
Telephone:  (802) 442-6341
Facsimile:  (802) 442-1151
tandrews@barrsternberg.com
dsilver@barrsternberg.com

Emily J. Joselson, Esq.
James W. Swift, Esq.
**LANGROCK SPERRY & WOOL, L.L.P.**
P.O. Drawer 351
Middlebury, VT 05753
Telephone:  (802) 388-6356
Facsimile:  (802) 388-6149
ejoselson@langrock.com
jswift@langrock.com

DATED:  June 17, 2021

*/s/ Timothy C. Doherty, Jr.*
Timothy C. Doherty, Jr.

16