# EXHIBIT 1

**U.S. Department of Labor**  Office of Administrative Law Judges
800 K Street, NW
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



Issue Date: 02 July 2018

Case No.: 2017-SOX-00030
OSHA CASE No.: 2-4173-16-190

*In the Matter of:*

CHRISTOPHER GARVEY,
    *Complainant,*

v.

MORGAN STANLEY,
    *Respondent.*

## ORDER GRANTING IN PART, AND DENYING IN PART, RESPONDENT'S MOTION FOR A PROTECTIVE ORDER AND ORDER RESCHEDULING THE HEARING

    This claim arises under the employee protection provisions of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002 ("SOX" or the "Act"). Section 806, codified at 18 U.S.C. § 1514A, is the "whistleblower provision" which provides protection to employees against retaliation by certain persons covered under the Act for engaging in specified protected activity. Actions brought under this statute are governed by the rules set forth in 29 C.F.R. Part 1980, as well as the general procedural rules in 29 C.F.R. Part 18, Subpart A.

### BACKGROUND

    Christopher Garvey ("Complainant") worked as in-house counsel for Morgan Stanley ("Respondent") from 2006 until February 5, 2016. The circumstances of Complainant's departure formed the basis of an August 2, 2016 complaint with the Occupational Safety and Health Administration ("OSHA"). Complainant alleged that Respondent repeatedly pressured him to engage in unlawful conduct, making it impossible for Complainant to fulfill his ethical obligations as an attorney. Complainant further alleged that he had no choice but to resign under circumstances he described as a constructive dismissal. OSHA dismissed the complaint in a March 22, 2017 determination letter. Complainant appealed to the U.S. Department of Labor's Office of Administrative Law Judges ("OALJ") by letter filed May 1, 2017.

    On September 22, 2017, Respondent filed *Respondent Morgan Stanley's Motion for a Protective Order Forbidding Complainant from Disclosing Morgan Stanley's Privileged and Confidential Information, Documents, and Materials and Compelling Him to Return to Morgan*

*Stanley all Information, Documents, and Materials in His Possession, Custody, or Control Belonging to Morgan Stanley* ("*Resp't Mot.*").

In its motion, Respondent requests: 1) a protective order prohibiting Complainant "from disclosing Morgan Stanley's privileged and confidential information, documents, and material to third parties," litigation funders, in particular; 2) an order "compelling [Complainant] to return to Morgan Stanley all documents, information, and materials in his possession, custody, or control belonging to Morgan Stanley;" and 3) a "procedure whereby pleadings, documents, or other materials filed with or submitted to the Presiding Administrative Law Judge, the Administrative Review Board, or a reviewing court that contain or reveal privileged and confidential information, documents, and materials shall be filed under seal pursuant to 29 C.F.R. § 18.85." *Resp't Mot.* at 1, 10-11.

Respondent asserts that a protective order is necessary because Complainant intends to disclose potentially privileged materials to third parties in the course of pursuing his claim.[1] As in-house counsel, Complainant "routinely learned about and was provided with privileged and confidential information, documents, and materials, and he also routinely provided privileged and confidential legal advice to his client." *Id.* at 3. Respondent maintains that it has "expressly told Garvey on multiple occasions that it has not waived any applicable privilege." *Id.* at 3. Despite these reminders, Garvey "has indicated that he intends to use and disclose" Respondent's privileged information, documents, and materials when discussing this case with third parties. *Id.* at 3-4.

According to Respondent, "a valid claim of privilege is considered 'good cause' to justify a protective order." *Id.* at 2 (quoting *Navajo Nation v. Peabody Holding Co.*, 209 F. Supp. 2d 269, 283 (D.D.C. 2002), *aff'd* 64 F. App'x 783 (D.C. Cir. 2003)). Respondent maintains that Complainant should be precluded from using privileged materials to in any way support his whistleblower claim. *Id.* at 9 ("Garvey also has indicated his belief that he can use otherwise privileged and confidential information, documents, and materials to support his SOX retaliation claim. Even if this is correct, which Morgan Stanley denies . . ."). In the event Complainant is allowed to use privileged materials to pursue his claim, Respondent argues that Complainant may not share those materials with third parties because they "are not parties to this litigation and do not share any common legal interest with Garvey." *Id.* at 8. Respondent further contends that Garvey's "legal, contractual, and professional obligations" require that he return to Morgan Stanley all privileged and confidential materials that are currently in his possession. *Id.* at 4-5. Finally, Respondent requests that I seal any of these documents should they be submitted to OALJ. *Id.* at 10.

On October 5, 2017, Complainant filed *Complainant's Response to Respondent Morgan Stanley's Motion for a Protective Order Forbidding Complainant from Disclosing Morgan Stanley's Privileged and Confidential Information, Documents, and Materials and Compelling Him to Return to Morgan Stanley all Information, Documents, and Materials in His Possession, Custody, or Control Belonging to Morgan Stanley* ("*C. Reply*").

---

[1] Respondent includes correspondence from Mr. Garvey in which he states that he "expressly reserves the right to share such information as is necessary in connection with any efforts to explore obtaining assistance from litigation finance parties . . . ." *Id.* at Ex. 2; *see also id.* at Ex. 3.

Complainant argues that Respondent's proposed protective order is overly broad and would prevent Complainant from adequately litigating his case. Specifically, Complainant contends that "Morgan Stanley has no right to place restrictions on the persons that Complainant can legitimately consult in the preparation of his own case. This applies equally to experts, witnesses, advisors, or other parties, including litigation finance parties." *C. Reply* at 2. With respect to litigation funders, Complainant relies on case law to argue that a common legal interest exists between a party to a suit and its funders, such that "documents disclosed to a litigation funder [are not] automatically considered as having had any privilege attached to them waived." *Id.* at 10. Complainant also relies on case law to draw a distinction between communications, which are protected by attorney-client privilege, and underlying factual knowledge, which is not. *Id.* at 2.

Complainant further contends that Respondent has not met the standard necessary for a protective order. According to Complainant, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning do not qualify as good cause" for a protective order. *Id.* at 5. Complainant argues that blanket protective orders are not consistent with the presumption of public access for proceedings before OALJ or with the First Amendment's "right of access to judicial materials." *Id.* at 6-7. Finally, Complainant maintains that he "has offered and continues to offer, to accept reasonable restrictions over the use of material" gained through discovery. *Id.*

On March 5, 2018, Respondent filed *Morgan Stanley's Reply in Support of its Motion for a Protective Order Forbidding Complainant from Disclosing Morgan Stanley's Privileged and Confidential Information, Documents, and Materials and Compelling Him to Return to Morgan Stanley All Information, Documents, and Materials in his Possession, Custody, or Control Belonging to Morgan Stanley* ("Resp't Reply").[2] According to Respondent, the risk that its privileged materials may be disseminated establishes good cause for a protective order. *Resp't Reply* at 3-4. Furthermore, Respondent argues that Complainant's attempts to distinguish between communications and facts are inapposite because the cases cited by Complainant involve factual disclosures by a client, not factual disclosures by an attorney. *Id.* at 5. Respondent maintains that an attorney must protect the privileged information of his client, even if the client has an obligation to testify. Respondent also reiterated that Complainant has professional and contractual obligations to return all of its materials. *Id.* at 6-7.

On April 17, 2018, I issued an *Order Granting a Temporary Protective Order* that prohibited Complainant from disclosing privileged materials to third parties until such time as I

---

[2] On October 5, 2017, Respondent filed *Morgan Stanley's Motion for Leave to file a Reply in Support of its Motion for a Protective Order Forbidding Complainant from Disclosing Morgan Stanley's Privileged and Confidential Information, Documents, and Materials and Compelling Him to Return to Morgan Stanley all Information, Documents, and Materials in His Possession, Custody, or Control Belonging to Morgan Stanley*. On October 24, 2017, Complainant filed *Complainant's Response to Respondent Morgan Stanley's Motion for Leave to File a Reply in Support of its Motion for a Protective Order Forbidding Complainant from Disclosing Morgan Stanley's Privileged and Confidential Information, Documents, and Materials and Compelling Him to Return to Morgan Stanley all Information, Documents, and Materials in His Possession, Custody, or Control Belonging to Morgan Stanley*. On February 15, 2018, I issued an *Order Granting Respondent's Motion for Leave to File Reply Brief*.

ruled on *Resp't Mot.* The order also established interim procedures for the parties to submit documents under seal.

## DISCUSSION

Respondent moves pursuant to 29 C.F.R. §§ 18.52 and 18.85 to shield its privileged materials from discovery and to seal any privileged materials submitted to OALJ through motions and filings.

The regulation at 29 C.F.R. § 18.52 provides that during discovery, "[t]he judge may, for good cause, issue an order to protect" that involves "forbidding the disclosure" of materials and "[r]equiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified manner."

The regulation at 29 C.F.R. § 18.85 governs hearings and motions practice before OALJ and provides that a judge may "limit the introduction of material into the record or issue orders to protect against undue disclosure of privileged communications, or sensitive or classified matters."[3] For non-dispositive motions, the moving party must establish good cause for a protective order; for dispositive motions, the moving party must meet a higher standard and establish compelling reasons for a protective order. *Office of Fed. Contract Compliance Programs, U.S. Dep't of Labor v. Google Inc.*, 2017-OFC-00004, slip op. at 2-3 (July 18, 2017) (Order Sealing Exhibits) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978); *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006)).

A valid claim of privilege satisfies both the good cause and compelling reason standards for a protective order. *See Creative Tent Int'l Inc. v. Kramer*, No. 3:15-cv-8005-SMM, 2015 U.S. Dist. LEXIS 102514, at *8 (D. Ariz. Aug. 4, 2015) ("the presence of privileged attorney-client communications is a compelling reason to seal the subject judicial record"); *Navajo Nation v. Peabody Holding Co.*, 209 F. Supp. 2d 269, 283 (D.D.C. 2002), *aff'd*, 64 Fed. App'x 783 (D.C. Cir. 2003) ("[a] valid claim of privilege is sufficient good cause to justify a protective order").

To the extent Respondent asserts valid claims of privilege, a protective order is **GRANTED**. However, whether certain materials are privileged is a fact specific analysis. At this early stage of the litigation process, I am unable to make determinations about specific documents. Instead, I will provide a broad framework for how I will assess claims of privilege and how the parties may use privileged materials that are covered by the protective order. I will also establish procedures for the parties to assert or dispute claims of privilege.

### I.  *Attorney-Client Privilege*

The attorney-client privilege "applies to a confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014); *see also Jordan v. U.S. Dep't of Labor*, Case 1:16-cv-01868, slip op. at 27 (D.D.C. Mar. 30, 2018). "The

---

[3] As an alternative, "[t]he judge may admit into the record a summary or extract that omits the privileged, sensitive or classified information." 29 C.F.R. § 18.85(a).

attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal citations omitted). Despite its important place in legal theory, "the attorney-client privilege is often '[n]arrowly defined, riddled with exceptions, and subject to continuing criticism.'" *SEC v. Ryan*, 747 F. Supp. 2d 355, 366 (N.D.N.Y. Oct. 20, 2010) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). The scope of the privilege and its exceptions will be detailed in this section.

### A. Burden and Elements

The party asserting attorney-client privilege bears the burden of proving that it applies. *See, e.g., Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988). Thus, for each claim of privilege, Respondent must establish the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). Furthermore, while the attorney-client privilege binds in-house counsel, "communications made in [a non-legal business capacity] capacity are not privileged." *Chandola v. Seattle Hous. Auth.*, No. 2:13-cv-00557-RSM, 2014 U.S. Dist. LEXIS 144103, at *2 (W.D. Wash. Oct. 7, 2014).

### B. Materials Covered by Attorney-Client Privilege

The parties dispute whether the attorney-client privilege protects facts in addition to communications. It is well settled that the privilege "extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn*, 449 U.S. at 395-396 (quoting *Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D. Pa. 1962)). To hold otherwise would allow a client to shield information from disclosure merely by communicating it to an attorney, a result that is not consistent with the purpose of the privilege. *Jones v. Carson*, No. 1:15-cv-00310-CKK-GMH, 2018 U.S. Dist. LEXIS 67400, *25 (D.D.C. Mar. 30, 2018). Therefore, while the factual content of a specific attorney-client communication is privileged, Complainant may discover the underlying information from other sources, including depositions of Respondent's officials. *See Upjohn*, 449 U.S. at 396 ("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge

merely because he incorporated a statement of such fact into his communication to his attorney"); *Jones* 2018 U.S. Dist. LEXIS 67400 at *25 ("But if facts are disclosed as part of a confidential attorney-client communication, then while those facts can be discovered independently, they may not be discovered through the communications that were made to the attorney"); *Evans v. Atwood*, No. 1:96-cv-2746, 1999 U.S. Dist. LEXIS 17545, *15 (D.D.C. Sept. 29, 1999) ("For example, the plaintiffs may be entitled to question [the defendant] about underlying facts of which he has knowledge, even if those same facts were the subject of privileged communications between him and agency officials").

Respondent draws a distinction between facts known to a client and facts known to an attorney. Case law supports drawing such a distinction. Attorneys owe a duty of confidentiality to their clients such that any fact an attorney learns through a confidential communication enjoys the protection of privilege. *See Prudential Ins. Co. of Am. v. Massaro*, No. 2:97-cv-02022-AMW, 2000 U.S. Dist. LEXIS 11985, *19 (D.N.J. Aug. 14, 2000) ("lawyers must not themselves voluntarily divulge information covered by their clients' attorney-client privilege"). Therefore, if Complainant testifies about facts that he learned from confidential communications with Respondent, those facts would be privileged. However, those same facts may be obtained in a non-privileged form from other sources. As discussed in the preceding paragraph, factual information known to Respondent is not privileged merely because it was communicated to an attorney. Accordingly, while Complainant's testimony about factual matters may be privileged, Respondent's testimony about the same matters may not be privileged.

Furthermore, "to the extent the information sought to be discovered was not conveyed to counsel by his client, the attorney-client privilege is inapplicable." *Bird v. Penn Cent. Co.*, 61 F.R.D. 43, 46 (E.D. Pa. 1973); *see also Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24-25 (1st Cir. 2011) ("If, however, the transmitted information consists largely of facts acquired from non-client sources, those facts are not privileged").

### C. *Appropriate Use of Privileged Materials*

#### 1. *Complainant May Use Privileged Materials to Support His Claim*

Designating certain materials as privileged does not bar Complainant from using them in this proceeding. With SOX, Congress established a statutory framework that allows attorneys to bring suit against their employers for events that occur within the course of providing legal counsel.[4] The Administrative Review Board ("ARB") has held that SOX limits aspects of the common law attorney-client privilege such that a "complainant may rely on statements or documents covered by the attorney-client privilege in support of a SOX whistleblower complaint." *Gloss v. Marvell Semiconductor, Inc.*, ARB No. 10-033; ALJ No. 2009-SOX-00011 (Jan. 13, 2010) (Order for Petition Denying Review) (citing *Jordan v. Sprint Nextel Corp.*, ARB

---

[4] Congress passed SOX in response to several financial scandals in the early 2000's in which the unethical behavior of professionals, including attorneys, resulted in widespread shareholder harm. "Congress plainly recognized that outside professionals - accountants, law firms, contractors, agents, and the like - were complicit in, if not integral to, the shareholder fraud and subsequent cover-up officers of the publicly traded Enron perpetrated." *Spinner v. Landau*, ARB Case Nos. 10-111, 10-115; ALJ Case No. 2010-SOX-00029, slip op. at 12-13 (May 31, 2012). The whistleblower provisions of SOX serve as a safety valve so that attorneys can stand their ground on matters of ethics without fear of reprisal.

No. 06-105; ALJ No. 2006-SOX-00041 (Sept. 30, 2009)); *see also Wadler v. Bio-Rad Labs., Inc.*, 212 F. Supp. 3d 829, 846 (N.D. Cal. 2016) (plaintiff "may rely on privileged and confidential communications that he reasonably believes are necessary to prove his" SOX claim). Accordingly, Respondent's request that Complainant be precluded from using privileged materials to in any way support his claim is **DENIED**. Furthermore, because Complainant may rely on privileged materials to prosecute his claim, Respondent's request that Complainant immediately return all privileged materials is **DENIED**.[5]

### 2. *Complainant May Not Disclose Privileged Materials to Third-Party Litigation Funders*

Third-party litigation funding is a recent innovation in legal practice. When a plaintiff brings suit against a wealthy defendant, the economic disparity may force the plaintiff "to abandon the case or settle on distinctly disadvantageous terms." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 718 (N.D. Ill. 2014). Third-party funders can blunt the effect of a defendant's wealth by financing a plaintiff's suit in return for a share of any resulting judgment or settlement. *Id.*

Most discovery disputes in cases with third-party funders involve a defendant attempting to access documents or communications related to the plaintiff's funding agreement with the third-party. Whether a plaintiff enjoys some form of privilege with its funder is a contested area of the law. *Compare id.* at 733 (holding that a plaintiff waives privilege when it shares materials with a funder because the two share a common business interest rather than a common legal interest), *with United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 U.S. Dist. LEXIS 32967, at *16 (E.D. Tex. Mar. 15, 2016) (holding that a plaintiff does not waive privilege by sharing its own materials with a funder because "[l]itigation funders have an inherent interest in maintaining the confidentiality of potential clients' information").

The instant case is distinguishable in that Respondent is not attempting to obtain documents from Complainant's funder, but rather prohibit the disclosure of its own privileged materials to the funder. Complainant cites to no authority involving this particular fact pattern, nor can I find any cases on point. Complainant certainly has a common business interest with his prospective funders. But given the unsettled nature of the law, I am not persuaded that Complainant shares a common legal interest, especially when it comes to disseminating another party's privileged materials. My analysis therefore proceeds from the maxim that the attorney-client privilege "belongs to the client." *In re Walsh*, 623 F.2d 489, 493 (7th Cir. 1980). Respondent is entitled to keep the disclosure and dissemination of its privileged materials to the bare minimum necessary for Complainant to prosecute his claim. Complainant argues that obtaining outside financing is essential to maintaining this action. However, there is no reason to believe that Complainant will be unable to secure a funder merely because he cannot share Respondent's privileged materials. Respondent's request that Complainant be prohibited from

---

[5] This order does not limit Respondent's rights to its materials after the conclusion of this proceeding. Furthermore, the record establishes that Respondent has not waived its privilege. Accordingly, Respondent's compliance with this order will not be construed as a waiver of privilege.

disclosing Respondent's privileged and confidential information, documents, and materials to third-party litigation funders is **GRANTED**.[6]

### 3. *Whether Complainant May Disclose Respondent's Privileged Materials to Expert Witnesses and Other Third Parties is Not Ripe for Adjudication*

The parties dispute whether privileged materials can be disclosed to other third-parties, including expert witnesses. Complainant argues that an inherent aspect of prosecuting his case is presenting evidence to outside experts and witnesses. However, the parties are only in the beginning stages of discovery. It is not clear what evidence is at issue, or which experts Complainant intends to call. Accordingly, this issue is not ripe for adjudication. In the interim, Complainant is **PROHIBITED** from disclosing Respondent's privileged and confidential information, documents, and materials to other third-parties.[7]

## II.   Work-Product Doctrine

While it is inevitable that the attorney-client privilege will protect some materials in this matter, it is less clear that the work-product doctrine will apply. "The work-product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does. Its purpose is more narrow, its reach more modest." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775 (1978) (en banc), *disapproved on other grounds by Crooker v. U.S. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc). Specifically, the privilege attaches only to "materials 'prepared in anticipation of litigation or for trial.'" *Id.* (quoting Fed.R.Civ.P. 26(b)(3)); *see also Hickman v. Taylor* 329 U.S. 495 (1947).

On the basis of the record before me, it appears that Complainant was primarily a transactional attorney for Respondent and did little work related to litigation. "[T]he [work-product] privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1515 (D.C. Cir. 1993)). Accordingly, Respondent may not rely on the work-product privilege to shield transactional documents prepared by Complainant unless it can establish those documents were created in anticipation of litigation or for trial.

## III.   Procedures for Submitting Materials Under Seal

The parties are encouraged to jointly stipulate as to which materials are protected by privilege. If the parties are not able to come to an agreement, the party asserting a claim of privilege must do so by following the procedures in this section.

The party asserting a privilege must submit a motion with legal arguments explaining why the privilege applies to the document in question. Along with its motion, the party must

---

[6] While my analysis focuses on the issue of attorney-client privilege, this order applies equally to Respondent's confidential and proprietary business information.
[7] Nothing in this order prevents Complainant from disclosing materials to legal counsel.

submit an un-redacted copy of the document in a clearly marked sealed envelope. This submission will be placed in a restricted part of the case file. The party must also file a separate redacted copy of the document for the public portion of the record. Specifically, the party "must propose the fewest redactions possible that will protect the interest offered as the basis for the motion. A redacted copy or summary of any material sealed must be made part of the public record unless the necessary redactions would be so extensive that the public version would be meaningless, or making even a redacted version or summary available would defeat the reason the original is sealed." 29 C.F.R. § 18.85(b)(1).[8] The party disputing whether a privilege applies may file a reply brief. I will make a determination on the basis of the briefs and submissions in accordance with 29 C.F.R. § 18.85(b)(2).[9, 10]

### IV.   *Applicability of the Freedom of Information Act ("FOIA")*

Respondent has included the following language throughout its filings: "<u>**CONFIDENTIAL – ENTIRE CASE FILE SEALED – NOT SUBJECT TO FOIA**</u>." However, only those documents submitted in accordance with this order will be sealed. Moreover, even if a record is sealed, the Department of Labor is still required to respond to requests for public inspection under FOIA. A party is entitled to pre-disclosure notifications rights under 29 C.F.R. § 70.26 if its sealed records are the subject of a FOIA request. If the requested record does not fall within one of the exemptions listed at 5 U.S.C. § 552(b), it must be released. Furthermore, even if the Department of Labor makes a determination that an exemption applies, that determination is subject to review by a federal court. *See Jordan*, No. 1:16-cv-01868, slip op. at 29 ("In sum, DOL's arguments that the attorney-client privilege applies to the . . . email are unavailing. . . . DOL is ordered to release the . . . email").

### V.   *Continuance of Hearing*

Pursuant to a February 6, 2018 *Order Rescheduling Hearing*, this case was scheduled for a hearing to commence on October 9, 2018 at 9:00 a.m., and if necessary, continue through October 12, 2018. On March 5, 2018, Respondent filed *Morgan Stanley's Motion for a Continuance of Hearing*. Respondent advised that its counsel and witnesses were not available on the hearing dates. Respondent requested that the hearing be continued to the week of November 12, 2018 or later.

The regulation at 29 C.F.R. § 18.41(b) provides that "[a] request by a party to continue a hearing or to change the place of the hearing must be made by motion." Such motion "must be

---

[8] If a party wishes to submit privileged materials with another type of motion, it must follow these same procedures—file an un-redacted copy in a clearly marked sealed envelope along with a redacted copy in accordance with 29 C.F.R. § 18.85(b)(1).

[9] These procedures will also apply when the parties dispute whether certain materials contain confidential and proprietary business information.

[10] Complainant filed *Complainant's Motion to Compel Discovery* on March 26, 2018 and *Complainant's Motion to Compel Discovery #2* on May 24, 2018. Respondent filed *Morgan Stanley's Motion for a Protective Order Governing the Exchange of Confidential Information in Discovery* on April 30, 2018. I find that these motions are premature given that this order addresses many of the issues raised by the parties. The parties are directed to meet and confer about the discovery process and the procedures set forth in this order. If, after a good faith effort, the parties are unable to mutually resolve their discovery disputes, they may re-file their motions.

filed promptly after the party becomes aware of the circumstances supporting the continuance." 29 C.F.R. § 18.41(b)(1). Furthermore, the regulation at 29 C.F.R. § 18.12(b) vests in me "all powers necessary to conduct fair and impartial proceedings." I find that Respondent's request for a continuance was filed promptly, given that it was submitted soon after my *Order Rescheduling Hearing*. I further find that a continuance is necessary not only because of the availability of Respondent's counsel and witnesses, but also because of delays in discovery.

Respondent's *Motion for a Continuance of Hearing* is **GRANTED**.[11] The hearing in this matter is rescheduled to begin at 9:00 a.m. on January 15, 2019,[12] and if necessary, continue through January 18, 2019 at the following location:

> U.S. Department of Labor
> Office of Administrative Law Judges Courtroom
> 800 K Street NW, 5th Floor
> Washington, D.C. 20001-8002

## ORDER

In summary:

1. Respondent's request for a protective order covering its privileged documents, materials, and information is **GRANTED**. A party asserting a claim of privilege must follow Section III of this order. I will assess claims of privilege in accordance with framework established in Sections I and II of this order.
2. Respondent's request that Complainant be precluded from using privileged materials to in any way support his claim is **DENIED**.
3. Respondent's request that Complainant immediately return all privileged materials is **DENIED**.
4. Respondent's request that Complainant be prohibiting from disclosing its privileged and confidential information, documents, and materials to third-party litigation funders is **GRANTED**.
5. Respondent's request that Complainant be prohibited from disclosing its privileged materials to other third parties is not ripe for adjudication. In the interim, Complainant is **PROHIBITED** from disclosing Respondent's privileged and confidential information, documents, and materials to other third-parties.
6. Respondent's compliance with the terms of this order shall not constitute a waiver of any valid claim of privilege.
7. Respondent's request for a continuance is **GRANTED**. This hearing in this matter is rescheduled to begin at 9:00 a.m. on January 15, 2019 and continue, if necessary, through January 18, 2019, in Washington, D.C.

---

[11] Respondent's *Motion for Leave to File a Reply Brief in Support of its Motion for a Continuance of Hearing*, filed on March 27, 2018 is **DENIED**.
[12] The requirements of the *Pre-Hearing Order* issued on September 7, 2017, are now based on a hearing date of January 15, 2019.

- 10 -

**SO ORDERED.**



Digitally signed by Larry Merck
DN: CN=Larry Merck,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=Washington, S=DC, C=US
Location: Washington DC

LARRY S. MERCK
Administrative Law Judge

## SERVICE SHEET

Case Name: **GARVEY_CHRISTOPHER_v_MORGAN_STANLEY_and_C_**

Case Number: **2017SOX00030**

Document Title: **ORDER GRANTING IN PART, AND DENYING IN PART, RESPONDENT'S MOTION FOR A PROTECTIVE ORDER AND ORDER RE**

I hereby certify that a copy of the above-referenced document was sent to the following this 2nd day of July, 2018:



Digitally signed by MAURICE WILLIAMS
DN: CN=MAURICE WILLIAMS, OU=LEGAL ASSISTANT, O=US DOL Office of Administrative Law Judges, L=Washington, S=DC, C=US
Location: Washington DC

**MAURICE WILLIAMS**
**LEGAL ASSISTANT**

Associate Solicitor
Division of Fair Labor Standards
U. S. Department of Labor
Room N-2716, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
    *{Hard Copy - Regular Mail}*

Director
Directorate of Whistleblower Protection Programs
U S Department of Labor, OSHA
Room N 4618 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
    *{Hard Copy - Regular Mail}*

Free State Reporting Inc
1378 Cape St. Clair Road
ANNAPOLIS MD 21409
    *{Hard Copy - Regular Mail}*

Christopher Garvey
Calle O'Donnell 22, Escalera A, 4 Izq.
MADRID SPAIN 28009
SPAIN
    *{Hard Copy - Regular Mail}*

Andrew J Schaffran, Esq.
Morgan, Lewis & Bockius, LLP.
101 park Avenue
NEW YORK NY 10178
    *{Hard Copy - Regular Mail}*

Teri M Wigger
U.S Department of Labor
201 Varick Street, Room 670
NEW YORK NY 10014
    *{Hard Copy - Regular Mail}*