UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 DEC 17  AM 8: 37

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| JAMES D. SULLIVAN, *et al*., individually, and on behalf of a Class of persons similarly situated, | |
| *Plaintiffs*, | Case No. 5:16-cv-00125-GWC |
| v. | Hon. Geoffrey W. Crawford |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION, | |
| *Defendant*. | |

## PRELIMINARY APPROVAL ORDER

Plaintiffs James D. Sullivan, Leslie Addison, Ronald S. Hausthor, Gordon Garrison, Ted Crawford, Linda Crawford, and Billy J. Knight, on behalf of themselves and Members of the Property Class and Exposure Class, by and through Class Counsel, and Defendant Saint-Gobain Performance Plastics Corporation ("Saint-Gobain"), by and through its counsel, have submitted a Settlement Agreement ("Settlement") to this Court, and Plaintiffs have moved under Federal Rule of Civil Procedure 23(e) for an order: (1) preliminarily approving the Settlement; (2) approving the Notice Plan and Notice; (3) appointing Mr. John Schraven as Special Master to review the fairness of the allocation of compensation to the Property Class; (4) appointing KCC Class Action Services LLC ("KCC") as the Property Settlement Administrator and directing Class Counsel to commence the Notice Program with KCC's assistance; (5) preliminarily appointing Mr. Edward Gentle as Administrator of the Court-Supervised Medical Monitoring Program for the Exposure Class; (6) approving the submitted Qualified Settlement Fund for deposit of Settlement funds by Saint-Gobain; (7) authorizing parents or guardians to execute claims forms and other documents on behalf of minor children; and (8) scheduling a Final Approval Hearing to consider final

approval of the Settlement and any application for attorneys' fees, expenses, and Class Representative Incentive Awards. Saint-Gobain does not oppose the Motion for Preliminary Approval. The Court has considered the terms of the Settlement, the exhibits to the Settlement Agreement, the record of proceedings, and all papers and arguments submitted in support, and now finds that the motion should be, and hereby is, GRANTED.

ACCORDINGLY, THE COURT FINDS AND ORDERS:

1.      This Court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the Plaintiffs, including Members of the Property Class and Exposure Class, and Defendant Saint-Gobain, (the "Parties") for purposes of the Settlement.

**SUMMARY OF THE LITIGATION AND SETTLEMENT**

2.      Plaintiffs filed this lawsuit against Saint-Gobain on May 6, 2016, [Doc. 1], alleging that, for over 20 years, Perfluorooctanoic Acid ("PFOA") was released from two facilities operated by Saint-Gobain and its predecessor in the Town of Bennington and the Village of North Bennington, Vermont, contaminating Plaintiffs' properties and blood with PFOA. Plaintiffs allege that Saint-Gobain is liable for the PFOA contamination of their properties and blood under various tort and statutory causes of action, including negligence, nuisance, and trespass. The Complaint was amended April 27, 2017, [Doc. 71], June 30, 2017, [Doc. 89], and October 5, 2017, [Doc. 113]. The substance and history of the litigation have been described in various Court Orders, including Docket Entries 29, 74, 300, and 303, and will not be repeated here.

3.      Plaintiffs seek to obtain monetary compensation for their property damages, including diminution in value and loss of use and enjoyment of their properties, annoyance, upset and inconvenience, and out-of-pocket expenses. Plaintiffs also seek damages and equitable relief for the unreasonable harm to groundwater caused by Saint-Gobain in violation of the Vermont

2

Groundwater Protection Act, 10 V.S.A. § 1410. Plaintiffs further seek injunctive relief, including a medical monitoring program to monitor their health and diagnose, at an early stage, certain ailments.

4.    Following a combined hearing on *Daubert* challenges to Plaintiffs' expert witnesses and class certification, this Court certified two Classes in 2019. [Doc. 303 (8/23/19)]. The Exposure Class was certified under Rule 23(b)(2), consisting of all persons who, as of August 23, 2019: (1) have resided within the Zone of Concern;[1] (2) ingested water with PFOA within the Zone of Concern; (3) and experienced an accumulation of PFOA in their bodies as demonstrated by blood serum tests disclosing a PFOA blood level above 2.1 parts per billion ("ppb"). [Doc. 445 at 6 (May 10, 2021 Class Notice)]. The Property Class was certified for purposes of liability only under Rule 23(c)(4) and consists of natural persons who owned residential real property in the Zone of Concern on March 14, 2016, as well as natural persons who purchased residential real property after March 14, 2016, that was subsequently added to the Zone of Concern. *Id.*

5.    This Court appointed Mr. John Schraven as Settlement Master on April 6, 2017, and beginning in January 2020, the Court has conducted settlement conferences with Mr. Schraven and the Parties, both in-person and by video conference. A formal, in-person, mediation was held with Mr. Schraven and the Parties on August 26, 2020. Further discussions continued between the Parties with Mr. Schraven's assistance, until on July 9, 2021, the Parties reached an agreement in principle and executed a Confidential Settlement Term Sheet.

6.    The Parties then negotiated the detailed written Settlement Agreement and exhibits that are now before the Court [Docs. 461 – 462].

---

[1] The Zone of Concern is defined in the attached Settlement Agreement, ¶ II.12, and is shown on the map attached to the Settlement Agreement as Exhibit B.

7.     The Settlement resolves all claims alleged by Plaintiffs against Saint-Gobain. It provides, among other things, that as consideration for the release from Property Class Members, Saint-Gobain will pay $26,200,000 (TWENTY-SIX MILLION TWO HUNDRED THOUSAND DOLLARS) into a Property Settlement Fund to compensate Property Class Members for alleged property damages, and that as consideration for the release from Exposure Class Members, Saint-Gobain will pay up to $6,000,000 (SIX MILLION DOLLARS), plus $1,950,000 (ONE MILLION NINE HUNDRED FIFTY THOUSAND DOLLARS) in attorney fees and expenses, to fund a Court-Supervised Medical Monitoring Program for Exposure Class Members over a period of fifteen years.

## PRELIMINARY APPROVAL

8.     Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. In general, the approval process involves three stages: (1) notice of the settlement to the class after "preliminary approval" by the Court; (2) an opportunity for class members to opt out of, or object to, the proposed settlement; and (3) a subsequent hearing at which the Court grants "final approval" upon finding that the settlement is "fair, reasonable, and adequate," after which judgment is entered, class members receive the benefits of the settlement, and the settling defendant obtains a release from liability. Fed. R. Civ. P. 23(e)(1)-(2), (4)-(5).

9.     In deciding whether to grant "preliminary approval" of a proposed settlement, the Court evaluates whether "the court will likely be able to" grant final approval to the settlement as a "fair, reasonable, and adequate" compromise, such that it makes sense to give notice to the proposed class members. Fed. R. Civ. P. 23(e)(1)(B), as amended in December 2018. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Hernandez v. Between the Bread 55th Inc.*, 496 F.Supp.3d 791, 798 (S.D.N.Y., 2020). However, the Court still reviews the proposed settlement for the fairness, reasonableness, and adequacy by which it will judge final approval of the settlement. *Id.* The preliminary approval stage "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No. 18CV4747DLISMG, 2020 WL 9814083, at *5 (E.D.N.Y. Oct. 19, 2020) (*quoting Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009). In considering preliminary approval, the Court is also mindful of the "strong judicial policy in favor of settlements particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009).

10.    Under Federal Rule of Civil Procedure 23(e)(2), as amended in December 2018, in considering whether a proposed settlement is "fair, reasonable, and adequate," the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

11.    The Settlement appears at this preliminary approval stage to be procedurally fair, reasonable, and adequate in that the Class Representatives and Class Counsel have adequately represented the Property and Exposure Classes in litigating the merits of the dispute and in obtaining a Settlement of significant value through arm's-length negotiations between

sophisticated counsel and under the auspices of an experienced mediator as well as the Court's oversight. Fed. R. Civ. P. 23(e)(2)(A)-(B).

12.     Likewise, the Settlement appears at this preliminary approval stage to be substantively fair, reasonable, and adequate in that the relief provided is substantial, particularly when taking into account the costs, risks, and delays of a liability trial, multiple damages trials, and any appeals. Fed. R. Civ. P. 23(e)(2)(C)(i).

13.     The proposed method of distributing monetary relief to the Property Class Members appears to be adequate, because it is relatively streamlined, requiring only submission of a Claim Form, with appropriate evidence of property ownership and residency, and few supporting documents, as specified in the Settlement. Similarly, for the Exposure Class, the eligibility criteria and the procedure for enrollment in the Medical Monitoring Program are straightforward, and the Settlement provides for a blood test to determine eligibility for those potential Class Members meeting other eligibility criteria who have not yet been tested for PFOA. Fed. R. Civ. P. 23(e)(2)(C)(ii).

14.     The Settlement is fair, reasonable, and adequate when taking into account the proposed award of attorneys' fees. Attorneys' fees will be paid only after Final Approval and only upon approval of the Court, which will consider and evaluate any request for fees in conjunction with final approval. Fed. R. Civ. P. 23(e)(2)(C)(iii).

15.     The Parties have represented that there is one agreement required to be identified under Fed. R. Civ. P. 23(e)(3), which provides that Saint-Gobain shall have the right to terminate the Property Class Settlement Agreement in the event that less than a certain minimum percentage of Property Class Members participate in the Settlement, as determined by the number of properties for which the owners opt out of the Property Settlement as compared to the total number

of properties in the Property Class. The Court finds that this type of confidential agreement is common in class settlements and that a minimum participation percentage does not affect the fairness, reasonableness, and adequacy of the Settlement.

16. Finally, it appears at this stage that the Settlement treats each Member of the two Classes equitably relative to one another, as required by Fed. R. Civ. P. 23(e)(2)(D). With respect to the Exposure Class Settlement, all Class Members who demonstrate eligibility and enroll in the Medical Monitoring Program will receive targeted diagnostic monitoring that does not duplicate their primary care, for early detection of certain diseases for which Plaintiffs allege these Exposure Class Members are at higher risk due to their PFOA exposure. The Exposure Class Settlement thus treats all Exposure Class Members equitably relative to each other.

17. Likewise, the Property Class Settlement treats the Property Class Members equitably relative to each other. Class Counsel have proposed an allocation method based upon the value of each property on or before March 14, 2016, which utilizes different percentages of that value for compensation depending upon the category of the property with regard to its water supply and the level of PFOA contamination of groundwater on the property. Additionally, Property Class Members who resided on their property will receive an additional payment for upset and inconvenience, and those who previously used wells, but were required to connect to municipal water, will receive a payment for some of their added costs of paying for municipal water as compared to the costs of a well. Based on the recommendation of the Special Master, and this Court's preliminary review, the proposed allocation method treats Property Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D).

18.     Further assurance of the equitable allocation will be provided by the review and recommendation of Mr. Schraven acting as Special Master to review Plaintiffs' proposal before Final Approval.

19.     The Settlement Agreement provides for Plaintiffs to seek Incentive Awards for Class Representatives to compensate them for their service to the Classes in this case. The Court finds that Incentive Awards are common in class settlements and that they are authorized by the Second Circuit Court of Appeals. *See e.g., Knox v. John Varvatos Enterprises Inc.*, 520 F.Supp.3d 331, 348 (S.D.N.Y., 2021), *appeal pending* ($20,000 award approved for one class representative); *see also Strougo ex rel. Brazilian Eq. Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 263-64 (S.D. N.Y. 2003) (citing cases approving service awards). The Second Circuit recently held that such awards are not prohibited by U.S. Supreme Court precedent. *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 96 (2d Cir. 2019). The Court preliminarily approves the amount requested for each Class Representative as reasonable given the time and effort they have expended in support of the Classes in this litigation. The Court will consider this further in the Final Approval hearing.

20.     In addition to preliminarily satisfying the requirements of Rule 23(e)(2), the Court also finds preliminarily that the proposed Settlement satisfies the Second Circuit's factors for class settlement approval set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds* by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

21.     The Court has considered the Due Process rights of absent Class Members and finds that such rights are adequately protected.

**NOTICE TO THE CLASSES**

8

22.     Upon granting preliminary approval under Federal Rule of Civil Procedure 23(e)(1), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

23.     The proposed Notice and Notice Plan satisfy the requirements of Fed. R. Civ. P. 23(e)(1) and Due Process. The Proposed Notice incorporates the "plain language" guidelines and elements of the illustrative notice forms that the Federal Judicial Center developed for use in federal courts. The notice contains clear and concise information about the Settlement, including: (a) the fact of the Settlement of the Exposure Class and Property Class claims; (b) definitions of the Exposure and Property Classes; (c) a summary of the Settlement benefits; (d) a brief description of the case; (e) a statement concerning how attorneys' fees will be paid; (f) the options available to Class Members, including their right to obtain independent counsel at their expense; (g) the deadlines by which class members may object, (h) and the date, time, and location for the Final Approval Hearing. The proposed Notice accurately summarizes the key elements of the Settlement and is relatively simple and easily understood by the average class member.

24.     The Court finds that the proposed Notice is the best notice that is practicable under the circumstances, especially because most Class Members will receive individual notice by mail to their home address based on available property ownership records. The newspaper and other publication notices will supplement these individual notices and are practicable means of reaching Class Members who may not receive the individual mail notice.

25.     Class Counsel, with the assistance of KCC, shall commence mailing-out the approved Notice to Class Members within fifteen (15) days after the entry of this Order. Class

Counsel will commence publication of the newspaper and other publication notices as soon as practicable, but no later than within fifteen (15) days after the entry of this Order. The Notice shall contain the dates set out below for the Final Approval Hearing and exclusion from (or revoking prior exclusion) or objecting to the Settlement.

26.     The Court has considered the Parties' request to begin accepting and processing Claim Forms beginning thirty (30) days after the Preliminary Approval of the Settlement and before Final Approval. The Court approves this procedure and finds it will expedite the claims process for Property Settlement payments and the establishment of the Court-Supervised Medical Monitoring Program if the Court finally approves the Settlement after the Final Approval Hearing.

## PROCEDURES FOR REQUESTING EXCLUSION FROM
## OR OBJECTING TO THE SETTLEMENT

27.     A Property Class Member may request exclusion (opt out) from the Property Settlement at any time prior to the Opt-Out Deadline, provided an opt-out notice is sent to Class Counsel in accordance with the procedures set forth in the Settlement Agreement and the Notice of Class Settlement. If a property that is encompassed by the Property Class has more than one legal owner and one of those owners excludes himself or herself from the Property Class, then all owners of that property shall be deemed to have opted out of the Settlement, and no owner of that property shall be entitled to a payment under the Settlement.

28.     Property Class Members shall have thirty (30) days after the Notice Date to opt out of the Property Class Settlement ("Opt-Out Deadline").

29.     Property Class Members who opted out after the initial Notice of Class Certification in May 2021 may revoke their prior opt out, remain in the Property Class, and be eligible to participate in the Property Settlement so long as their revocation notice is received by Class Counsel within thirty (30) days after the Notice Date. Class Counsel shall send those former

Property Class Members who opted out a copy of the Notice of Class Settlement accompanied by an Opt-Out Revocation Form along with the Claim Form for claiming benefits from the Settlement if they revoke their prior opt out.

30.     Any Property Class Member who opts out before the Opt-Out Deadline may revoke that opt out within twenty (20) days after the Opt-Out Deadline using a form obtained from the Administrator or from the Class Settlement website listed in the Class Settlement Notice, provided, however, that Class Counsel shall have discretion to extend this deadline on a case-by-case basis.

31.     As soon as practicable and no later than twenty-four (24) days before the Final Approval Hearing, Class Counsel shall furnish Saint-Gobain with a final list of all timely and valid opt-out requests that have been submitted and not revoked.

32.     Class Members may file objections to the Settlement Agreement within thirty (30) days of the Notice Date ("Objection Deadline") and/or appear at the Final Approval Hearing personally or by counsel, provided that an appearance is served and filed along with a timely objection. Any objection must include: (i) the full name, current address, and telephone number of the objector; (ii) a statement of the facts that make the objector a class member; (iii) a statement describing all of the objector's challenges to the Settlement and the reasons for those challenges; (iv) all of the papers and evidence the objector intends to submit in support of those challenges; (v) a statement of whether the objector intends to appear at the Final Approval Hearing; (vi) the signature of the objector; (vii) a statement that the objector is willing to be deposed, upon request, on a mutually acceptable date at least ten (10) days before the Final Approval Hearing; (viii) the caption of each case in which the objector or counsel representing the objector have objected to a class action settlement within the preceding five years and a copy of all orders related to or ruling

11

upon those objections; and (ix) all agreements that relate to the Objection, whether written or verbal, between or among the objector, counsel for the objector, and/or any other person.

33.     Plaintiffs and Saint-Gobain shall have the right, but not the obligation, to respond to any timely-filed objection no later than seven (7) days prior to the Final Approval Hearing by filing the written response with the Court and serving a copy, by hand or overnight delivery, to the objecting class member (or his or her counsel), and by email to counsel for Plaintiffs and/or Saint-Gobain.

34.     A Class Member who does not submit a timely and valid Objection shall have waived, and shall be foreclosed from making, any challenge to this Settlement in the action or any other proceeding.

35.     Class Members who object in the manner provided herein remain Class Members and will be bound by the Settlement Agreement and Final Approval Order if the Settlement Agreement is finally approved following the Final Approval Hearing.

36.     Class Counsel and/or Saint-Gobain may conduct limited discovery on any objector or objector's counsel consistent with the Federal Rules of Civil Procedure.

37.     Class Counsel shall file their motion for attorneys' fees, costs, and expenses no later than twenty-one (21) days prior to the Objection Deadline. Any Class Member who wishes to file an objection to the Class Counsels' fee motion shall file such objection in writing prior to the Objection Deadline. Any such objection must be filed with the Clerk of the Court and served on counsel for the Parties, as set out in the Class Settlement Notice, and shall set forth the same information as required in paragraph 32, above.

**PAYMENTS**

38.     The Parties have submitted a proposed order establishing a Qualified Settlement

Fund to be administered by KCC. The Qualified Settlement Fund will receive payments, including certain initial payments prior to the Final Approval of the Settlement for the benefit of the Class Members. The Court has determined that establishing the Qualified Settlement now will facilitate the Settlement and expedite the Settlement payments to establish the Qualified Settlement Fund within the meaning of United States Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1, and has approved the document.

39.     Within twenty (20) days of Preliminary Approval, Saint-Gobain shall pay, for the benefit of the members of the Exposure Class, to the Escrow Account and/or Qualified Settlement Fund the sum of ONE MILLION, SIX HUNDRED THOUSAND DOLLARS ($1,600,000) to initially fund the Medical Monitoring Program.

40.     Within twenty (20) days of Preliminary Approval, Saint-Gobain shall pay, for the benefit of the members of the Property Class, to the Escrow Account and/or Qualified Settlement Fund, a total of TWENTY-SIX MILLION, TWO HUNDRED THOUSAND DOLLARS ($26,200,000).

## MOTION FOR FINAL APPROVAL

41.     Plaintiffs shall file their Motion for Final Approval of the Settlement, no later than twenty-one (21) days prior to the Final Approval Hearing. The Motion shall also include any motion for Incentive Awards to be awarded to Class Representatives for their service to the Classes during this litigation.

## FINAL APPROVAL HEARING

42.     The Court will hold a Final Approval Hearing on April 18, 2022, at 10:00 a.m., at the U.S. District Court, 151 West Street, Main Courtroom in Rutland, Vermont, or by videoconference or teleconference if determined by separate order, to assist the Court in

determining whether to grant Final Approval to the Settlement, enter the Final Approval Order and Judgment, and grant any motions for Class Counsel fees and expenses and Incentive Awards for Class Representatives.

## OTHER PROVISIONS

43.     Class Counsel and counsel for Saint-Gobain are authorized to take, without further approval of the Court, all necessary and appropriate steps to implement the Settlement according to its terms, including implementing the Notice Plan.

44.     Pending determination whether the Settlement Agreement should be granted Final Approval, further proceedings are stayed in this Action, other than proceedings necessary to carry out or enforce the terms of the Settlement.

45.     Saint-Gobain shall serve the appropriate government officials with the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, within the time provided by statute, and will provide a copy of the notice to Class Counsel after the notice is sent.

46.     Without further orders of the Court, the Parties may agree to make non-material modifications to the Settlement Agreement (including the exhibits thereto) in implementing the Settlement that are not inconsistent with this Preliminary Approval Order, including making minor changes to the Settlement Agreement, to the form or content of the Notice Form, or to any other exhibits that the Parties jointly agree in writing are reasonable or necessary.

47.     The Court shall retain jurisdiction over the Settlement Agreement and shall consider all further matters arising out of or connected with the Settlement.

## SUMMARY OF DEADLINES

48.     In summary, the Court sets the following deadlines:

14

| EVENT | DEADLINE |
|---|---|
| Class Counsel, with KCC, to mail Class Settlement Notice and implement Notice Plan (Notice Date) | (within 15 days from the date of this Order) |
| Saint-Gobain to pay $1,600,000 into the Escrow Account or Qualified Settlement Fund established by KCC for the Exposure Class | (20 days from the date of this Order) |
| Saint-Gobain to pay $26,200,000 into the Escrow Account or Qualified Settlement Fund established by KCC for the Property Class | (20 days from the date of this Order) |
| Class Counsel to file Motion for Approval of Attorney Fees and Expenses | (21 days before Objection Deadline) |
| Opt-Out Deadline and revocation of prior opt out | (30 days from Notice Date) |
| Objection Deadline | (30 days from Notice Date) |
| Deadline for new Opt Outs to revoke opt out | (20 days from Opt-Out Deadline) |
| Class Counsel to provide final list of Opt Outs to Saint-Gobain | (24 days before Final Approval Hearing) |
| Class Counsel to file Motion for Final Approval | (21 days before Final Approval Hearing) |
| Final Approval Hearing | (no earlier than 100 days from the date of this Order) |

Dated at Burlington, in the District of Vermont, this 17th day of December, 2021.

Geoffrey W. Crawford, Chief Judge
U.S. District Court