February 2, 2022

| | | |
|---|---|---|
| James F. Conway, III<br>12 Sandalwood Dr.<br>South Burlington, VT 05403 | Wendy I. Conway<br>32 Bay Rd.<br>Colchester, VT 05446 | U.S. DISTRICT COURT<br>DISTRICT OF VERMONT<br>FILED<br>2/7/2022<br>BY  /s/ law<br>DEPUTY CLERK |

To:

Hon. Geoffrey Crawford
c/o Jeffrey S. Eaton, Clerk of Court
United States District Court
District of Vermont
U.S. District Court
11 Elmwood Avenue
Burlington, VT 05401

Re:   *Sullivan v. Saint Gobain*, Docket No. 5:16-cv-125
        Objection

Dear Judge Crawford,

We received the Class Action Settlement Notice in the above-captioned litigation. In accord with Section 18 of that Settlement Notice, we write to object to the allocation method proposed by Class Counsel because it is not fair to class members, like us, who sold their homes at significant loss as a result of the PFOA contamination, as compared to class members that held their property.

Please note that we commend the work of Class Counsel, and the result Class Counsel achieved for the Class. We do not object to the overall settlement, or to proposed payment to Class Counsel. Rather, we would like to communicate our gratitude for those efforts.

In accord with the instructions at Section 18 of the Settlement Notice, we state as follows:

1.  Full name, address and telephone number:

    James F. Conway, III[1]
    12 Sandalwood Dr.
    South Burlington, VT 05403
    802.XXX.XXXX (can be obtained from Class Counsel)

    Wendy I. Conway
    32 Bay Road
    Colchester, VT 05446
    802.XXX.XXXX (can be obtained from Class Counsel)

---

[1]   Vermont licensed attorney.

2.      Statement of facts indicating class status.

We owned the property at 548 Vail Road, Bennington, Vermont, 05403 (the "Property") from May 2014 to April 2020. We lived at the Property from May 2014 to July/August 2016. The Property had a well that was contaminated by PFOA. The contamination was greater than 20 parts per trillion.

3.      Objections and reasons.

We object to the allocation of settlement funds within the Property Class. We understand that the proposed allocation method is based on March 2016 property value on the Grand List, and then an application of various factors. We object because the factors do not account for properties sold at a reduced value as a result of contamination. This measure of loss is ascertainable and distinct from the measure of loss for those Property Class members that held contaminated property. The difference is that the loss on sale is realized.

Here's how we realized a greater loss that we submit should be one of the factors considered in allocation:

After Wendy separated from the United States Air Force in 2013 and after almost 7 years overseas, we returned to the States with three small children. We moved to Bennington, Vermont and bought the Property in April 2014 for $510,000. The bank appraised the Property at approximately $515,000. We obtained a loan through the VA to finance the purchase.

Sometime around spring of 2015, Wendy was offered a job in Burlington, VT. Based on some improvements we made to the Property and with advice of a local realtor, we put the Property on the market for $540,000 and planned to move to Burlington, VT. Wendy's new employer required her to start in November 2015 and provided her with temporary living quarters in Burlington while we tried to sell the house. Soon thereafter, information about water and soil contamination from PFOA became known. We finished the 2015-2016 school year in Bennington with no offers on the house, and then all moved to Burlington in the summer of 2016. Around that time, the State tested our well and determined that the well was contaminated with PFOA. Our recollection is that the PFOA contamination was around 50 ppt.

Over the next several years, we repeatedly dropped the asking price for the Property and made concerted efforts to rent the Property. We were able to find renters for some of the time, but renting the contaminated Property covered only a portion of our carrying cost, and only for a fraction of the time. After almost four years on the market, we finally got our first offer – for $300,000 – in the summer of 2019. We accepted because the ongoing carrying cost was unsustainable. Because we were going to need to take out a loan to be able to afford the sale of the Property, we applied for a short sale through USAA and the VA. The process took too long, however, and we lost the sale in October 2019.

We reduced the asking price to the VA-approved amount and sold the Property in April 2020 for $320,000 through the VA short sale program. As a result of the short sale, we lost the right to

use the VA loan benefit and have decreased credit ratings and increased cost of borrowing as a result. There have been other consequences as well.

In sum, we bought for $510,000 in 2014 and sold for $320,000 in 2020. Our carrying cost from the inability to sell the Property between March 2016 and April 2020, and substantially reduced ability to rent the Property, was in the range of $50,000/year in mortgage payments, taxes, insurance and maintenance. We were able to offset this amount for some portion of the time by renting, but that period of time was less than one year. We also had an offset from the VA short sale, mentioned above.

We understand that there are other Class Members who had similar losses resulting from sales at diminished values due to the PFOA contamination.

We propose that losses from the sale of contaminated properties be a factor in the allocation. For example, at Section 9 of the Settlement Notice, there is a list of calculations. We suggest a new paragraph (f), for properties with carrying costs and then sold with aggregate losses greater than $100,000, with a settlement allocation calculated as, "Payment = (property value x 0.15) + up to $50,000 and allocated amount not to exceed demonstrated losses offset by any ascertainable gains." Alternatively, we propose that Property Class members that can demonstrate losses as a result of sale of contaminated properties at diminished values be allowed to take a first priority position in any unallocated residual settlement funds following the payment of claims to Property Class members, up to the amount of demonstrated losses offset by any ascertainable gains.

4. Copies of evidence.

I believe Class Counsel has information sufficient to support the objection. I am willing to provide properly redacted information as requested if Class Counsel does not agree or if the Court would like documentation of losses.

5. Appearance at Final Settlement Hearing.

I am willing to appear at the Final Settlement Hearing but will be out of state and would need to appear by videoconference if that would be acceptable to the Court.

6. Deposition.

I am willing to have my deposition taken, upon request, on a mutually acceptable date.

7. List of other objections.

None.

8. Agreements related to objection.

None.

9. Signature.

Respectfully submitted for Wendy Conway and James Conway by:

*/s/ James F. Conway, III*

James F. Conway, III