## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

| | |
|---|---|
| JAMES D. SULLIVAN and LESLIE ADDISON, WILLIAM S. SUMNER, JR., RONALD S. HAUSTHOR, GORDON GARRISON, TED and LINDA CRAWFORD, and BILLY J. KNIGHT, Individually and on behalf of Class of persons similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION,<br><br>         Saint-Gobain. | Civil Action<br><br>Docket No.  5:16-cv-00125-gwc |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This is an environmental contamination case arising from the Perfluorooctanoic Acid ("PFOA") contamination in and around Bennington, Vermont. Plaintiffs James D. Sullivan, Leslie Addison, Ronald S. Hausthor, Gordon Garrison, Ted Crawford, Linda Crawford, and Billy J. Knight, on behalf of themselves and others similarly situated, brought this action against Defendant Saint-Gobain Performance Plastics Corporation alleging that Saint-Gobain is liable for the PFOA contamination of their properties under various tort and statutory causes of action. Plaintiffs consist of two certified classes: (1) a Property Class, an issues class for the purpose of determining liability under Fed. R. Civ. P. 23(c)(4), consisting of owners of residential real property in the Zone of Concern seeking compensation for property damages caused by the PFOA contamination; and (2) an Exposure Class, an injunctive relief class certified under Fed. R. Civ. P. 23(b)(2), consisting of residents of the Zone of Concern who drank PFOA-contaminated water and have elevated PFOA levels in their blood and who are seeking medical monitoring.

Plaintiffs have reached a Class Settlement Agreement with Defendant Saint-Gobain that is fair, adequate and reasonable, and this Court has preliminarily approved the Settlement under Federal Rule of Civil Procedure 23(e). The Settlement Agreement requires Saint-Gobain to fund a 15-year Court-supervised Medical Monitoring Program for the Exposure Class members to provide diagnostic monitoring for early detection of certain diseases. The Settlement Agreement also requires Saint-Gobain to pay $26,200,000 into a Qualified Settlement Fund to be allocated among Property Class Members. The Settlement Agreement also contains agreements on upper limits for attorney fees and litigation expense reimbursement for Class Counsel, subject to Court approval.

Having provided notice to Class Members, as more fully set forth in Section II, *infra,* Plaintiffs now move for final approval of the Settlement in advance of the April 18, 2022, Final Approval Hearing. As set forth herein, the Settlement meets all standards of Rule 23(e) of the Federal Rules of Civil Procedure and other applicable case law. Therefore, Plaintiffs respectfully request that the Court issue an Order Granting Final Approval of the Settlement. A proposed Final Approval Order is attached hereto as Exhibit 7.

## BACKGROUND

Plaintiffs filed this lawsuit against Saint-Gobain in 2016 alleging that, for over 20 years, PFOA was released from two facilities operated by Saint-Gobain and/or its predecessor in the Town of Bennington and the Village of North Bennington, Vermont, contaminating Plaintiffs' properties and blood. Plaintiffs allege that Saint-Gobain is liable for the PFOA contamination of their properties and blood under various tort and statutory causes of action, including negligence, nuisance, and trespass. Plaintiffs seek to obtain monetary compensation for their property damages, including diminution in value and loss of use and enjoyment of their properties,

annoyance, upset and inconvenience, and out-of-pocket expenses. Plaintiffs also seek damages and equitable relief for the unreasonable harm to groundwater caused by Saint-Gobain in violation of the Vermont Groundwater Protection Act, 10 V.S.A. § 1410. Plaintiffs further seek injunctive relief, including a medical monitoring program to monitor their health and diagnose at an early stage any ailments associated with PFOA exposure.

Following a combined hearing on *Daubert* and class certification, this Court certified two Classes in 2019. [Doc. 303 (8/23/19)]. The Exposure Class was certified under Rule 23(b)(2) consisting of all persons who, as of August 23, 2019: (1) have resided within the Zone of Concern;[1] (2) ingested water with PFOA within the Zone of Concern; (3) and experienced an accumulation of PFOA in their bodies as demonstrated by blood serum tests disclosing a PFOA blood level above 2.1 parts per billion ("ppb"). [Doc. 445 at 6 (May 10, 2021 Class Notice)]. The Property Class was certified for purposes of liability only under Rule 23(c)(4) and consists of natural persons who owned residential real property in the Zone of Concern on March 14, 2016, as well as natural persons who purchased residential real property after March 14, 2016 that was subsequently added to the Zone of Concern. *Id.*

On December 17, 2021, the Court granted preliminary approval of the proposed Settlement under Rule 23(e) of the Federal Rules of Civil Procedure. [Doc. 470 ("Preliminary Approval Order)"]. In the Preliminary Approval Order, the Court also, *inter alia*: approved the Notice Plan and Notice; appointed Mr. John Schraven as Special Master to review the fairness of the allocation of compensation to the Property Class; appointed KCC Class Action Services, LLC ("KCC") as the Property Settlement Administrator; and appointed Mr. Edward Gentle as Administrator of the Court-Supervised Medical Monitoring Program. *Id.* In accordance with the Preliminary Approval

---

[1] The Zone of Concern is defined in the attached Settlement Agreement, ¶ II.12, and is shown on the map previously filed in this matter in support of preliminary approval of the proposed Settlement. [Doc. 461-3].

Order, Class Counsel has, with the assistance of KCC, completed the provision of notice of the Settlement to Class Members in the form approved by the Court, and KCC has begun accepting claim forms submitted by Class Members.

## SUMMARY OF THE SETTLEMENT AGREEMENT

The Settlement Agreement, attached as Exhibit 1, establishes a Medical Monitoring Program for the Exposure Class and provides monetary compensation to the Property Class. The Settlement Agreement and the exhibits thereto provide all of the details of the Settlement terms, while the following provides a brief summary.

### A. Exposure Class Settlement

The Exposure Class Settlement establishes a 15-year Court-Supervised Medical Monitoring Program, which Saint-Gobain agrees to fund up to six million dollars ($6,000,000) based on an Evergreen funding model with a right of reversion of any unexpended payments after 15 years. [Ex. 1, Section III]. The Program will be conducted by physicians and staff at the Occupational Health Clinic of the Southwestern Vermont Medical Center ("SVMC") located in Bennington, Vermont. The Program is designed to provide participating Exposure Class Members with targeted diagnostic monitoring that does not duplicate their current primary care for early detection of certain diseases that Plaintiffs allege Exposure Class Members are at a higher risk of developing due to their PFOA exposure. The Program shall provide incentive payments of one hundred dollars ($100) to participating Exposure Class members, to be paid by Class Counsel and not from any Medical Monitoring Program Payment by Saint-Gobain.

The Program will be subject to the Court's continuing jurisdiction and will be administered by a Court-appointed Administrator. The Court-appointed Administrator will be responsible for establishing procedures for eligible Exposure Class Members to register for the Program and for

the program budgeting, accounting, and reporting.

The level of funding for the Medical Monitoring Program was negotiated by the Parties prior to any discussion of attorney fees [Declaration of Class Counsel, Ex. 2 at ¶ 16]. Saint-Gobain agrees not to oppose an application by Class Counsel for an award of attorneys' fees and costs up to one million, nine hundred and fifty thousand dollars ($1,950,000) with respect to the Exposure Class Settlement, in addition to the Medical Monitoring Program Payments. The costs expended by Class Counsel for experts and other medical monitoring related expenses were approximately $450,000, so if the Court ultimately approves this award of fees and costs, the fees would be approximately 19% of the gross Medical Monitoring settlement.

## B.  Property Class Settlement

Saint-Gobain will pay a total of twenty-six million, two hundred thousand dollars ($26,200,000) to a Qualified Settlement Fund to resolve all claims of the Property Class. [Ex. 1, Section IV]. A Court-appointed Administrator will administer the claims process and the allocation of the Settlement Payment to Property Class Members. As discussed in more detail herein, Class Counsel has proposed a method for allocation of the share of the Total Property Settlement Payment to Property Class Members, after deduction of Court-approved attorney fees, litigation expense reimbursements and incentive awards for Class Representatives. The proposed allocation method is based upon the value of each property before March 14, 2016, and utilizes different percentages of that value for compensation depending upon the category of the property with regard to its water supply and the level of PFOA contamination of groundwater on the property. John Schraven, the Court-appointed Special Master, has reviewed the allocation of the Settlement Payment to the Property Class Members and found that the proposal treats class members equitably relative to each other. [Declaration of John A. Schraven, Ex. 3 at ¶¶ 16-17]. Although Saint-Gobain recognizes the

need to consider individual circumstances in determining an allocation, it takes no position on the allocation method proposed by Class Counsel or its method of application to Property Class Members. In addition, KCC, as Court-appointed Administrator, will administer the claims process.

The Parties negotiated the Property Class compensation prior to negotiating the attorney fee. [Ex. 2 at ¶ 16]. Saint-Gobain agrees not to oppose an application by Class Counsel for an award of attorneys' fees up to five million, one hundred thousand dollars ($5,100,000), to be paid from the Total Property Settlement Payment. If the Court approves this fee, it would be 19.4 percent of the Total Property Settlement Payment. In addition, Saint-Gobain agrees not to oppose an application for reimbursement of Class Counsel's costs up to five hundred ninety thousand dollars ($590,000), to be paid from the Total Property Settlement Payment for the Property Class.

In exchange for the benefits provided under the Settlement Agreement, Plaintiffs agree to release Saint-Gobain from any and all past, present or future claims and causes of action, including without limitation causes of action and/or relief created or enacted in the future that were or could have been asserted in this action, arising out of or related to the subject matter of this case.  [Ex. 1, ¶ V.8.b]. The release does not, however, include any future personal injury claims for any class member or any other person arising out of alleged exposure to chemicals from Saint-Gobain's Facilities that are the subject of this action. Nor does the release include any of Saint-Gobain's duties and obligations contained in the Consent Order and Final Judgment Order of May 23, 2019, entered in the case of *State of Vermont, Agency of Natural Resources v. Saint-Gobain Performance Plastics Corporation*, Vermont Superior Court, Bennington Unit, No. 9Z-419, pursuant to which Saint-Gobain has agreed to provide funding for extension of municipal waterlines to properties within the Zone of Concern and has agreed to provide other properties with water filters or new wells.

## ARGUMENT

Rule 23(e) establishes the standards for the Court's approval of a class action settlement. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(2), as amended in 2018, a court may grant final approval of a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Rosenfeld v. Lenich*, No. 18CV6720NGGPK, 2021 WL 508339, at *3 (E.D.N.Y. Feb. 11, 2021); *see also* Fed. R. Civ. P. 23(e)(2).

Courts in the Second Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ("2018 Advisory Note") (stating that the four new Rule 23 factors were intended to supplement rather than displace the *Grinnell* factors). Under *Grinnell*, courts examine: (1) the expense, complexity, and likely duration of the litigation; (2) the class's reaction to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing damages; (5) the risks of establishing liability; (6) the risks of maintaining the class throughout the litigation; (7) the defendant's ability to withstand greater judgment; and (8) the range of reasonableness of the settlement amount. *Grinnell*, 495 F.2d at 463; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). Courts should also be mindful of the "strong judicial policy in

favor of settlements particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009).

## I.   THE COURT SHOULD APPROVE THE SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE UNDER RULE 23(E)(2).

A. Class Counsel and the Class Representatives have adequately represented the Classes.

Rule 23(e)(2)(A) requires the Court to find that "the class representatives and class counsel have adequately represented the class" before approving a settlement. For class representatives to be adequate, they must have "an interest in vigorously pursuing the claims of the class" and must have "no interests antagonistic to the interests of other class members." *Rosenfeld*, 2021 WL 508339, at *4 (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Here, there is no suggestion that the Class Representatives' interests are antagonistic to the interests of the Class Members. As this Court previously found [Doc. 303 at 16]:

> "All property owners have the same interest in establishing liability for potential property losses whether they purse these claims or not," and "[a]ll persons demonstrating exposure to PFOA have the same interest in obtaining access to medical testing, whether they choose to make use of it or not. These are common interests which are free of potential conflict."

Nor is there any indication that a potential conflict has arisen since class certification. Indeed, as this Court recognized, "[a]s the case to be tried becomes more narrow and focused, the prospect of a conflict within the class diminishes." *Id.* This continues to be true.

To determine the adequacy of Class Counsel's representation, courts look to whether the attorneys are qualified, experienced and able to conduct the litigation." *Id.* (*quoting Cordes & Co. Fin. Servs. v. AG. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). This Court has previously found that Class Counsel, who consist of "a highly experienced consortium of national environmental lawyers, Vermont-based environmental lawyers, and a local law firm from Bennington . . . have performed at a very high level before this court in this case." [Doc. 303 at

18]. The adequacy and quality of Class Counsel's representation is further reflected in the results they have obtained so far—obtaining class certification and prevailing on dispositive motions, marshalling expert evidence, readying this case for trial, and ultimately obtaining a multi-million dollar settlement following protracted settlement negotiations, which further evinces Class Counsel's vigorous representation of Plaintiffs.

      B.  <u>The Settlement was negotiated at arm's length.</u>

      Rule 23(e)(2) requires procedural fairness and consideration whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(B). If a class "[s]ettlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato*, 236 F.3d at 78. Moreover, "a mediator's involvement in settlement negations can help demonstrate their fairness*." In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 35 (E.D. N.Y. 2019).

      Here, the parties have engaged in protracted settlement negotiations over the course of one and one-half years, which was facilitated by an experienced mediator, Mr. John Schraven, who has confirmed that the Settlement Agreement was a product of extensive and informed negotiations conducted at arm's length by sophisticated and capable counsel. [Ex. 3, ¶¶ 1-5]; [Ex. 2, ¶¶ 1-17]. Furthermore, for each part of the Settlement, the Parties negotiated the amount of the Settlement prior to and separate from the "Clear Sailing" agreement, wherein Defendant has agreed not to oppose an amount to be requested for attorney fees and costs. [Ex. 2, ¶ 16]. *See, e.g., Pearlman v.*

*Cablevision Sys. Corp.*, No. CV104992JSAKT, 2019 WL 3974358, at \*5 (E.D.N.Y. Aug. 20, 2019). The Settlement Agreement is therefore entitled to a presumption of fairness under Rule 23(e)(2)(B).

C. <u>The Settlement provides not only adequate, but significant relief to the Classes.</u>

Rule 23(e)(2)(C) also requires substantive fairness and an examination whether "the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3)."

**i. The costs, risks, and delay of trial and appeal**

This factor "subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Rosenfeld*, 2021 WL 508339, at \*5 (*quoting In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36).

The complexity of this environmental contamination class action is beyond dispute. [Ex. 2, ¶¶ 1-11]. This case involves two different classes totaling over 8,000 Class members and 2200 properties, and, as is typical of environmental contamination cases, has presented numerous complex factual and legal questions requiring highly specialized, technical expertise such as, for example, proof of liability, causation, and damages for groundwater pollution. Likewise, the medical monitoring claim presents complex issues of toxicology, epidemiology, and clinical medicine, also requiring expert evidence. Plaintiffs and Defendant have retained numerous experts, from hydrogeologists and air modeling experts to real estate appraisers and have commissioned several voluminous expert reports.

Although discovery is largely complete, continuing to litigate this case through trial and possibly appeal will entail significant costs. Plaintiff's real estate appraisal expert, Michael Bailey, still needs to be deposed. The trial, itself, would be lengthy, estimated by the Parties at 4-6 weeks, with expensive expert witness travel, preparation, and trial testimony, in addition to attorney time and law firm staff time. Plaintiffs will therefore incur considerable costs if they were to continue litigating this case through trial, which will not occur until the beginning of 2022, at the earliest.

In addition to costs, litigation also carries significant risk. [Ex. 2, ¶¶ 10-11]. This case has already been pending for over five years. Saint-Gobain has not conceded liability, presenting a real risk of appeal in the event of a jury verdict in Plaintiffs' favor, which would further delay the resolution of this case. Second, Defendant is likely to appeal decisions by the Court, such as class certification, and the decision finding medical monitoring as injunctive relief for toxic chemical exposure under Vermont law.  Moreover, assuming a jury verdict finding liability and damages for the Class Representatives, proof of damages for additional Property Class members could require individual trials, which would involve even greater time, cost and risk as compared to the overall Class Settlement. There is also a risk that Plaintiffs would be unable to maintain the Property Class should the Court allow Saint-Gobain to extend individual, unnegotiated settlement offers to Property Class Members, as this could have the effect of reducing the size of the Property Class to such an extent that it could no longer satisfy the numerosity requirement for a class action.

Accordingly, consideration of the costs, risks and delay of trial and appeal supports a finding that the proposed settlement is adequate. *See, e.g., Rosenfeld,* 2021 WL 508339, at *5 ("Courts favor settlement when it 'results in substantial and tangible present recovery, without the attendant risk and delay of trial'.") (*quoting In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36).

11

### ii. The effectiveness of the proposed method of distributing relief

Rule 23(e)(2) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 amendment.

Plaintiffs propose that both the Medical Monitoring Program and the Property Class Settlement Fund be administered by Court-appointed Administrators to ensure that the eligible Class Members obtain effective relief. The Medical Monitoring Program will be conducted at the Occupational Health Clinic at SVMC and will be funded for the entirety of the program's 15-year duration under an Evergreen Funding Model, as described in the Settlement Agreement. [*See also* Ex. 2, ¶¶ 23-27]. In addition to budgeting, reporting and accounting, the Program Administrator will establish procedures for eligible Exposure Class Members to demonstrate their eligibility through blood test results and proof of residency and drinking water consumption in the Zone of Concern.

With respect to the Property Class Settlement, a Claim Form has been provided (and will continue to be made available) to Class Members, which contains instructions on how to verify eligibility and claim compensation based on their ownership of residential property in the Zone of Concern. Payments will be allocated among Property Class Members based on the value of each property before March 14, 2016, and will utilize different percentages of that value for compensation depending upon the category of the property with regard to its water supply and the level of PFOA contamination of groundwater on the property, as discussed in more detail in Section I.D, *infra*, and the Settlement Agreement. [Ex. 1, ¶ IV.7; *see also* Ex. 2, ¶¶ 18-22]. *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 40 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (quotation omitted); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) ("a plan of allocation need not be perfect") (collecting cases). Any allocated Property Class funds not claimed by Property Class Members within the Claim Period shall be allocated to previously approved claimants on a *pro rata* basis.

Pursuant to the Preliminary Approval Order, [Doc. 470, ¶¶ 39-40], Saint-Gobain has made initial payments in the amount of $27,800,00 to the Court-approved Qualified Settlement Fund. [Declaration of Gio Santiago, Ex. 4 at ¶ 10]. Saint-Gobain has also provided financial assurances, in the form of a Litigation Settlement Bond, that funding will be available for the 15-year duration of the Medical Monitoring Program. *See* [Email from Michael Fazio to Jo LaMarche, dated 2/22/2022]. Subject to Court approval of this Bond, these steps will further ensure that all eligible Class Members receive effective relief.

### iii. The terms of any proposed award of attorneys' fees

Rule 23(e)(2) requires the Court to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P 23(e)(2)(C)(iii). Class Counsel seeks an award of attorneys' fees and costs up to $1,950,000[2] for the Exposure Class Settlement, the fee portion of which is 19% of the gross Exposure Class Settlement amount, which is not opposed by Saint-Gobain. That fee will be in addition to the Medical Monitoring Program Payments and will be paid

---

[2] As set out in Plaintiffs' Motion for an Award of Attorney's Fees and Expenses to Class Counsel [Doc. 474], Class Counsel seek a fee in the amount of $1,500,000 and reimbursement of expenses in the amount of $445,107.33 for the Exposure Class Settlement.

on or before the Effective Date, thirty-five (35) days after Final Approval of the Settlement, at which time the Court-Supervised Medical Monitoring Program will be established.

With respect to the Property Class Settlement, Class Counsel seeks an award of attorneys' fees of $5,100,000 to be paid from the Total Property Settlement Payment, which is 19.4% of the Total Property Settlement Payment of $26,200,000. Class Counsel also seeks reimbursement of $589,998.96 in costs to be paid from the Total Property Settlement Payment. Saint-Gobain does not oppose Class Counsel's application for an award of attorneys' fees and costs from the Property Class Settlement. If this Court approves these fees and costs, payment will be made to Class Counsel at the same time as the Property Settlement payment is made available for distribution to the Property Class (the Effective Date).

Courts in the Second Circuit routinely award fees "in the 20%-50% range in class actions," as Plaintiffs detailed in their Memorandum in response to this Court's request for briefing on the issue of attorneys' fees. [Doc. 406 at 16 (collecting cases)]. And this Court has already found that Class Counsel's efforts would warrant a higher fee percentage of one-third (1/3) of the total value of Saint-Gobain's proposed direct Property Class settlement offers, based on a review of the *Goldberger* reasonableness factors, including the time and labor expended by Class Counsel, the size and complexity of this case, the risks involved in the litigation, the high quality of the representation, public policy considerations, and the range of fee awards in other class actions within the Second Circuit. [Doc. 446 at 6-9]. Further, this Court found that "[t]he repayment of reasonable litigation costs to counsel is a conventional part of a fee award" and that "[a]ssessing an additional cost component against each settled claim is the only practical way to recover the litigation expenses." *Id*. at 9.

14

In accordance with the Court's Preliminary Approval Order [Doc. 470 at ¶ 37], Plaintiffs filed a Motion for an Award of Attorney's Fees and Expenses to Class Counsel, along with supporting declarations and documentation, on January 12, 2022. [Docs. 474 to 474-7]. Class Counsels' fee request represents approximately 19% of the total benefits recovered for the two Classes in the Settlement, well below the 25% benchmark applied by Courts in the Second Circuit, and further is amply supported by the *Goldberger* factors and the lodestar "cross check." Likewise, the expenses of litigation are reasonable given the complexity of this matter and the length and nature of discovery conducted. Finally, as discussed above, the amount of these awards of fees and expenses are within the maximum amount which Saint-Gobain has agreed to not oppose in the Settlement Agreement. [Ex. 1, ¶¶ III.11, IV.4].

Accordingly, Plaintiffs respectfully request that the Court award Class Counsel attorney's fees and litigation expenses as set out in Plaintiffs' Motion for an Award of Attorney's Fees and Expenses to Class Counsel, be paid from the Class Settlement on or before the Effective Date.

### iv. Agreements required to be identified under Rule 23(e)(3)

Rule 23(e)(2) requires the Court to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv). The parties have entered one such agreement that provides that Saint-Gobain shall have the right to terminate the Property Class Settlement Agreement in the event that less than a certain minimum percentage of Property Class Members participate in the Settlement, as determined by the number of properties for which Opt Outs are submitted compared to the total number of properties in the Property Class. [Ex. 1, ¶ D.22.b]. Such provisions are commonly found among class settlements and do not weigh against final approval. *See, e.g., Mikhlin v. Oasmia Pharm. AB,* No. 19CV4349NGGRER, 2021 WL 1259559, at *8 (E.D.N.Y. Jan. 6, 2021) (finding

that such agreements "are not incompatible with class members' receipt of adequate relief");
*Christine Asia Co. v. Yun Ma, No.* 115MD02631CMSDA, 2019 WL 5257534, at \*15 (S.D.N.Y.
Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has
no negative impact on the fairness of the Settlement.").

D.  <u>The Settlement treats Class Members equitably relative to each other.</u>

After an adequacy assessment, Rule 23(e)(2) requires the Court to consider whether "the
proposal treats class members equitably relative to each other." Fed. R. Civ. P 23(e)(2)(D). This
may include consideration of "whether the apportionment of relief among class members takes
appropriate account of differences among their claims, and whether the scope of the release may
affect class members in different ways that bear on the apportionment of relief." 2018 Advisory
Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

With respect to the Exposure Class Settlement, eligibility for the Medical Monitoring
program is the same for all Exposure Class Members, and all Exposure Class Members who
demonstrate eligibility for the program will receive targeted diagnostic monitoring—through
annual survey questionnaires and specified clinical testing—that does not duplicate their primary
care, for early detection of certain diseases. The Exposure Class Settlement thus treats all Exposure
Class Members equitably relative to each other.

Likewise, the Property Class Settlement treats the Property Class Members equitably
relative to each other. As set forth in more detail in Plaintiffs' Proposed Method for Allocating
Property Settlement and the accompanying detailed matrix previously filed (under seal) with the
Court, [Docs. 462, 462-1],[3] Class Counsel have proposed an allocation method based upon the

---

[3] In addition to these filings, Class Counsel has also filed a written response to questions from the Court regarding the proposed allocation method [Doc. 466] and discussed the allocation method in more detail with the Court, Mr. Schraven and defense counsel on December 8, 2021, in a Chambers Status Conference.

value of each property before March 14, 2016 and which utilizes different percentages of that value for compensation depending upon the category of the property with regard to its water supply and the level of PFOA contamination of groundwater on the property. [Doc. 462]; [Ex. 2, ¶¶ 19-20]. The allocation will be by individual property, and one payment will be made for each eligible property and will be paid to the owners of the property. The criteria to be used to equitably allocate different amounts to different categories of properties in the Property Class listed from lowest compensation to highest compensation are as follows [*Id.*]:

a. Property was connected to a municipal water supply prior to March 2016 and continues to be connected;

b. Property is vacant and has neither a well nor spring and has not been connected to municipal water supply;

c. Property relied on one or more wells or springs for domestic water supply prior to March 2016, determined to contain less than 20 parts per trillion ("ppt") PFOA, and a municipal water supply has been or will be provided;

d. Property relied on one or more wells or springs for domestic water supply prior to March 2016, determined to contain greater than 20 ppt PFOA, and a municipal water supply has been or will be provided; and

e. Property relied upon one or more wells or springs for domestic water supply prior to March 2016, and the property has been determined unfeasible for connection to a municipal water supply.

Additionally, Property Class Members who resided on their property as of March 2016 will receive an additional payment for upset and inconvenience based upon the category of their property as set out in paragraphs a. – e. Property Class Members in categories set forth in paragraphs c. – d. will receive a payment for their added costs of paying for municipal water as compared to the costs of a well. [Doc. 462]; [Ex. 2, ¶ 21].

Basing recovery on the type of each property's water supply and level of PFOA contamination takes appropriate account of the relevant differences among Property Class

Members and ensures that Property Class Members are treated equitably relative to each other. 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D) (under this factor, consideration "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims"); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. at 47 (same). Additionally, any funds that are not paid out will be allocated to previously verified Property Class claimants on a *pro rata* basis, which further treats Property Class Members equitably. *See, e.g., id*. Based on the foregoing, and in addition to his recommendation at the preliminary approval stage [Doc. 470, ¶ 17], Mr. Schraven has, for purposes of final approval, provided further assurances to the Court in the form of his opinion as Special Master that the Property Class Settlement treats the members of the Property Class equitably relative to one another.  [Ex. 3, ¶¶ 16-17].

The Settlement also provides that the Court may award the Class Representatives Incentive Awards for their time and effort in serving as representatives of the two Classes. "Incentive" or "service" awards for Rule 23 class representatives are "common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *See e.g.*, *Knox v. John Varvatos Enterprises Inc.*, 520 F.Supp.3d 331, 348 (S.D.N.Y., 2021), *appeal pending* ($20,000 award approved for one class representative); *see also Strougo ex rel. Brazilian Eq. Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 263-64 (S.D. N.Y. 2003) (citing cases approving service awards). The Second Circuit recently held that such awards are not prohibited by U.S. Supreme Court precedent. *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 96 (2d Cir. 2019). Thus, this Court is authorized to approve such a payment, and the Court should find that the amount requested, $10,000, is within the range of such payments authorized

by the courts. *See e.g.*, cases collected in the *Knox* opinion. *Knox*, 520 F. Supp. 3d at 350-51. The Class Representatives in this case have been closely involved with the litigation since they became Class Representatives: they have produced documents to Defendant, including their personal medical records; they have each given day-long depositions; they have met with Class Counsel numerous times; they have attended Court hearings; and they have been intimately involved with the settlement negotiations and mediation that have produced the Settlement before the Court. Plaintiffs respectfully request that the Court approve this award as part of its Final Approval Order.

E.   Additional *Grinnell* factors further support final approval of the Settlement.

The following *Grinnell* factors overlap with the Rule 23(e)(2) factors: the expense, complexity, and likely duration of the litigation; the risks of establishing liability and damages; and the risks of maintaining the class throughout the litigation. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. at 29 (finding that those *Grinnell* factors are subsumed by the Rule 23(e)(2) factors). Under *Grinnell*, courts in the Second Circuit also consider the reaction of the class to the settlement, the range of reasonableness of the settlement amount considering the best possible recovery and given the risks of litigation, as well as the stage of the proceedings, the amount of discovery completed, and the defendant's ability to withstand a greater judgment.

**i.   The reaction of the class to the settlement**

"It is well-settled that the reaction of the class to settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  Indeed, the lack of numerous class member objections "may itself be taken as evidencing the fairness of the settlement." *RMED Int'l Inc. v. Sloan's Supermarkets, Inc.,* No. 94 CIV5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the Opt-Out Deadline following settlement notice has passed, and no class members have opted out of the Property Class Settlement. [Ex. 4, ¶ 8]. Furthermore, two of the ten class members who opted out after the initial Notice of Class Certification in May of 2021 have revoked their prior opt outs in order to remain in the Property Class and be eligible to participate in the Property Settlement. *See* [March 25, 2022 Ltr Emily Joselson, Esq. to Court]. Thus, out of 2,365 total Class Members, there are only eight opt outs. *Id.* Similarly, the Objection Deadline has also passed, and there has been only one objection to the settlement. *See* [Doc. 476].[4]

Thus, this factor favors final approval. *See Wright v. Stern,* 553 F. Supp. 2d 337, 344-345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### ii.   The Settlement is within the range of reasonableness in light of the best possible recovery and the risks of litigation.

Under *Grinnell*, courts in the Second Circuit look to the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation. *See, e.g., id*. at 47–48 ("these two *Grinnell* factors are often combined for the purposes of analysis"). In some cases, it may be possible to provide a specific figure representing a best possible recovery estimate, as in cases involving easily quantifiable or statutory damages. *See, e.g., Massre v. Mullooly, Jeffrey, Rooney & Flynn LLP,* No. 19CIV4654KAMVMS, 2020 WL 6321480, at *14-15 (E.D.N.Y. Aug. 28, 2020).

In cases such as this, however, where a figure representing the best possible recovery is difficult to generate, courts recognize that "this information . . . is not absolutely necessary." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. at 49, n 46; *see also*

---

[4] Pursuant to Section V.6.e of the Settlement Agreement, Plaintiffs and Saint-Gobain reserve their right to respond to this objection no later than seven (7) days prior to the Final Approval Hearing, or April 11, 2022.

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 343 F.Supp.3d 394, 414 (S.D.N.Y. 2018) (finding that although "particularized evidence ha[d] not been adduced to support a 'best possible' judgment, the agreed-upon figure [was] reasonable in light of the substantial risks to recovery"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2018) (finding that calculation of recoverable damages was "particularly complex" in a complex antitrust conspiracy action and therefore concluding "that an assessment of the 'best possible recovery' would be of little value in assessing the substantive fairness of the settlement"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'") (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d at 178)).

Here, it is impossible to generate a figure representing the best possible recovery because the Property Class's property damages include subjective considerations like each Property Class Member's upset, annoyance and inconvenience, as would be determined by a jury based upon individual testimony. These types of damages are difficult to quantify in advance. Nor is it possible to provide a specific figure representing the best possible recovery for the injunctive relief that the Exposure Class seeks to recover. More importantly, the proposed Settlement Agreement provides a sufficient amount and method of funding for a 15-year Medical Monitoring Program, which will ensure that Exposure Class Members receive the requested diagnostic testing. [Ex. 2, ¶ 24].

Even if Plaintiffs could obtain a greater recovery upon a finding of liability at trial, the risks, costs and delay of litigating through a trial on liability and individual trials on damages, as discussed in Section I.C.i, *supra*, justify the amounts and terms agreed upon in the Settlement Agreement, which provides an immediate and "meaningful benefit to the class." *Zaslavskiy*, 2020 WL 9814083, at *10 ("even though the class could possibly achieve a greater recovery at trial, this

fact 'is not dispositive and does not preclude the [C]ourt from finding that the settlement is within a 'range of reasonableness' that is appropriate for approval'") (quoting *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006). Accordingly, the Settlement is within a range of reasonableness supporting final approval.

### ii. The stage of litigation and amount of discovery completed

Under this factor, "the relevant inquiry is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re GSE Bonds Antitrust Litig.,* 2019 WL 6842332, at *4. This case is nearly ready for trial, and formal discovery has been largely completed. Fact and expert discovery have been extensive, involving dozens of experts, voluminous expert reports and about 30 depositions. This Court has already ruled on dispositive motions, including Defendant's Motion to Dismiss [Doc. 29], Motion for Judgment on the Pleadings [Doc. 35], Motion for Summary Judgment [Doc. 336], as well as Defendant's Motion to Exclude Plaintiffs' Expert Testimony [Doc. 218]. This Court has also ruled on the proper measure of property damages for the Property Class. [Doc. 405]. Finally, the parties have engaged in protracted settlement negotiations. Under these circumstances, Class Counsel is fully aware of the strengths and weaknesses of Plaintiffs' legal claims and Saint-Gobain's defenses, as well as the adequacy of the Settlement Agreement. [Ex. 2, ¶¶ 1-17]. This factor therefore weighs in favor of final approval. *See, e.g., In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *4 (plaintiffs' counsel "sufficiently well informed" following briefing on defendants' motion to dismiss, significant discovery and mediation).

### iii. Saint-Gobain's ability to withstand a greater judgment

Saint-Gobain presumably has the ability to withstand a greater judgment. However, a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012).

In sum, the Rule 23(e)(2) and *Grinnell* factors weigh in favor of final approval of the Settlement Agreement and demonstrate that the Court should approve the Settlement Agreement as fair, reasonable and adequate under Rule 23(e)(2).

## II.   THROUGH THE CLASS SETTLEMENT NOTICE PROCESS, PLAINTIFFS HAVE PROVIDED REASONABLE NOTICE TO CLASS MEMBERS.

In its Preliminary Approval Order, dated December 17, 2021 [Doc. 470], this Court approved Plaintiffs' Proposed Class Settlement Notice Plan [Doc. 461-6], finding, in part:

> [T]he proposed Notice is the best notice that is practicable under the circumstances, especially because most Class Members will receive individual notice by mail to their home address based on available property ownership records. The newspaper and other publication notices will supplement these individual notices and are practicable means of reaching Class members who may not receive the individual mail notice.

[Doc. 470, at 9].

To effectuate the Notice Plan, the Court required Class Counsel, with the assistance of KCC , to "commence mailing-out the approved Notice to Class Members," *id.*, and to "commence publication of the newspaper and other publication notices as soon as practicable." *Id.*, at 9-10. This Court also granted the Parties' request to "begin accepting and processing Claim Forms . . . before Final Approval." *Id.*, at 10.

Class Counsel has fully complied with this Court's Preliminary Approval Order and completed adequate and reasonable notice of the Class Settlement to Class Members, as described in the Declaration of Gio Santiago, attached hereto as Exhibit 4, as more fully set forth herein. On October 29, 2021, Class Counsel provided KCC a list of 2,735 names and mailing addresses of Property Class Member households ("Class List"). KCC formatted the list for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change

of Address Database ("NCOA"), to update any addresses on file with the United States Postal Service ("USPS").  KCC found and updated a total of 123 addresses via NCOA, resulting in an updated Class List of 2,365 properties.  [Ex. 4, ¶ 2].

On January 3, 2022, KCC caused the Class Settlement Notice Packet ("Notice Packet") to be printed and mailed to the 2,365 addresses in the Class List by First Class U.S. Mail. [Ex. 4, ¶ 3]. A true and correct copy of the Notice Packet is attached to the Santiago Declaration as Exhibit A.  Since mailing the Notice Packets to Class Members, 182 Notice Packets were returned to KCC by the USPS with undeliverable addresses. Through credit bureau and/or other public source databases, KCC performed address searches for these undeliverable Notice Packets and was able to find updated addresses for 18 Class Members.  KCC promptly re-mailed Notice Packets to the found new addresses.  [Ex. 4, ¶ 4].

On or about January 3, 2022, KCC also established the Class Action website, www.benningtonvtclassaction.com, to provide Class Members with information regarding the Class Settlement, including important documents such as the Settlement Agreement, the Notice Packet and Claim Form.  [Ex. 4, ¶ 5].  As of March 24, 2022, the website had received 6,069 visits. *Id.*

On January 4, 2022, Class Counsel also emailed the Class Settlement Notice to 502 Class Members, for whom email addresses were available. [Declaration of Wendy Radcliff, Ex. 5 at ¶ 5].

Class Counsel also caused to be published in local media the Summary Form of the Class Settlement Notice. [Ex. 5, ¶ 4]. A true and correct copy of the Summary Form of the Class Settlement Notice is attached to the Radcliff Declaration as Exhibit A. The newspaper and other publication notices appeared at least once per week for three weeks, in the following local and

statewide media outlets: The Bennington Banner, The Vermont Digger, Seven Days, and the Bennington, Vermont Front Porch Forum. *Id.*

In addition, on December 30, 2021, Class Counsel distributed a press release agreed upon by the parties to statewide and local media, announcing the Court's Preliminary Approval Order and Class Action Settlement, which appeared in the Bennington Banner, The VT Digger, Vermont Public Radio, The Washington Post and on ABC News. [Ex. 5, ¶¶ 2-3].

On January 18, 2022, Class Counsel also hosted a town hall-style meeting via Zoom. The meeting was organized to discuss and respond to questions regarding the Class Notice and Settlement and was attended by 40 people. The recording of the meeting was later posted on the Class Action Settlement website and has been viewed more than 200 times on YouTube. [Ex. 5, ¶ 6].

In addition, KCC established and continues to maintain a toll-free telephone number (866-726-3778), for potential Class Members to call and obtain information about the Settlement, request a Notice Packet, and/or seek assistance from a live operator during regular business hours. The telephone hotline became operational on January 3, 2022, and as of March 24, 2022, KCC had received 205 calls to the hotline. [Ex. 4, ¶ 6]. Further, Class Counsel have fielded and responded to many additional Class Member telephone and email inquiries and assisted numerous Class Members in filing Claim Forms.  [Ex. 4, ¶ 7].

 To date, KCC has received 866 timely-filed Claim Forms.  This count is subject to change as the filing deadline has not yet passed. [Ex. 4, ¶ 7]. To date, KCC has received no requests from Class Members for exclusion from the Classes, nor any objections to the Settlement. *Id.*, ¶¶ 8-9.

In summary, Class Counsel respectfully submits that they have fully complied with all mandates regarding Notice to the Classes, as set forth in the Preliminary Approval Order. [Doc. 470, ¶¶ 22-25].

## CONCLUSION

Plaintiffs respectfully request that the Court approve the Settlement based on a finding that it is fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ Gary A. Davis*

Gary A. Davis, NC Bar No. 25976
(*Pro Hac Vice*)
James S. Whitlock, NC Bar No. 34304
(*Pro Hac Vice*)
DAVIS & WHITLOCK, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

Emily J. Joselson, Esq.
LANGROCK SPERRY & WOOL, L.L.P.
P.O. Drawer 351
Middlebury, VT 05753
T: (802) 388-6356
F: (802) 388-6149
ejoselson@langrock.com
jswift@langrock.com

David F. Silver, Esq.
BARR STERNBERG MOSS SILVER &
MUNSON, P.C.
507 Main Street
Bennington, VT 05201
T: (802) 442-6341
F: (802) 442-1151
dsilver@barrsternberg.com

Class Counsel

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 28, 2022, a copy of the foregoing was filed electronically in the United States District Court for the District of Vermont. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Gary A. Davis*
Attorney for Plaintiffs