UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 APR 18 PM 2:33

CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| JAMES D. SULLIVAN, *et al.*, individually, and on behalf of a Class of persons similarly situated,<br><br>     *Plaintiffs*,<br><br>v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION,<br><br>     *Defendant*. | Case No. 5:16-cv-00125-GWC<br><br>Hon. Geoffrey W. Crawford |

## FINAL APPROVAL ORDER

Plaintiffs James D. Sullivan, Leslie Addison, Ronald S. Hausthor, Gordon Garrison, Ted Crawford, Linda Crawford, and Billy J. Knight, on behalf of themselves and Members of the Property Class and Exposure Class, by and through Class Counsel, and Defendant Saint-Gobain Performance Plastics Corporation ("Saint-Gobain"), by and through its counsel, have submitted a Settlement Agreement ("Settlement") to this Court, and, pursuant to Plaintiffs' Motion for Preliminary Approval, the Court (1) preliminarily approved the Class Settlement on December 17, 2021 [Doc. 470]; (2) approved the Notice Plan and Notice; (3) appointed Mr. John Schraven as Special Master to review the fairness of the allocation of compensation to the Property Class; (4) appointed KCC Class Action Services LLC ("KCC") as the Property Settlement Administrator and directed Class Counsel to commence the Notice Program with KCC's assistance; (5) preliminarily appointed Mr. Edward Gentle as Administrator of the Court-Supervised Medical Monitoring Program for the Exposure Class; (6) approved the submitted Qualified Settlement Fund for deposit of Settlement funds by Saint-Gobain; (7) authorized parents or guardians to execute claims forms and other documents on behalf of minor children; and (8) and scheduled a

Final Approval Hearing for April 18, 2022, to consider final approval of the Settlement, the application for attorneys' fees, expenses, and Class Representative Incentive Awards. Class Counsel filed their application for attorneys' fees and expenses on January 12, 2022 [Doc. 474]. The Court, pursuant to Fed. R. Civ. P. 23(e), has considered the terms of the Settlement, the exhibits to the Settlement Agreement, the record of proceedings, and all papers and arguments submitted in support, and now finds that the Motion for Final Approval should be, and hereby is, GRANTED.

ACCORDINGLY, THE COURT FINDS AND ORDERS:

1. This Court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the Plaintiffs, including Members of the Property Class and Exposure Class, and Defendant Saint-Gobain, (the "Parties") for purposes of the Settlement.

**SUMMARY OF THE LITIGATION AND SETTLEMENT**

2. Plaintiffs filed this lawsuit against Saint-Gobain on May 6, 2016, [Doc. 1], alleging that, for over 20 years, Perfluorooctanoic Acid ("PFOA") was released from two facilities operated by Saint-Gobain and its predecessor in the Town of Bennington and the Village of North Bennington, Vermont, contaminating Plaintiffs' properties and blood with PFOA. Plaintiffs allege that Saint-Gobain is liable for the PFOA contamination of their properties and blood under various tort and statutory causes of action, including negligence, nuisance, and trespass. The Complaint was amended April 27, 2017, [Doc. 71], June 30, 2017, [Doc. 89], and October 5, 2017, [Doc. 113]. The substance and history of the litigation have been described in various Court Orders, including Docket Entries 29, 74, 300, and 303, and will not be repeated here.

3. Plaintiffs seek to obtain monetary compensation for their property damages, including diminution in value and loss of use and enjoyment of their properties, annoyance, upset

2

and inconvenience, and out-of-pocket expenses. Plaintiffs also seek damages and equitable relief for the unreasonable harm to groundwater caused by Saint-Gobain in violation of the Vermont Groundwater Protection Act, 10 V.S.A. § 1410. Plaintiffs further seek injunctive relief, including a medical monitoring program to monitor their health and diagnose, at an early stage, certain ailments.

4. Following a combined hearing on *Daubert* challenges to Plaintiffs' expert witnesses and class certification, this Court certified two Classes in 2019. [Doc. 303 (8/23/19)]. The Exposure Class was certified under Rule 23(b)(2), consisting of all persons who, as of August 23, 2019: (1) have resided within the Zone of Concern;[1] (2) ingested water with PFOA within the Zone of Concern; (3) and experienced an accumulation of PFOA in their bodies as demonstrated by blood serum tests disclosing a PFOA blood level above 2.1 parts per billion ("ppb"). [Doc. 445 at 6 (May 10, 2021 Class Notice)]. The Property Class was certified for purposes of liability only under Rule 23(c)(4) and consists of natural persons who owned residential real property in the Zone of Concern on March 14, 2016, as well as natural persons who purchased residential real property after March 14, 2016, that was subsequently added to the Zone of Concern. *Id.*

5. This Court appointed Mr. John Schraven as Settlement Master on April 6, 2017, and beginning in January 2020, the Court has conducted settlement conferences with Mr. Schraven and the Parties, both in-person and by video conference. A formal, in-person, mediation was held with Mr. Schraven and the Parties on August 26, 2020. Further discussions continued between the Parties with Mr. Schraven's assistance, until on July 9, 2021, the Parties reached an agreement in principle and executed a Confidential Settlement Term Sheet.

---

[1] The Zone of Concern is defined in the attached Settlement Agreement, ¶ II.12, and is shown on the map attached to the Settlement Agreement as Exhibit B.

6. The Parties then negotiated the detailed written Settlement Agreement and exhibits that are now before the Court.

7. The Settlement resolves all claims alleged by Plaintiffs against Saint-Gobain. It provides, among other things, that as consideration for the release from Property Class Members, Saint-Gobain will pay $26,200,000 (TWENTY-SIX MILLION TWO HUNDRED THOUSAND DOLLARS) into a Property Settlement Fund to compensate Property Class Members for alleged property damages, and that as consideration for the release from Exposure Class Members, Saint-Gobain will pay up to $6,000,000 (SIX MILLION DOLLARS), plus $1,950,000 (ONE MILLION NINE HUNDRED FIFTY THOUSAND DOLLARS) in attorney fees and expenses, to fund a Court-Supervised Medical Monitoring Program for Exposure Class Members over a period of fifteen years.

## FINAL APPROVAL

8. Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. In general, the approval process involves three stages: (1) notice of the settlement to the class after "preliminary approval" by the Court; (2) an opportunity for class members to opt out of, or object to, the proposed settlement; and (3) a subsequent hearing at which the Court grants "final approval" upon finding that the settlement is "fair, reasonable, and adequate," after which judgment is entered, class members receive the benefits of the settlement, and the settling defendant obtains a release from liability. Fed. R. Civ. P. 23(e)(1)-(2), (4)-(5).

9. In deciding whether to grant final approval of a proposed settlement, the Court evaluates whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Hernandez v. Between the Bread 55th Inc.*, 496 F.Supp.3d 791, 798 (S.D.N.Y., 2020).

10. Under Federal Rule of Civil Procedure 23(e)(2), in considering whether a proposed settlement is "fair, reasonable, and adequate," the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

11. Based upon the Unopposed Motion for Final Approval and the final hearing held on April 18, 2022, the Settlement is procedurally fair, reasonable, and adequate in that the Class Representatives and Class Counsel have adequately represented the Property and Exposure Classes in litigating the merits of the dispute and in obtaining a Settlement of significant value through arm's-length negotiations between sophisticated counsel and under the auspices of an experienced mediator as well as the Court's oversight. Fed. R. Civ. P. 23(e)(2)(A)-(B).

12. Likewise, the Settlement is substantively fair, reasonable, and adequate in that the relief provided is substantial, particularly when taking into account the costs, risks, and delays of a liability trial, multiple damages trials, and any appeals. Fed. R. Civ. P. 23(e)(2)(C)(i).

13. The proposed method of distributing monetary relief to the Property Class Members is adequate, because it is relatively streamlined, requiring only submission of a Claim Form, with appropriate evidence of property ownership and residency, and few supporting documents, as specified in the Settlement. Similarly, for the Exposure Class, the eligibility criteria and the

procedure for enrollment in the Medical Monitoring Program are straightforward, and the Settlement provides for a blood test to determine eligibility for those potential Class Members meeting other eligibility criteria who have not yet been tested for PFOA. Fed. R. Civ. P. 23(e)(2)(C)(ii).

14. The Settlement is fair, reasonable, and adequate when taking into account the proposed award of attorneys' fees. Attorneys' fees will be paid only after Final Approval and only upon approval of the Court, which has considered and evaluated the request for fees in conjunction with final approval. Fed. R. Civ. P. 23(e)(2)(C)(iii).

15. The Parties have represented that there is one agreement required to be identified under Fed. R. Civ. P. 23(e)(3), which provides that Saint-Gobain shall have the right to terminate the Property Class Settlement Agreement in the event that less than a certain minimum percentage of Property Class Members participate in the Settlement, as determined by the number of properties for which the owners opt out of the Property Settlement as compared to the total number of properties in the Property Class. Due to the extremely low number of opt outs, Saint-Gobain has not invoked its right to terminate, and the Court finds that this provision of the Settlement Agreement is not relevant to the final approval.

16. Finally, the Court finds that the Settlement treats each Member of the two Classes equitably relative to one another, as required by Fed. R. Civ. P. 23(e)(2)(D). With respect to the Exposure Class Settlement, all Class Members who demonstrate eligibility and enroll in the Medical Monitoring Program will receive targeted diagnostic monitoring that does not duplicate their primary care, for early detection of certain diseases for which Plaintiffs allege these Exposure Class Members are at higher risk due to their PFOA exposure. The Exposure Class Settlement thus treats all Exposure Class Members equitably relative to each other.

17. Likewise, the Property Class Settlement treats the Property Class Members equitably relative to each other. Class Counsel have proposed an allocation method based upon the value of each property before March 14, 2016, which will utilize different percentages of that value for compensation depending upon the category of the property with regard to its water supply and the level of PFOA contamination of groundwater on the property. Additionally, Property Class Members who resided on their property will receive an additional payment for upset and inconvenience, and those who previously used wells, but were required to connect to municipal water, will receive a payment for some of their added costs of paying for municipal water as compared to the costs of a well. The Special Master has recommended that this allocation method for the different categories of Property Class Members is equitable, and the Court agrees.

18. In addition to satisfying the requirements of Rule 23(e)(2), the Court also finds that the proposed Settlement satisfies the Second Circuit's factors for class settlement approval set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds* by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

19. The Court has considered the Due Process rights of absent Class Members and finds that such rights are adequately protected.

## NOTICE TO THE CLASSES SATISFIED RULE 23

20. Upon granting preliminary approval under Federal Rule of Civil Procedure 23(e)(1), the Court approved the proposed Notice and Notice Plan as being "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

21. The Court has reviewed the efforts of the Plaintiffs to provide Notice to Class Members pursuant to the Notice Plan and finds that the Plaintiffs satisfied the Notice Plan and the

requirements of Fed. R. Civ. P. 23(e)(1) and Due Process. The Notice provided incorporates the "plain language" guidelines and elements of the illustrative notice forms that the Federal Judicial Center developed for use in federal courts. The notice contained clear and concise information about the Settlement, including: (a) the fact of the Settlement of the Exposure Class and Property Class claims; (b) definitions of the Exposure and Property Classes; (c) a summary of the Settlement benefits; (d) a brief description of the case; (e) a statement concerning how attorneys' fees will be paid; (f) the options available to Class Members, including their right to obtain independent counsel at their expense; (g) the deadlines by which class members may object, (h) and the date, time, and location for the Final Approval Hearing. The Notice provided accurately summarized the key elements of the Settlement and was relatively simple and easily understood by the average class member.

22. The Court finds that the proposed Notice was the best notice that was practicable under the circumstances, especially because most Class Members received individual notice by mail to their home address based on available property ownership records. The newspaper and other publication notices supplemented these individual notices and were practicable means of reaching Class Members who may not receive the individual mail notice.

### PLAN OF DISTRIBUTION FOR PROPERTY SETTLEMENT

23. The Court has carefully considered the plan of distribution for the proceeds of the Property Settlement to Property Class Members. Prior to Preliminary Approval, the Court and the Special Master discussed this plan with the Parties, and the Parties modified the plan based on these discussions. Prior to this Final Approval Order, the Special Master has further reviewed the plan and has recommended to the Court that the plan should be approved. The Court finds that the plan of distribution is fair and equitable among Property Class Members and is therefore approved.

## COURT-SUPERVISED MEDICAL MONITORING PROGRAM

24. The Court has considered the Settlement Agreement for the Exposure Class, which provides details for the establishment and operation of a Court-Supervised Medical Monitoring Program after the Effective Date of the Settlement. The Court hereby approves the Exposure Class Settlement, and a separate Order Granting Injunctive Relief has been entered for the payments by Saint-Gobain for the establishment and operation of the Medical Monitoring Program.

25. Pursuant to the Settlement Agreement, Saint-Gobain has provided reasonable assurances and guarantees in the form of a bond to secure its agreed-upon payments during the fifteen-year Medical Monitoring Program. The Court has reviewed the bond and approves it as providing reasonable assurances for payment of Saint-Gobain's obligations under the Settlement Agreement.

## EXCLUSIONS FROM AND OBJECTIONS TO THE SETTLEMENT

26. Class Counsel have furnished the Court with a final list of all timely and valid opt out requests for the Property Settlement. There were no Property Class Members requesting exclusion from the Property Settlement after Notice was given, and two out of ten of the Property Class Members who had previously opted out when the Property Class was certified opted back into the Property Class after the Notice of Class Settlement and receiving a letter from Class Counsel with an Opt-Out Revocation Form. Out of 2,345 properties in the Property Class, only eight property owners have excluded themselves from the Property Settlement. The Court finds this extremely small number of opt outs and the fact there were no new exclusions after the Notice of Property Class Settlement additional factors favoring final approval of the Settlement as fair. *See Wright v. Stern,* 553 F. Supp. 2d 337, 344-345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

27. One untimely objection was filed with the Court and provided to Class Counsel by the Court. Class Counsel have addressed the substance of this objection in their response, and the Court has considered the objection, which pertains to the individual property owners' circumstances and assertion that their losses were greater than the amount they will receive under the Settlement. The Court sympathizes with the objectors but finds that the objection is not well taken because it would be impracticable in the administration of the Settlement to consider individual damages evidence for all Class Members who believe they have sustained greater damages than the Settlement provides. The Settlement generally treats class members equitably relative to each other based on the allocation methodology recommended by the Special Master and approved by the Court.

## FILING CLAIMS

28. In the Preliminary Approval Order the Court approved the Parties' request to begin accepting and processing Claim Forms beginning thirty (30) days after the Preliminary Approval of the Settlement and before Final Approval. As the Parties have shown, this process has expedited the claims process.

29. As set out in the Settlement Agreement, Class Members may file claims for either the Property Settlement or the Exposure Class Settlement (or both) on or before August 22, 2022.

30. As set out in the Settlement Agreement, potential Exposure Class Members filing timely claims who meet the other criteria for eligibility, but who have not had a blood test for PFOA, may request a blood test during the first 180 days of the Medical Monitoring Program.

## INCENTIVE AWARDS FOR CLASS REPRESENTATIVES

31. The Settlement Agreement provides for Plaintiffs to seek Incentive Awards for Class Representatives to compensate them for their service to the Classes in this case. The Court

finds that Incentive Awards are common in class settlements and that they are authorized by the Second Circuit Court of Appeals. *See e.g.*, *Knox v. John Varvatos Enterprises Inc.*, 520 F.Supp.3d 331, 348 (S.D.N.Y., 2021), *appeal pending* ($20,000 award approved for one class representative); *see also Strougo ex rel. Brazilian Eq. Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 263-64 (S.D.N.Y. 2003) (citing cases approving service awards). The Second Circuit recently held that such awards are not prohibited by U.S. Supreme Court precedent. *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 96 (2d Cir. 2019). The Court finds that the Class Representatives have given time and effort to the prosecution of this class action, including responding to detailed discovery, appearing for depositions, and appearing for hearings before the Court. The Court therefore approves as reasonable an award of $10,000 to each of the Class Representatives, to be paid from the Property Settlement. The payment for Sandy Sumner, who is deceased, shall be paid to his estate.

## ATTORNEY FEES AND EXPENSES

32. The Court has considered Class Counsel's Motion for an Award of Attorney's Fees and Expenses to Class Counsel filed on January 12, 2022 [Doc. 474], which was unopposed by Saint-Gobain. There were no objections from any Class Member to this Motion.

33. The Court has adopted the percentage-of-recovery method and has used the lodestar method as a baseline or cross check for the percentage requested, which is the trend in the Second Circuit for awards of attorney fees in common fund settlements. *See In re Eastman Kodak ERISA Litig.*, 2016 WL 5746664, *2 (W.D.N.Y. 2016); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (The "'percentage of the fund' method, [] is the trend in this Circuit," *citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

34. Class Counsel have requested fees of $5,100,000 to be paid from the $26.2 million common fund for the Property Class Settlement and $1,500,000 to be paid in addition to the $6 million fund for the Exposure Class Settlement. The Court finds that these fee requests represent approximately 19% of the total benefits recovered for the two Classes in the Settlement, well below the 25% "benchmark" applied by courts within the Second Circuit.

35. Courts in the Second Circuit evaluate the reasonableness of attorney fees according to the following "*Goldberger* factors": "(1) the time and labor expended by counsel; (2) the size and complexity of the matter; (3) the risks involved in the litigation; (4) the quality of representation; (5) the relationship between the requested fee and the settlement; and (6) considerations of public policy." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2nd Cir. 2000); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 at 121-22 (citing *Goldberger*, 209 F.3d at 47–48 ("What constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . which is intimately familiar with the nuances of the case.")).

36. Based on the submissions of Class Counsel, the Court finds that each of these factors support the requested fees: (1) Class Counsel have spent more than 20,000 hours in this litigation over more than five years, including lengthy settlement negotiations; (2) the size and complexity of this environmental contamination class action are beyond dispute with over 2,000 properties involved and, as is typical of environmental contamination cases, numerous complex factual and legal questions, including class certification and *Daubert* challenges; (3) Class Counsel have taken great risk in prosecuting this case, involving arguably unsettled areas of Vermont law and highly technical questions of fact, on a fully contingent basis, and have advanced over $1 million of their own funds to finance this action with the risk that they would recover nothing; (4) Class Counsel have provided a high quality of representation in this case, which is reflected in the

results obtained; (5) the requested fee for the Property Settlement, which is 19.5% of the total $26.2 million Settlement, and the fee for the Exposure Class Settlement, which is 18.9% of the total $7.95 million Settlement ($6 million + $1.95 million), are well below the 25% "benchmark" applied by courts within the Second Circuit. *See e.g. In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) (collecting cases). *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014); *Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (collecting cases); *Collins v. Olin Corp.*, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); and (6) public policy considerations justify a substantial fee award because this case has presented issues of importance to the Bennington community and to Vermont as a whole, and the award of legal fees to class counsel serves to support the significant public policies in favor of identifying and compensating incidents of environmental contamination.

37.    The Court has also considered the lodestar (hours reasonably expended times reasonable hourly rates) submitted by Class Counsel as a cross check of the percentage fee, which further demonstrates the reasonableness of the fees requested. Here, the aggregate lodestar for the three firms appointed as Class Counsel is nearly the same as the fee requested based on the percentage method. To perform the cross check, courts "divid[e] the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183-86 (W.D.N.Y. 2011). Courts routinely recognize that a multiplier from two to six times the lodestar is reasonable. *See, e.g., In re Telik, Inc. Securities Litigation,* 576 F.Supp.2d 570, 590 (S.D.N.Y. 2008) (citing cases); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *8 (S.D.N.Y. Sept.

4, 2013); *Johnson v. Brennan*, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) (collecting cases). Here, Class Counsel request a lodestar multiplier of just 1.19, which is at the low end of the range of what courts in this Circuit typically award.

38. The Court approves the requested fees as reasonable and awards Class Counsel $5,100,000 to be paid from the Property Settlement and $1,500,000 to be paid by Saint-Gobain in conjunction with the Exposure Settlement.

39. In addition to attorney's fees, the Court finds that Plaintiffs may also recover their expenses, including expert fees and incidental and necessary out-of-pocket expenditures. "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *23 (S.D.N.Y. Sept. 9, 2015). *See also In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (affirming award of $3.75 million in expenses); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2016 WL 3361544, at *10 (D. Vt. June 14, 2016) ("Although [Plaintiffs'] expenses are substantial, they were 'incidental and necessary' to providing adequate representation, are not artificially inflated or otherwise in bad faith, and are therefore reasonable."). Class Counsels' declarations contain a summary of litigation expenses incurred for their representation of each Class, with an allocation of expenses for the Property Class and Exposure Class. Given the complexity and scale of this litigation, the need for several expert witnesses to assist in carrying Plaintiffs' burden of proof, and the lengthy evidentiary hearing on class certification and *Daubert* challenges, the Court finds these expenses are reasonable and approves their reimbursement as follows: $589,998 to be paid from the Property Class Settlement and $445,107 to be paid in addition to the $6 million for the Exposure Class Settlement.

## SETTLEMENT REVIEW AND ADMINISTRATION

40. The Court confirms the appointment of Mr. John Schraven as Special Master to review the proposed allocation of the Property Settlement, the appointment of KCC Class Action Services LLC ("KCC") as the Property Settlement Administrator, and the appointment of Edgar C. Gentle III as the Medical Monitoring Program Administrator.

## SETTLEMENT PAYMENTS

41. The Court has previously approved a Qualified Settlement Fund within the meaning of United States Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1 to be administered by KCC for payments by Saint-Gobain as required by the Settlement Agreement. The Parties have provided the Court documentation that Saint-Gobain has paid $26,200,000 into the Qualified Settlement Fund for the benefit of the Property Class and $1,600,000 as the initial payment for the benefit of the Exposure Class.

42. The Court directs payments from the Qualified Settlement Fund beginning on or before May 23, 2022 or the Effective Date, as defined in the Settlement Agreement, whichever is later, as follows:

   a. $10,000 to be paid to each of the Class Representatives from the Property Settlement with the payment for Sandy Sumner, deceased, to be paid to his estate;

   b. Payments to eligible Property Class Claimants to be distributed by KCC in accordance with the distribution plan;

   c. Payments to establish and operate the Court-Supervised Medical Monitoring Program to be administered by Edgar C. Gentle III, as set out in the Settlement Agreement.

   d. $5,100,000 to be paid to Class Counsel as fees from the Property Settlement;

  e.  $589,998 to be paid to Class Counsel as expenses from the Property Settlement;

  f.  Payments up to $100,000 from the Property Settlement for KCC for administration of the Property Settlement, including the processing and payment of Claims and 77% of the costs of the Notice;

43. The Court directs immediate payment to KCC for outstanding invoices for the provision of Notice and processing of claims to date;

44. The Court directs Saint-Gobain to pay to Class Counsel on or before May 23, 2022 or the Effective Date, as defined in the Settlement Agreement, whichever is later, the attorney fees and expenses awarded for the Exposure Class as follows:

  a.  $1,500,000 as fees for the Exposure Settlement; and

  b.  $445,107 as expenses to be reimbursed for the Exposure Settlement.

## OTHER PROVISIONS

45. The Court hereby adopts and incorporates the provisions of the Settlement Agreement as part of the Final Approval of the Settlement, including the release for members of the Exposure Class and Property Class.

46. The Court hereby approves the Settlement for all absent minor, incompetent and deceased members of the Exposure Class and Property Class.

47. The Court hereby bars and enjoins each member of the Exposure Class and Property Class from commencing, asserting, and/or prosecuting any and all Released Claims against any Released Party, as defined in the Settlement Agreement.

48. The Court approves the Litigation Settlement Bond previously sent to the Court and secured by Saint-Gobain in accordance with Section III.7 of the Settlement Agreement.

## DISMISSAL AND FINAL JUDGMENT

49. THEREFORE, the Court hereby approves the Settlement Agreement and dismisses this action with prejudice and enters final judgment as to Saint-Gobain and the claims against it in this action pursuant to Federal Rule of Civil Procedure 54(b).

50. The Court retains continuing jurisdiction over the Medical Monitoring Program and the Qualified Settlement Fund, and retains continuing and exclusive jurisdiction over the Parties, the class members, and this Settlement, to interpret, implement, administer, and enforce the Settlement in accordance with its terms.

Dated at Rutland, in the District of Vermont, this 18th day of April, 2022.

_____
Geoffrey W. Crawford, Chief Judge
U.S. District Court